IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

|   |   |   |
|---|---|---|
| GREGORY ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:14-CV-02630 |
| vs. | ) | Judge Lipman |
| | ) | CAPITAL CASE |
| WAYNE CARPENTER, Warden, | ) | |
| Riverbend Maximum Security | ) | |
| Institution | ) | |
| | ) | |
| Respondent. | ) | |

_____

**REPLY TO ANSWER IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS**
_____

Petitioner Gregory Robinson submits the following Reply to the Respondent's Answer to Petition for Writ of Habeas Corpus ("Answer"), in further support of his Petition for Writ of Habeas Corpus.

As shown below, the Answer misstates the standard of review that this Court should apply to the review of Mr. Robinson's claims and fails to respond to the Petition's arguments in that regard. Moreover, as to each substantive claim, the State relies on a rote formulaic statement of the conclusions that the State would like the Court to reach on each claim, without even addressing – much less denying or disputing – Robinson's substantive arguments. And, as to numerous individual claims, the State engages in a legally unfounded attempt to oppose, on grounds of procedural default, this Court's consideration of individual paragraphs supporting claims by Robinson that even the State admits Robinson presented in the state courts

and generally preserved for review by this Court.  The complete absence of any factual basis for the State's assertions as to individual paragraphs of the Petition – as demonstrated below and in Appendix A, attached hereto – only highlights the State's inattention and failure to address the merit of Robinson's claims.  One would never guess from the Answer that the State of Tennessee is asking this Court to sign off on a conviction and sentence of death.

## I.     The Standard of Review Applicable to Robinson's Petition Should Be *De Novo* Because His Claims in State Court Were Not Adjudicated "On the Merits."

The State's rote recitation of the standard of review, *see* Answer at 8-9, fails to recognize that deference to state court decisions under AEDPA applies only if the habeas claims were "adjudicated on the merits in State court."  *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (quoting 28 U.S.C. § 2254(d)).  But as Mr. Robinson explained at length in his Petition, *see* ¶¶ 150-55 – in an argument that the State's Answer completely ignores – a state court's decision is not "on the merits" when the state imposes a higher burden of proof than the federal standard.  *Wilson v. Workman*, 577 F.3d 1284, 1297 (10th Cir. 2009).  Because the state Post-Conviction Court applied a heightened "clear and convincing evidence" standard to Robinson's claims in the state post-conviction proceedings, no determination was made as to whether he had met his burden of proof under the federal standard.  This Court therefore should not accord AEDPA deference to the state post-conviction rulings.

It is beyond dispute that the federal standard for proving a constitutional violation in a habeas proceeding is a preponderance of the evidence.  *See Weeks v. Jones*, 26 F.3d 1030, 1047 (11th Cir. 1994) (defendant needs to prove *Brady* claim by a preponderance of the evidence); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) ("[I]t is the petitioner's burden to prove his custody is in violation of the Constitution. . . . This burden of proof must be carried by a preponderance of the evidence."); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)

(petitioners in 28 U.S.C. § 2255 cases must sustain their contentions by a preponderance of the evidence).

In Mr. Robinson's case, pursuant to Tennessee law, the Post-Conviction Court required that Robinson "establish the factual allegations contained in his petition *by clear and convincing evidence.*" *Robinson III*, 2013 WL 1149761, at *56 (citing Tenn. Code Ann. § 40-30-110(f)) (emphasis added).  Because that state requirement "creates a higher evidentiary burden than the federal standard," *Wilson*, 577 F.3d at 1299, the state court's decision as to Robinson's *Brady* claim is not "on the merits" within the meaning of AEDPA and must be decided by this Court *de novo*.  *Drain v. Woods*, --- Fed. Appx. ----, 2014 WL 7398899 at *6 (6th Cir. 2014) (citing *Johnson v. Williams*, --- U.S. ----, 133 S.Ct. 1088, 1097 (2013)).  For this reason, Robinson will separately file a motion for this Court to apply *de novo* review to Mr. Robinson's Petition.

II.     **The State's Attempt to Preclude Individual Factual Allegations from Robinson's Petition Has No Basis as a Matter of Law; in any Event, the Factual Allegations in Question Were All Fairly Presented.**

Throughout its Answer, the State asserts that numerous allegations within individual paragraphs of Robinson's Petition are barred by procedural default and should be "dismissed," even though the State admits that the constitutional *claims* comprising those paragraphs were raised in the state courts and are therefore properly preserved for this Court's review.  The State advances no legal support for these objections beyond the conclusory assertion that individual sub-paragraphs in the Petition "differ in kind or otherwise exceed the allegations of the state court's filings by way of additional or expanded factual basis."  *See* Answer at 11, 14, 20, 22, 23.

A.     **Procedural Default Applies to Claims, Not Paragraphs.**

The State's attempt to "cherry-pick" individual paragraphs for exclusion from the Petition has no basis as a matter of law.  The State cites *Baldwin v. Reese*, 541 U.S. 27 (2004) and *Duncan v. Henry*, 513 U.S. 364 (1995), as purported support for excising individual factual allegations from admittedly preserved claims and refusing to consider them on review.  But neither *Baldwin* nor *Duncan* provides any legal foundation for this approach.  *See id.*  In *Baldwin*, the Court analyzed whether a state prisoner had "fairly presented" the federal nature of his ineffective assistance of appellate counsel claim.  *See* 541 U.S. at 29-34.  Similarly, in *Duncan*, the Court analyzed whether the state prisoner had informed the state court that his evidentiary objection was a federal constitutional claim in addition to being a state constitutional claim.  *See* 513 U.S. at 364-66.  In neither case did the Supreme Court approve the excision of sub-paragraphs within a Petition or individual factual allegations supporting a particular claim.  Rather, those case merely addressed whether a whole *cause of action* had been fairly presented as a federal claim.  The State's attempt to knock out individual factual allegations on grounds of procedural default, even when the claim to which they relate has been preserved as a whole, has no support as a matter of law.

**B.**     **The Paragraphs Within the Petition that the State Challenges Were All Fairly Presented in State Court Proceedings.**

Even setting aside the lack of legal support for the State's attempt to strike individual sub-paragraphs that it contends were not adequately raised in the state court proceedings, the State's assertions are also unfounded as a factual matter.  The alleged facts set forth in the individual paragraphs that the State challenges were all fairly presented and thus adequately preserved.  *See infra* sections III.A, IV.A; Appendix A.  Contrary to the State's formalistic assertions, the law does not require that a habeas petitioner's claims from state court proceedings be repeated essentially verbatim in his federal habeas petition.  Rather, a petitioner

4

is allowed to adjust his presentation of the facts and even the legal theory, so long as his claim was "fairly presented" in *substance* below: "To present a claim fairly [and avoid procedural default], it is sufficient if the substance of the claim was presented to the state courts, such that the *ultimate question would have been the same despite variations in the legal theory or factual allegations* urged in its support." *Jells v. Mitchell*, 538 F.3d 478, 504 (6th Cir. 2008) (emphasis added), writ denied, No. 1:98 CV 0 2453, 2011 WL 1257306 (N.D. Ohio Mar. 31, 2011).

Even where allegations made in a federal habeas proceeding differ in substance, federal appellate courts have held that the standard for procedural default is whether the additional information puts the case in a "*significantly* different posture." *Jones v. Hess*, 681 F.2d 688, 694 (10th Cir. 1982) (emphasis added) (cited approvingly in *Sampson v. Love*, 782 F.2d 53, 57 (6th Cir. 1986)). Put another way, the supplemental evidence presented by the petitioner must not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S. Ct. 617, 622, 88 L. Ed. 2d 598 (1986). As the Sixth Circuit has explained, even new facts arising from wholly new discovery do not "fundamentally alter" the substantive claim originally presented to the state court. *See Richey v. Bradshaw,* 498 F.3d 344, 353 (6th Cir. 2007). Here, the Petition relies on the state court record and does not allege any new facts. While Robinson's habeas petition is not a verbatim repetition of his motions and briefs from the Tennessee state court proceedings, all of the operative facts on which Robinson's Petition relies were before the state courts, and all of Robinson's substantive legal claims are the same claims presented to the state courts. Accordingly, none of Robinson's claims are procedurally defaulted.

In response to the State's enumeration of specific paragraphs in Robinson's Petition that purportedly represent an inappropriate "additional or expanded factual basis," this

brief identifies precisely where in the state court record the facts contained in those paragraphs were raised.  In particular, sections III.A and IV.A, below refute the State's contentions with respect to Robinson's *Napue* and *Brady* claims, and Appendix A (attached to this Reply) addresses the other claims in the Petition as to which the State identifies specific purportedly defaulted paragraphs.  Finally, section V below refutes the State's contentions that certain federal constitutional claims raised by Robinson in the state court proceedings are procedurally barred on the grounds that they were allegedly presented solely under state-law theories.

### III.     Robinson Is Entitled to a New Trial Pursuant to *Napue v. Illinois* (Ground No. 1), and All of the Allegations Supporting Robinson's *Napue* Claim in the Petition Were Part of the State Court Proceedings.

In the first claim of his Petition, Robinson demonstrates that he is entitled to a new trial because the prosecutors in his trial elicited and exploited false testimony from their key witness, Jarvis Shipp, and that uncorrected false testimony was plainly material under *Napue v. Illinois*.  Specifically, the prosecutor at Robinson's trial asked Shipp whether the State had made Shipp "any promises" in exchange for his testimony.  Shipp testified that the State had not.  ECF No. 22-6 at 153, PageID 996.  ADA Missy Branham capitalized on that testimony in her summation to the jury, vouching for Shipp's testimony in commenting that "maybe we should cut him some slack.  We haven't yet, but maybe we should.  [His testimony] took a lot of guts." ECF No. 22-14 at 95, PageID 2163.

Remarkably, the State does not address *any* of these arguments in its opposition to Robinson's Petition.  In fact, the Answer does not cite or even mention the *Napue* case on which Robinson's first ground for relief is based.  The Answer does not discuss or mention Shipp's November 5, 1998 statement, which proved that Shipp *had* in fact been made a promise in exchange for his testimony.  Nor does it cite a single page of the trial or post-conviction transcripts or any piece of evidence.  Instead, the State responds to Robinson's 23 pages of legal

and factual argument with two scant paragraphs, one asserting, in bare, conclusory fashion, that the state court's adjudication of Robinson's *Napue* claim was legally sufficient, and one asserting that Robinson has procedurally defaulted certain allegations (but not the claim itself) for failing to raise them in the state court proceedings below.  *See* Answer at 10-11.

Absent from the State's response is any acknowledgment that *even the Tennessee Court of Criminal Appeals held* that the prosecutors improperly (a) elicited testimony from Shipp that they knew to be false, and (b) did not merely fail to correct, but rather affirmatively exploited that false testimony by improperly vouching for Shipp in summation to the jury.  Nor does the State deny or otherwise respond to Robinson's argument that the Court of Criminal Appeals *applied an incorrect, overly stringent standard of materiality* in refusing to grant Robinson a new trial.  Thus, the State does not dispute or contradict Robinson's claim that the uncorrected false testimony by Shipp was plainly material under *Napue*, mandating a new trial.

As explained at greater length in Robinson's Petition, it is undisputed that ADAs Branham and Wulff met with Shipp on November 5, 1998, just two weeks before Robinson's trial, and ADA Branham gave Shipp an explicit promise to consider leniency in exchange for his testimony against Robinson at that trial.  Specifically, in that meeting ADA Branham informed Shipp that she wanted him to testify at Robinson's trial.  Shipp was facing the death penalty at the time for his involvement in the murder, and replied to Branham's request by asking whether testifying against Robinson would "help save my life."  ADA Branham replied, "yeah, it will." ECF No. 24-8 at 152-53, PageID 6267-68. At Robinson's trial, however, Branham deliberately elicited perjurious testimony from Shipp that the State had not made "any promises" in exchange for his testimony, and she nevertheless repeatedly vouched for Shipp's veracity in summation to the jury.

As Robinson explained in his Petition, for the State to elicit and capitalize on this false testimony clearly violates his due process rights under *Napue v. Illinois*, 360 U.S. 264 (1959). *Napue* explicitly instructs that a State violates a defendant's due process rights when it "knowingly uses false evidence at trial," or, "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* at 269. Indeed, in a mirror image of this case, the trial prosecutor in *Napue* asked an eyewitness whether anyone had made the witness any promises in exchange for his testimony, and the witness replied that no one had. *Id.* at 267 n.2.

Such false testimony entitles a defendant to a new trial if the testimony "could . . . *in any reasonable likelihood* have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. Illinois*, 360 U.S. at 271) (emphasis added). The Supreme Court has made clear that the "any reasonable likelihood" standard is not a high bar for criminal defendants. Because the State is the "beneficiary of a constitutional error," there is "little, if any, difference" between the "any reasonable likelihood" standard and a requirement that the government "*prove beyond a reasonable doubt* that the error complained of did *not* contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967), *reh'g denied*, 386 U.S. 987 (1967) (emphasis added).

Robinson's right to a new trial under *Napue* does not depend upon a reversal of the state courts' erroneous findings with regard to the State's failure to disclose its contemporaneously created transcript of the November 5, 1998 meeting at any time before 2007, when Robinson's post-conviction counsel discovered it for the first time. To the contrary, the requirement of a new trial becomes apparent merely by applying the correct standard of

materiality specified by the U.S. Supreme Court, which the Tennessee courts failed to apply.

The State's Answer does not even attempt to respond to this point in the Petition.[1]

> **A.    The Individual Paragraphs Challenged by the State With Respect to Robinson's *Napue* Claim Are Not Procedurally Barred.**

As explained at greater length in section II.B, *supra*, procedural default only occurs where a habeas petition "fundamentally alters" the claims presented to the state court. *Vasquez*, 474 U.S. at 260.  Procedural default is avoided if "the substance of the claim was presented to the state courts."  *Jells*, 538 F.3d at 504.

The State attempts to support its contention that certain of Robinson's allegations within his *Napue* claim are procedurally barred merely by inserting a rote assertion that Robinson's allegations "differ in kind or otherwise exceed the allegations of the state court's filings by way of additional or expanded factual basis," followed by citation to a handful of paragraphs in Robinson's Petition.  The State does not even attempt to specify how these allegations purportedly differ from or "exceed" the claim advanced by Robinson made in the state courts.  In reality, the factual contentions in these paragraphs were specifically and adequately raised by Robinson in the state post-conviction proceedings.

For instance, the State first points to paragraphs 50 and 51 of the Petition.  Paragraph 50 is background that asserts that Shipp was critical to the prosecution's case against Robinson, and that he provided the only testimony at trial concerning Robinson's purported rank within the Memphis Gangster Disciples.  *See* Petition at ¶ 50.  But Mr. Robinson raised precisely these facts in his post-conviction petition.  *See* ECF No. 24-2 at 13, PageID 4964; *see also* ECF

---

[1] The irony inherent in the State's dueling contentions that (i) the state courts correctly adjudicated the claim but (ii) Robinson did not adequately raise the claim in the state courts is not lost on Robinson and his counsel.

No. 24-1 at 46, PageID 4831.  Paragraph 51 of Robinson's Petition provides additional detail about a statement that Shipp provided to police in May 1997, in which all of the bad acts that Shipp attributed to Robinson at trial were attributed to a gang member named Prentiss Phillips. The paragraph is replete with citations to the post-conviction record, which itself undermines the State's suggestion that the paragraph contains new facts or evidence.  *See* Petition at ¶ 51. Moreover, Robinson made the same factual arguments in his post-conviction petition.  *See* ECF No. 24-1 at 64, PageID 4849; ECF No. 24-2 at 14, PageID 4965.  Paragraphs 50 and 51 of the Petition hardly "exceed the allegations" of Robinson's state court claims.  They are drawn from the same record.

The same is true for the remaining 13 paragraphs (of a claim that in total encompasses 59 full paragraphs of facts and argument in the Petition) in Robinson's *Napue* claim that the State contends support its procedural default argument.  For  ease of reference, we reproduce each of those allegedly "excessive" or "expanded" paragraphs in the table below, alongside references to the specific location(s) in the state court record where the same facts were presented:

| Petition Paragraph | Summary of Subject Matter of Paragraph | Location of Identical Facts and Argument Presented to State Courts |
|---|---|---|
| 54 | Shipp was a key trial witness who testified that Robinson was present the night of the murder, was a high-ranking member of the Gangster Disciples, and that Robinson ranked above Prentiss Phillips. | Post-Conviction Appeal to Court of Criminal Appeals at 6, 14, 19-20 (ECF No. 25-1 at 26, 34, 39-40, PageID 7946, 7954, 7959-60); Application for Permission to Appeal to Tennessee Supreme Court at 11-14 (ECF No. 25-5 at 18-21, PageID 8347-8350). |
| 56 | On cross-examination, Shipp admitted that his trial testimony contradicted his May 1997 statement, and did not mention his November 5, 1998 meeting with prosecutors. | Post-Conviction Appeal to Court of Criminal Appeals at 22-23 (ECF No. 25-1 at 42-43, PageID 7962-63); Application for Permission to Appeal to Tennessee Supreme Court at 14 (ECF No. 25-5 at 21, PageID 8350). |

| Petition Paragraph | Summary of Subject Matter of Paragraph | Location of Identical Facts and Argument Presented to State Courts |
|---|---|---|
| 60 | Robinson argued in his Motion for a New Trial that the State failed to disclose an agreement between Shipp's counsel and the State. | Amended Post-Conviction Petition at 26-27 (ECF No. 24-1 at 67-68, PageID 4852-53); Application for Permission to Appeal to Tennessee Supreme Court at 23 (ECF No. 25-5 at 30, PageID 8359). |
| 61, 63 | In a hearing on Robinson's Motion for New Trial, prosecutors argued that there had been no agreement with Shipp, with "no offers made to him," and ADA Branham never mentioned her November 5, 1998 meeting with Shipp, and never mentioned or referred to the transcript of that meeting | Amended Post-Conviction Petition at 26-27 (ECF No. 24-1 at 67-68, PageID 4852-53); Application for Permission to Appeal to Tennessee Supreme Court at 23 (ECF No. 25-5 at 30, PageID 8359). |
| 87-91 | The only witness other than Shipp who testified about Robinson's involvement in the murder was an unreliable gang member named Chris James whose testimony was marred by inconsistencies | Post-Conviction Appeal to Court of Criminal Appeals at 15-19, 75-76 (ECF No. 25-1 at 35-39, 95-96, PageID 7955-59, 8015-16). |
| 94-96 | The trial court referred to Shipp's testimony as "devastating" to Robinson's defense, and Robinson's counsel testified that the November 5, 1998 statement would have significantly bolstered their defense | Post-Conviction Appeal to Court of Criminal Appeals at 37-39, 57 (ECF No. 25-1 at 57-59, 77, PageID 7977-79, 7997). |

As demonstrated in the above table, Robinson presented his *Napue* argument fully – including all of the assertions in the paragraphs that the State now questions – in the state courts. Even if the State could properly attempt to pinpoint individual paragraphs of the Petition for excision from Robinson's claims – which, as explained in section II above, it cannot do, *see also Jells*, 538 F.3d at 504 ("[I]t is sufficient if the substance of the claim was presented to the state courts . . . .") – Robinson in fact presented these allegations in the state court proceedings and therefore has not procedurally defaulted any of allegations supporting his *Napue* claim here.

**B.    The State Court's Decision Was Contrary to Clearly Established Federal Law As Determined by the Supreme Court of the United States.**

With no argument or detail, the State asserts without support that the state courts' adjudication of Robinson's *Napue* claim "did not involve an unreasonable application of clearly established federal law nor was it based upon an unreasonable application of clearly established federal law, nor upon an unreasonable determination of the facts in light of the evidence before it." Answer at 10-11. The State's conclusory non-argument on this point leaves little more to be said in this Reply, and Robinson respectfully refers the Court to his Petition for more detailed argument as to the Tennessee Court of Criminal Appeals' errors of law.

In particular, the State fails to dispute Robinson's argument (set forth in full in the Petition) that the Tennessee Court of Criminal Appeals erroneously adjudicated Robinson's *Napue* claim under a standard of materiality that is directly contrary to and much easier for the State to meet than that prescribed by the United States Supreme Court. Specifically, after holding that the state prosecutors at Robinson's trial had in fact elicited false testimony from Shipp denying the promise of consideration he had received for his testimony against Robinson, the Court of Criminal Appeals ruled that this *Napue* violation was not "material" unless Robinson proved a "reasonable probability" that the outcome of his trial would have been different in the absence of Shipp's uncorrected false testimony elicited by the State at trial. *Robinson III*, 2013 WL 1149761 at *63.

The U.S. Supreme Court has made clear, however, that the "reasonable probability" standard is not the correct standard for *Napue* claims. While a failure to disclose *Brady* evidence is evaluated under a "reasonable probability" standard, *Strickler v. Greene*, 527 U.S. 263, 280 (1999), *Napue* imposes a stricter burden on the government. Because "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair," *United*

*States v. Agurs*, 427 U.S. 97, 103 (1976), a new trial in the *Napue* context must be granted so long as the perjured testimony "*could . . . in any reasonable likelihood* have affected the judgment of the jury." *Giglio,* 405 U.S. at 154. And the Supreme Court has made clear that the "any reasonable likelihood" standard is a much less stringent one for defendants than the "reasonable probability" standard. *Agurs*, 427 U.S. at 104. *See also Rosencrantz v. Lafler*, 568 F.3d 577, 584 (6th Cir. 2009) (defense burden is "less stringent" for *Napue* claims than under the "reasonable probability" standard). Because the Tennessee Court of Criminal Appeals misunderstood and misapplied the materiality standard required by *Napue, Giglio,* and *Agurs* – all long-standing Supreme Court cases – it "unreasonabl[y] appli[ed] clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and its decision must be overturned.

## IV.   The State Court's Decisions Concerning Robinson's *Brady* Claim Must Be Overturned (Ground No. 2)

Robinson's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), is related to, but distinct from, his *Napue* claim. In brief, as detailed more fully in Robinson's Petition, Shipp's November 5, 1998 statement to Robinson's prosecutors is indisputably *Brady* material favorable to the defense, the trial record indicates that it was not provided to the defense, and the statement was material under the long-established materiality standard articulated by the Supreme Court. *See* Petition at ¶¶ 100-166. The state does not contest any of these points in its Answer.

Instead, in its opposition to Robinson's *Brady* claim, the State acknowledges that Robinson raised the claim below, but asserts in a conclusory fashion that the state court's adjudication "did not involve an unreasonable application of clearly established federal law nor was it based on an unreasonable application of clearly established federal law, nor upon an unreasonable determination of the facts in light of the evidence before it." *See* Answer at 11. As

with Robinson's *Napue* claim, the State does not cite *Brady* or any other substantive case law in its opposition, and other than its conclusory assertion that the state courts' adjudication of Robinson's *Brady* claim was appropriate, the State does not engage any of Robinson's substantive arguments.

Even though the State acknowledges that Robinson raised the claim below, the State again repeats its refrain that certain sub-paragraphs of Robinson's claim are procedurally defaulted because they "differ in kind or otherwise exceed the allegations of the state court's filings by way of additional or expanded factual basis." *See* Answer at 11. In support of that contention, the State identifies six of the 67 paragraphs comprising Robinson's *Brady* argument in the Petition that it contends are procedurally defaulted. Once again, the State's assertions are unfounded.

**A.    The Sub-Paragraphs Identified By the State in Robinson's *Brady* Claim Were Not Procedurally Defaulted**

As explained at greater length in section II.B, *supra*, procedural default only occurs where a habeas petition "fundamentally alters" the claims presented to the state court. *Vasquez*, 474 U.S. at 260. Procedural default is avoided if "the substance of the claim was presented to the state courts." *Jells*, 538 F.3d at 504.

The State's only assertion in support of its contention that certain of Robinson's allegations in his *Brady* argument were procedurally defaulted is another rote recitation of the assertion that Robinson's allegations "differ in kind or otherwise exceed the allegations of the state court's filings by way of additional or expanded factual basis," followed by citation to six paragraphs out of the 67 paragraphs concerning the *Brady* claim in Robinson's Petition. The State does not even attempt to explain how they exceed the claim Robinson made in the state courts. In fact, the State is simply wrong as to every one of them. Those paragraphs contain

facts that were raised extensively and in detail below.  For ease of reference, we present the allegedly "excessive" or "expanded" paragraphs in the table below, with reference to the specific location(s) in the state court record where the same facts were presented:

| Petition Paragraph | Summary of Subject Matter of Paragraph | Location of Identical Facts and Argument Presented to State Courts |
|---|---|---|
| 118 | Robinson's trial counsel testifies that he had not received the November 5 statement | Post-Conviction Appeal to Court of Criminal Appeals at 37 (ECF No. 25-1 at 57, PageID 7977). |
| 122 | Robinson's direct appeal counsel testifies that the files of trial counsel did not contain the November 5 statement | Post-Conviction Appeal to Court of Criminal Appeals at 35-36 (ECF No. 25-1 at 55-56, PageID 7975-76). |
| 132 | At the hearing for a motion for a new trial, ADA Branham testified that there had been "no offer" made to Shipp | Amended Post-Conviction Petition at 26-27 (ECF No. 24-1 at 67-68, PageID 4852-53); Application for Permission to Appeal to Tennessee Supreme Court at 23 (ECF No. 25-5 at 30, PageID 8359). |
| 133 | At the post-trial motion hearing, ADA Branham referred only to a single "statement" of Shipp, even though there had been two statements, including the November 5 statement | Amended Post-Conviction Petition at 26-27 (ECF No. 24-1 at 67-68, PageID 4852-53); Application for Permission to Appeal to Tennessee Supreme Court at 23 (ECF No. 25-5 at 30, PageID 8359). |
| 146 | While Shipp identified Robinson at trial, Shipp initially said in the November 5 statement that he could not identify Robinson | Post-Conviction Appeal to Court of Criminal Appeals at 21-23 (ECF No. 25-1 at 41-43, PageID 7961-63). |
| 148 | While Shipp testified at trial as to Robinson's alleged rank within the Gangster Disciples, he had been uncertain about Robinson's rank in the November 5 statement | Post-Conviction Appeal to Court of Criminal Appeals at 20, 34 (ECF No. 25-1 at 40, 54, PageID 7960, 7974). |

The State does not dispute that Robinson fairly presented and thereby preserved his *Brady* claim for this Court's federal habeas review.  As shown above, while the State has made unsupported assertions here that particular paragraph allegations within the *Brady* claim set

forth in the Petition are somehow barred by procedural default, Robinson's extensive and detailed arguments on this issue in the state courts refute those assertions as to every one of the paragraphs identified.

    **B.**    **The State Court Decision on Robinson's *Brady* Claim Resulted From an Unreasonable Determination of the Facts and an Unreasonable Application of the Law.**

Even if the state courts' decision were deemed to be "on the merits" within the meaning of AEDPA (despite their application of an inappropriate and unduly burdensome "clear and convincing" standard, *see* section I above), Mr. Robinson still would be entitled to habeas relief from this Court. That is because the Tennessee courts' *Brady* determination rests on both an unreasonable determination of the facts and an unreasonable application of the law. Either reviewed *de novo* or under the "unreasonable determination" standard, the facts banish any doubt that the state courts' findings concerning the State's failure to disclose the November 5, 1998 Statement are self-contradictory and irrational, and that this undisputed, critically important *Brady* material was never disclosed to Robinson at any time prior to his post-conviction proceedings.

The State does not dispute in its Answer that the November 5 Statement is indeed *Brady* material that the State was absolutely required to disclose to Robinson prior to his trial. In the transcribed statement, ADA Branham promised Shipp that his testimony against Robinson "will" help him save his life, and promised that the state would "take into consideration whatever you do to help us get Gregory [Robinson] . . . ." *See* Petition at 41. The law of the Sixth Circuit is clear that *Brady* applies to any agreement, even a "less formal, unwritten or tacit agreement" between a prosecutor and a witness, so long as there is an offer of some benefit for the witness's testimony. *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). The November 5 Statement is also undisputedly so-called

16

"*Jencks* material," *see* Jencks Act, 18 U.S.C. § 3500 (2012), because it was a prior statement by a prosecution witness.].  Even the Tennessee Court of Criminal Appeals held that the November 5 Statement was *Brady/Jencks* material that had to be disclosed.

The State's Answer, however, completely fails to address the Petition's extensive argument demonstrating the irrationality of the state court's finding that the November 5 Statement was provided to the junior member of Robinson's trial team, Mr. Schreiner, but that Schreiner inexplicably never disclosed it or said anything to anyone – including lead trial counsel, appellate counsel, or any of the other lawyers representing other defendants facing related charges – about it.  The evidence commanding the conclusion that the November 5 Statement was not disclosed is set forth at length in Robinson's Petition, *see* Petition at 42-51. None of these facts is contested or disputed by the State in its Answer here, including:

- No reference to the November 5 Statement appears in the record of the pretrial, trial, post-trial, or direct appeal proceedings in this case, or in the trial proceedings of the other defendants against whom Shipp testified.  *See* Petition at ¶ 114.

- At the conclusion of ADA Wulff's direct examination of Shipp, and immediately before cross-examination, Wulff announced to the trial court that "I'm about to provide *Jencks* material to the defense counsel.  This would be for a statement made by Jarvis Shipp, and it was made on Tuesday, May 27, 1997 . . . ."  *See* Petition at ¶ 129.  She did not identify the November 5 Statement.  Robinson's lead trial counsel then advised that he had only a single piece of *Jencks* material – namely, the May 1997 statement a copy of which Wulff was about to provide again.  *See* Petition at ¶ 128.  Wulff did not provide the November 5 Statement, though it had to be obvious to ADA Wulff and Branham at that point that Robinson's lead counsel did not have it and was not aware of it.

- At a post-conviction hearing, Robinson's trial counsel and direct appeal counsel testified, unequivocally and under oath, that they had never received the November 5 Statement.  *See* Petition at ¶ 116-21.  The post-conviction court found Robinson's counsel to be credible, but nonetheless contrived a wildly illogical factual scenario to explain away the State's *Brady* violation.

- Counsel for two of Robinson's co-defendants testified at Robinson's post-conviction hearing that they also did not receive the November 5 Statement at the time of their clients' trials, even though Shipp testified against their clients, too. *See* Petition at ¶ 123.

- With full knowledge of the November 5 Statement and its contents, ADA Branham and Wulff elicited from Shipp and failed to correct false denials of any promise of consideration by the State, and then exploited that false testimony by improperly vouching for Shipp's veracity in their summations to the jury.

As detailed in the Petition, the only plausible inference that can be drawn from the record facts, either *de novo* or under a more exacting "unreasonable determination" standard, is that the November 5 Statement was not disclosed to Robinson and his counsel at his trial.  To conclude otherwise would require this Court to disregard, among other things, (1) the testimony of Robinson's trial and appellate counsel that they never received the November 5 Statement, (2) the testimony of Robinson's co-defendants that they never received the November 5 Statement, and (3) the assertion that trial attorneys for Robinson or his co-defendants would have seen fit to cross-examine Shipp about the State's promise that his testimony would "save [his] life,"[2] and to flatly ignore the facts that (1) the prosecutors cagily referred only to *one* piece of *Jencks* material – a different, earlier statement – without mentioning or turning over the November 5 Statement, and (2) Shipp's testimony that he had not received any promises for his testimony went uncorrected by the State at Robinson's trial.  Upon inspection, this counterfactual conclusion collapses under its own weight.

Finally, the Tennessee courts' ruling that November 5 Statement was not material is irrational and must be overturned.  Materiality requires a "reasonable probability" that the outcome of the trial would have been different if the evidence had been disclosed.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  The question for courts assessing materiality is "whether in [the] absence [of the proffered evidence] he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  The standard is

---

[2] If true, counsel's failure to adequately cross-examine Shipp would itself constitute ineffective assistance warranting relief.  *See* Petition at ¶¶ 167-76.

amply met here.  The November 5 Statement would have revealed Shipp's powerful incentive to lie, would have revealed inconsistencies between Shipp's damning trial testimony and his pre-deal statement to prosecutors, and would have sharply undercut the credibility of the State's key witness.  *See, e.g., LaCaze v. Warden Louisiana Correctional Institute for Women*, 645 F.3d 728, 736 (5th Cir. 2011) (undisclosed agreement with a witness to testify in exchange for declining to prosecute witness's son is material under "reasonable probability" standard even where cross-examination had already revealed witness's own cooperation agreement); *cf. Harris*, 553 F.3d at 1034 ("Considerable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness.").  Even if not reviewed *de novo*, as it should be, the Tennessee Courts' determination that the State *had* turned over the November 5 Statement and that it was not material constitute an unreasonable determination of the facts and an unreasonable application of clearly established federal law.  Robinson is entitled to relief on this ground.

**V.      The State's Assertion That Some of Robinson's Federal Constitutional Claims Were Presented Solely Under a State Law Theory Is Wrong, and None of Robinson's Claims Is Procedurally Defaulted on That Ground.**

Robinson's federal constitutional claims are not procedurally defaulted because they were fairly presented as federal constitutional claims during state court proceedings.  The State alleges that certain claims were not fairly presented because they were presented solely under a state-law theory.  In each instance, however, the record demonstrates that State's allegations are incorrect and must be rejected.

The Sixth Circuit has established a four-part test to determine if a petitioner's state court claims were fairly presented as federal constitutional claims.  The Court examines the claims for:  (1) reliance upon federal cases which perform a constitutional analysis; (2) reliance

upon state cases which perform a federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; and (4) alleging facts well within the mainstream of constitutional law. *Scuba v. Brigano*, 527 F.3d 479, 485-86 (6th Cir. 2007); *see also Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Even if the federal constitutional bases for his claims were not as comprehensively presented as the parallel state-law foundation for those claims, "the fair presentation requirement does not mandate extensive elaboration." *Ross v. Pineda*, 549 F. App'x 444, 455 (6th Cir. 2013). The claims need only meet one of the four parts described in *Scuba*.[3] With respect to each of the claims that the State challenges here, that standard has plainly been met.

### A. Ground No. 20 Was Fairly Presented In State Court As a Federal Constitutional Claim

Ground No. 20 asserts that the trial court failed to instruct the jury on the lesser included offenses of facilitation and solicitation. Robinson made this claim in his direct appeal to the Tennessee Court of Criminal Appeals. arguing that facilitation and solicitation were lesser included offenses of criminal responsibility for first-degree murder. While Robinson's argument

---

[3] In addition to the federal claims detailed in this section, the State claims that Ground No. 43 is barred by procedural default because it was not raised in direct appeal or post-conviction appeal in the state courts. Answer at 27. Ground No. 43 asserts that Tennessee's Use of the Death Penalty Violates International Treaties, Laws, and Norms. However, this claim in fact was raised in Robinson's capital post-conviction appeal to the Tennessee Court of Criminal Appeals. Robinson's brief asserted that "Mr. Robinson's Rights Under International Law Were Violated by the Imposition of the Death Penalty." ECF No. 25-1 at 167-69, PageID 8087-89. Because it was raised during post-conviction proceedings, it is not barred by procedural default.

focused primarily on state law, Robinson also phrased the claim "in terms of constitutional law," satisfying the *Scuba* requirement.  Robinson argued:

> In this capital case, it also is required to avoid arbitrariness in the jury's decisionmaking by the Eighth Amendment, as made applicable through the Fourteenth Amendment.  *See, e,g,*, *Beck v. Alabama*, *supra*.  Thus Tenn. Const. art I, § 16 also would apply. And the right to jury trial further would be protected by the Sixth Amendment of the U.S. Constitution, and by the federal due process protection afforded to such state-created rights. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); *Presnell v. Georgia*, 439 U.S. 14 (1978); *Rickman v. Bell*, 854 F. Supp. 1305, 1310-13 (M.D. Tenn. 1994).

ECF No. 23-1 at 144 n.68, PageID 3795.  This argument appears nearly identically in Robinson's brief to the Tennessee Supreme Court.  *See* ECF No. 23-9 at 94 n.81, PageID 4388. The claim was fairly presented as a federal constitutional claim.

### B.   Ground No. 23 Was Fairly Presented In State Court As a Federal Constitutional Claim

In Ground No. 23, Robinson asserts that the trial court erred in admitting into evidence the victim's reconstructed skull and photos of the victim's body.  In Robinson's direct appeal to the Tennessee Court of Criminal Appeals, Robinson argued: "Display of the Victim's Actual Skull and Admission of the Several Gruesome Photographs of the Body Obviously Inflamed the Jury and Violated Defendant's Due Process Rights to a Fair Trial on Guilt-or-Innocence and on Sentencing Under *State v. Banks*."  ECF No. 23-1 at 113, PageID 3764. Robinson referred to both the relevant Tennessee case and the federal law influence on the state law: "Unfairly prejudicial evidence is that evidence which has '[a]n undue tendency to suggest decision on an improper basis, commonly . . . an emotional one.'  *State v. Banks*, *supra*, 564 S. W.2d at 95 I (quoting Advisory Commission Note to Fed. R. Evid. 403)  . . . ."  ECF No. 23-1 at 120, PageID 3771.  In doing so, Robinson incorporated the state court's analysis of federal law. Specifically, *State v. Banks*, 564 S.W.2d 947 (Tenn. 1978), held that it was error for a trial court

21

to admit gruesome photographs of a corpse in a homicide case because the prejudicial effect outweighed the probative value.  In reaching this decision, the Tennessee Supreme Court analyzed Federal Rule of Evidence 403 and the accompanying explanatory note from the Advisory Committee.  *Id.* at 951.  The court stated: "We regard this rule as one that is fair and just and strikes a reasoned balance between probative value and unfair prejudice; we approve it as a proper guide to be followed by our courts in both criminal and civil cases."  *Id.*

Additionally, Robinson asserted the federal nature of the claim in his direct appeal when addressing the admission of photograph Exhibit 38 in the Sentencing Phase.  Robinson stated:

> The photograph was admitted in violation of Tenn. R. Evid. 401, 402, and 403; of the sentencing statute, T.C.A. § 39-13-204(c); of the case law governing admission and exclusion of evidence at sentencing hearings; and *of those provisions of the Tennessee and United States Constitutions* that provide for caution and a "high degree of reliability in deciding whether a death sentence is appropriate," and thus forbid wantonness, arbitrariness and freakishness in the imposition of sentence at capital trials.  Tenn. Const. art I, § 16; *US. Const., Amend. 8.*

ECF No. 23-1 at 127, PageID 3778 (footnotes omitted) (emphases added).  The federal constitutional nature of the claim was clearly identified.  Robinson was not required to provide supporting case law or citations; he only needed to identify the federal constitutional nature of the claim.  Moreover, he did not limit his claim to a violation of the Eighth Amendment.  Although he cited to the Eighth Amendment specifically, he stated more broadly that it was a violation "of those provisions of the Tennessee and United States Constitutions that . . . forbid wantonness, arbitrariness, and freakishness in the imposition of sentence at capital trials."  ECF No. 23-1 at 127, PageID 3778.  The claim was fairly presented as a federal constitutional claim.

**C.      Ground No. 25 Was Fairly Presented In State Court As a Federal Constitutional Claim**

Ground No. 25 asserts that the trial was rendered unfair because of the presence of a biased juror.  In Robinson's direct appeal to the Tennessee Court of Criminal Appeals, Robinson argued that his "right to an impartial jury trial was violated" because the trial court did not inquire into allegations raised by Robinson prior to the sentencing phase that a juror had perjured herself and that she had or was about to have "extraneous contacts."  ECF No. 23-1 at 261-62, PageID 3912-13.  Arguing that "his right to an impartial jury trial was violated" phrased the claim "in terms of constitutional law or in terms sufficiently particular to allege a denial" of Robinson's federal constitutional right to an impartial jury trial, thus satisfying *Scuba.  See* 527 F.3d at 485-86.  The claim was fairly presented as a federal constitutional claim.

**D.      Ground No. 39 Was Fairly Presented In State Court As a Federal Constitutional Claim**

Ground No. 39 asserts that the under-representation of women as grand jury forepersons in Shelby County, and the failure of counsel to raise that issue at trial, violated Robinson's constitutional rights.  This claim was presented in state court as a federal constitutional claim.  In his capital post-conviction appeal to the Tennessee Court of Criminal Appeals, Robinson asserted: "The Under-Representation of Women as Grand Jury Forepersons In Shelby County [and] the Failure of Counsel to Raise that Issue Violated Mr. Robinson's *Sixth and Fourteenth Amendment* Rights."  ECF No. 25-1 at 155-57, PageID 8075-77 (emphasis added).  Robinson cited to two Supreme Court cases – *Rose v. Mitchell*, 443 U.S. 545 (1979) and *Hobby v. United States*, 468 U.S. 339 (1984) – in his claim that the discrimination in the selection of the grand jury foreperson was unconstitutional.  ECF No. 25-1 at 156, PageID 8076.  Though the claim was not raised on direct appeal, a state prisoner avoids procedural default so long as he " give[s] the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999).  Because the claim was made during the post-conviction proceeding, the state had a full opportunity to resolve the constitutional issue.  Thus, the claim was fairly presented as a federal constitutional claim to the state court.

> **E.    Ground No. 41 Was Fairly Presented In State Court As a Federal Constitutional Claim**

Ground No. 41 asserts that Tennessee's appellate review process in death penalty cases does not ensure that capital punishment is not imposed arbitrarily and capriciously.  The State argues that Robinson did not present this claim on direct appeal.  However, in his direct appeal to the Tennessee Court of Criminal Appeals, Robinson asserted: "The appellate review process is constitutionally inadequate because it is not meaningful, per *Clemons v. Mississippi*, *supra*, 494 U.S. 738 [] (1990)."  ECF No. 23-1 at 279, PageID 3930.  In *Clemons*, the Supreme Court analyzed whether the appellate review process of a jury-imposed death sentence violated the Eighth Amendment.   In doing so, the Court "performed a constitutional analysis," and consequently, Robinson's reliance on the case meets the requirement for a fairly presented federal claim as stated in *Scuba v. Brigano*, 527 F.3d 479, 485-86 (6th Cir. 2007).  Moreover, Robinson concluded the argument in his direct appeal that the Tennessee capital punishment system was generally unconstitutional by stating: "All these issues are raised to be considered under Tennessee as well as federal constitutional law and principles."  ECF No. 23-1 at 279, PageID 3930.  The claim was fairly presented as a federal constitutional claim.

<u>**CONCLUSION**</u>

For the reasons set forth above and in Robinson's Petition, Robinson is entitled to habeas relief.

Dated: March 24, 2015                    Respectfully Submitted,

                                         /s/ Robert L. Hutton
                                         Robert L. Hutton
                                         GLANKLER BROWN, PLLC
                                         6000 Poplar Avenue
                                         Suite 400
                                         Memphis, TN 38119
                                         Ph: 901-525-1322
                                         Fax: 901-525-2389
                                         rhutton@glankler.com


                                         P. Benjamin Duke
                                         COVINGTON &BURLING LLP
                                         620 Eighth Avenue
                                         New York, NY 10018
                                         Ph: 212-841-1072
                                         Fax: 646-441-9072
                                         bduke@cov.com