IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                                   |     |                              |
| --------------------------------- | --- | ---------------------------- |
|                                   | )   |                              |
| GREGORY ROBINSON,                 | )   | Electronically filed,        |
|                                   | )   |                              |
| Petitioner,                       | )   | No. 2:14-cv-02630-SHL-tmp    |
|                                   | )   |                              |
| v.                                | )   | CAPITAL CASE                 |
|                                   | )   |                              |
| WAYNE CARPENTER, Warden,          | )   |                              |
| Riverbend Maximum Security        | )   |                              |
| Institution,                      | )   |                              |
|                                   | )   |                              |
| Respondent.                       | )   |                              |

---

## MEMORANDUM OF FACT AND LAW IN SUPPORT OF
## PETITIONER GREGORY ROBINSON'S MOTION TO APPLY DE NOVO REVIEW

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

    A.    Procedural History ............................................................................................ 4

    B.    Robinson's *Habeas* Claims................................................................................ 4

        1.    The Prosecution Knowingly Elicited False Testimony From the
            Key Witness Against Robinson, in Violation of *Napue v. Illinois*. ........... 4

        2.    The Prosecution Failed to Disclose the Key Witness's Pre-Trial
            Statement, Which Proved That His Testimony Was False, in
            Violation of *Brady v. Maryland*.................................................................. 7

        3.    Robinson's Counsel Were Ineffective. ...................................................... 8

ARGUMENT....................................................................................................................... 9

I.    The Court Should Review Robinson's *Napue* Claim *De Novo*. ........................ 9

    A.    The Tennessee Court of Criminal Appeals Denied Robinson's Claim
        Based on the Wrong Materiality Standard............................................................ 9

    B.    Because the Tennessee Court of Criminal Appeals Applied the Wrong
        Materiality Standard, This Court Should Review Robinson's *Napue* Claim
        *De Novo*. ......................................................................................................... 10

        1.    The CCA's Application of the Wrong Materiality Standard for
            *Napue* Claims Was "Contrary to . . . Clearly Established Federal
            law" Under AEDPA................................................................................ 11

        2.    The Tennessee Court of Criminal Appeals' Use of the Wrong
            Materiality Standard Means That There Was No "Adjudicat[ion]
            on the Merits"  Under AEDPA. .............................................................. 12

II.    The Court Should Review Robinson's *Brady* Claim *De Novo*........................ 14

    A.    Robinson's *Brady* Claim is Governed By a "Preponderance of the
        Evidence" Standard.............................................................................................. 14

    B.    The Tennessee Post-Conviction Courts Applied a "Clear and Convincing
        Evidence" Standard to Robinson's *Brady* Claim................................................. 15

i

C.      The Tennessee "Clear and Convincing" Standard is Inconsistent With the
        Federal "Preponderance" Standard. .................................................................... 16

D.      Because the Tennessee Courts Applied the Wrong Standard of Proof, This
        Court Should Adjudicate Robinson's *Brady* Claim *De Novo*. ............................. 18

        1.      The Tennessee Courts' Failure to Use the Correct Standard of
                Proof Was "Contrary to . . . Clearly Established Federal Law"
                Under AEDPA. ...................................................................................... 18

        2.      The Tennessee Courts' Failure to Use the Correct Standard of
                Proof Means That There Was No "Adjudicat[ion] on the Merits"
                Under AEDPA. ...................................................................................... 19

E.      Tennessee's Standard is an Outlier Nationally and May Still Apply to
        Tennessee State-Law Claims. ............................................................................. 21

III.    The Court Should Review the Factual Issues Underlying Robinson's Ineffective
        Assistance Claims and Other Claims *De Novo*. ............................................................. 21

CONCLUSION ................................................................................................................. 22

## INTRODUCTION

Petitioner Gregory Robinson moves the Court to review his *habeas* claims *de novo* rather than to apply the deferential standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). No deference is appropriate here because the Tennessee courts applied the wrong legal standards to Robinson's federal claims.

Robinson was convicted and sentenced to death in 1998 for first degree murder and aggravated kidnapping. His petition for a writ of *habeas corpus* asserts a number of constitutional claims, including claims relating to the testimony of Jarvis Shipp, the State's key witness against Robinson at trial. The prosecution elicited trial testimony from Shipp falsely denying that the State had made any promises to him in exchange for his testimony, when in fact the State had promised Shipp that his testimony against Robinson "will" help to save his life by avoiding the death penalty for Shipp's role in the murder and that he would receive "consideration" for "whatever you do to help us get . . . Gregory [Robinson]." On post-conviction review, the Tennessee Court of Criminal Appeals concluded that this testimony by Shipp was false and that the prosecution failed to correct that testimony, though it nevertheless denied Robinson a new trial. These now-undisputed facts undergird Robinson's claim that the State violated his due process rights pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959).

Robinson's post-conviction counsel discovered the existence of the State's promise to Shipp for the first time in 2007, when a 17-page transcript (the "November 5 Statement") of Shipp's meeting with prosecutors – held on November 5, 1998, just days before Robinson's 1998 trial – came to light. Robinson contended that the State had failed to disclose the transcript of the promise, in violation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over the November 5 Statement, which contained exculpatory and impeachment material critical for his defense. The Tennessee post-conviction courts rejected

this claim based upon both legal errors and illogical factual findings lacking any reasonable foundation in the record.

This Motion does *not* address the summary judgment arguments for overturning Robinson's convictions and sentence under the *most* stringent AEDPA standard of review – although even under those standards Robinson is entitled to a new trial based on the above claims and others set forth more fully in his Petition. Rather, this Motion demonstrates that, *at the threshold*, this Court should hold that Robinson's claims are *not* subject to typical AEDPA deference, but rather must be reviewed *de novo* by this Court, because the Tennessee post-conviction courts applied the wrong, excessively demanding legal standards to his federal constitutional claims. When a state court has applied the wrong legal standard, federal courts apply *de novo* review on the grounds that, under AEDPA, (a) application of the wrong standard is "contrary to . . . clearly established federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), and/or (b) a state court adjudication using the wrong standard is not "on the merits," which is a pre-condition for AEDPA deference, *id*. § 2254(d). Under either provision, the result is the same: *de novo* review of Robinson's federal claims.[1]

In particular, the Tennessee Court of Criminal Appeals applied an incorrect, unduly stringent (for Robinson) standard of "materiality" to Robinson's claim under *Napue*. The United States Supreme Court has clearly established that a *Napue* violation such as that acknowledged by the state court here is material if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury," and has recognized that the *Napue* standard is

---

[1] Even without the benefit of *de novo* review, Petitioner contends that he is entitled to relief under the AEDPA standard of review because the decisions of the Tennessee post-conviction courts reflect an "an unreasonable application of . . . clearly established Federal law" and "an unreasonable determination of the facts" pursuant to 28 U.S.C. § 2254(d)(1) and (d)(2).

significantly more favorable to defendants than the distinct materiality standard—a "reasonable probability" that the "outcome would have been different"—applicable to claims under *Brady* and *Strickland v. Washington* 466 U.S. 668 (1984). *See* part I.A. below. By ignoring this difference and failing to apply the correct, well-established legal standard to Robinson's *Napue* claim, the Tennessee appellate court deprived Robinson of his rights, and its decision on this claim is not entitled to AEDPA deference.

The same is true with respect to Robinson's *Brady* and other claims, but for a distinct reason. In reviewing Robinson's federal constitutional claims, the Tennessee post-conviction courts applied a Tennessee burden-of-proof statute requiring petitioners in post-conviction proceedings to prove their factual allegations by *"clear and convincing"* evidence. *See* part I.B. below. Under federal law, however, Robinson was required to prove his *Brady* claim only by a *preponderance* of the evidence. Robinson's *Brady* claim was rejected, in part, based on a hotly disputed factual question—whether the State had suppressed the evidence of its promise to Shipp. The Tennessee courts' imposition of a higher standard of proof as to this dispositive factual issue indelibly tainted their decision, thereby leaving the state record fundamentally ambiguous as to whether the state court found Robinson had met the preponderance standard and would have prevailed under that standard. Because burden of proof is a substantive component of Robinson's federal constitutional claims, this error deprived Robinson of any "adjudication on the merits" of the *Brady* issue and therefore requires *de novo* review by this Court. The same problem infects the Tennessee courts' factual findings on Robinson's other claims, including ineffective assistance of counsel, and dictates the same level of review for those claims here.

**BACKGROUND**

**A.      Procedural History**

In November 1998, Gregory Robinson was convicted and sentenced to death for the aggravated kidnapping and first degree murder of Vernon Green in Memphis's Bellevue Park. On appeal, the Tennessee Court of Criminal Appeals ("CCA") overturned the conviction.  *See State v. Robinson*, No. W2001-01299-CCA-R3-DD, 2003 WL 21946735 (Tenn. Crim. App. Aug. 13, 2003).  The Tennessee Supreme Court reversed and reinstated the conviction.  *See State v. Robinson*, 146 S.W.3d 469 (Tenn. 2004).  The United States Supreme Court denied Robinson's petition for writ of *certiorari*.

Robinson petitioned for post-conviction relief in Tennessee.  Robinson argued, *inter alia*, that the State elicited false testimony; the State failed to produce *Brady* material; and trial and appellate counsel rendered constitutionally ineffective assistance.  The post-conviction court denied relief, and the Tennessee CCA affirmed.  *See Robinson v. State*, No. W2011–00967–CCA–R3–PD, 2013 WL 1149761 (Tenn. Crim. App. Mar. 20, 2013) ("*Robinson III*").  The Tennessee Supreme Court denied Robinson's application for permission to appeal, and the United States Supreme Court denied Robinson's petition for writ of *certiorari*.

On August 13, 2014, Gregory Robinson petitioned this Court under 28 U.S.C. § 2254 for a writ of *habeas corpus*.

**B.      Robinson's *Habeas* Claims**

**1.      The Prosecution Knowingly Elicited False Testimony From the Key Witness Against Robinson, in Violation of *Napue v. Illinois*.**

Vernon Green was kidnapped and murdered in Bellevue Park in Memphis by six members of the "Gangster Disciples."  Petition for Writ of Habeas Corpus ("Pet.") ¶ 36. It is undisputed that Robinson was not one of those six men.  *Id.* ¶ 37.  An essential component of the

prosecution's theory of first-degree murder at trial was that Robinson was a high-ranking member of the gang—the alleged "chief of security"—who possessed the ultimate authority to order the murder and exercised that authority during a gang meeting at an apartment in Hurt Village, before the six men who eventually executed Green removed him from the apartment. *Id*. ¶ 39.

One of those six men, Jarvis Shipp, was the prosecution's star witness against Robinson at trial.. Shipp was then also under indictment for the murder and facing the death penalty. *Id*. ¶ 50. At trial, Shipp identified Robinson as having given the order and was the sole prosecution witness to testify as to Robinson's rank within the Gangster Disciples. *Id*.

Shipp's trial testimony was in stark contrast to a statement that Shipp had given to the police in May 1997 (the "May 1997 Statement"), less than one month after the murder. At that time, Shipp described his own involvement with the murder but failed to mention Robinson and failed to identify him in multiple photo spreads. Instead, Shipp stated that Prentiss Phillips gave "the say so" and was "giv[ing] the orders." *Id*.

By the time of trial, however, Shipp had changed his testimony. He identified Robinson as ranking above Phillips and as having ordered the murder. *Id*. ¶ 54. In order to insulate Shipp from impeachment, the prosecution elicited a disavowal from Shipp that he had received any promises from the State:

> Q:      Has the State made any promises regarding your testimony?
>
> A:      No, ma'am.

*Id*. ¶ 55. The prosecution subsequently vouched for this testimony in closing, arguing that Shipp "didn't get a deal, but he told you the truth." *Id*. ¶ 58.

It is now undisputed—and the Tennessee courts have held—that this testimony was false and that the prosecution engaged in misconduct by eliciting it. *See Robinson III,* at *63. The truth was that the State had promised—just two weeks before trial on November 5, 1998—that his testimony "will" help save his life and that the prosecution "will certainly take it into consideration":

| [ADA]: | Ok, now, we probably will want you to testify at this thing. |
| --- | --- |
| Shipp: | Yes, Mam [sic]. |
| [ADA]: | Are you up for it? |
| Shipp: | If it going to help save my life [sic]? |
| [ADA]: | *Yeah, it will.*  I can't make any deals right now but *we will certainly take into consideration* whatever you do to help us get Gregory [Robinson] and Prentiss [Phillips]. |

Pet. ¶ 52 (emphases added).  This promise was recorded and subsequently transcribed by one of the prosecutors in the November 5 Statement.  But as explained below, the transcript was not disclosed to defense counsel before trial.

The Tennessee CCA held that the prosecution's misconduct in eliciting Shipp's false testimony violated Robinson's due process rights pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), but concluded that the false testimony was not "material."  *Robinson III*, at *63.  In doing so, the court applied the wrong materiality standard.  In reality, the false testimony was highly material because Shipp was a critical witness and the undisclosed promise from the State explains why he changed his testimony to accuse Robinson of ordering Green's murder.  *See* Pet. ¶¶ 40-99 (Ground No. 1).

2. **The Prosecution Failed to Disclose the Key Witness's Pre-Trial Statement, Which Proved That His Testimony Was False, in Violation of *Brady v. Maryland*.**

Compounding its eliciting of and failure to correct the false testimony by Shipp, the prosecution failed to disclose the November 5 Statement before trial. This deprived the defense of the ability to demonstrate on cross-examination that Shipp was lying about whether he had received a promise from the State that his testimony against Robinson "will" help save his life. This *Brady* violation constitutes Ground No. 2 in Robinson's habeas petition. *See* Pet. ¶¶ 100-66.

The evidence that the State suppressed the November 5 Statement is overwhelming:

- The statement was never mentioned or used during trial or during post-trial proceedings, even though the issue of whether Shipp had received a deal was hotly disputed and an important argument for the defense.

- Robinson's lead trial counsel, Joel Ozment, testified at the post-conviction hearing that he was "100 percent certain" that the statement was not disclosed and that he "guarantee[s]" that he would have cross-examined Shipp on the statement if he had had it. *Id.* ¶¶ 116-17.

- Robinson's second-chair trial counsel, Steffen Schreiner, also testified that he had not received the statement, explaining that the statement "is very[,] very, highly unusual," "would have been a seminal event in the case," and would have had an enormous impact on the defense because it proved the defense's theory that the State had promised Shipp consideration in exchange for his testimony. *Id.* ¶ 118.

- During the trial, the prosecution made a record of the *Jencks* material (*i.e.*, prior statements) for Shipp that it had disclosed to the defense. The only statement mentioned was the May 1997 statement. *Id.* ¶ 129. Wulff's post-conviction assertion that she did not provide the November 5 Statement at that time because counsel "already had it" is nonsensical, since they also had the May 1997 statement that *was provided*.

- Two attorneys who represented Robinson on his motion for a new trial and direct appeal testified that they had never seen the November 5 Statement and that it was not in trial counsel's files. *Id.* ¶ 121-22.

- Three attorneys who represented two of Robinson's co-defendants testified, via offers of proof, that they too had never received the November 5 Statement, even though Shipp was a witness in their trials. *Id.* ¶ 123.

Notwithstanding this mountain of evidence, the trial court credited the self-serving, uncorroborated testimony of ADA Paula Wulff—who knowingly elicited and vouched for Shipp's false testimony—that she had provided the statement to Schreiner. The court made this bizarre finding even though it *credited* the testimony of Joel Ozment that he had never seen it and Schreiner himself testified that the contents of the November 5 Statement would have been dynamite for the defense. The post-conviction court essentially found that Schreiner received the document but "failed to share the transcript with lead counsel," who was responsible for Shipp's cross-examination. *Robinson III,* at *60. The Tennessee courts also held in the alternative that any *Brady* violation was immaterial.

### 3. Robinson's Counsel Were Ineffective.

Robinson's *habeas* petition alleges numerous errors that, individually and cumulatively, constituted ineffective assistance of counsel. These include, but are not limited to:

- Assuming that Mr. Schreiner was given Shipp's November 5 Statement and that he failed to disclose it to Mr. Ozment or otherwise to make use of it to expose the false testimony of the key witness against Robinson (as the Tennessee CCA held), this was egregiously ineffective. *See* Pet. ¶¶ 167-76 (Ground No. 3). The CCA agreed that this constituted deficient performance under the first prong of *Strickland*, but found that it was not material. *Robinson III*, at *69.

- Even though the defense's primary theory was that Robinson was incorrectly identified by two prosecution witnesses, defense counsel opened the door to a police witness testifying to a hearsay identification of Robinson by a *third*, non-testifying witness. There was no reasonable justification for eliciting this damaging testimony. *See* Pet. ¶¶ 177-94 (Ground No. 4). The post-conviction court found this to be deficient performance, but not material. *See Robinson v. State*, No. 97-13179-80, Post-Conviction Order ("P-C Order"), ECF No. 24-6 at 70.

- Despite knowing that its tattoo expert had told the prosecution that Robinson's tattoos might be gang-related, defense counsel called him to the stand to provide this damaging opinion, even though the State had presented no evidence concerning Robinson's tattoos. *See* Pet. ¶¶ 195-229 (Ground No. 5). Introducing this testimony critically undermined Robinson's misidentification defense. Yet the post-conviction court found that it was not ineffective assistance of counsel. *See* P-C Order at 68.

- Defense counsel were ineffective in failing to identify and interview possible witnesses. For example, counsel failed to locate or interview multiple witnesses who would have testified that Robinson's co-defendant Prentiss Phillips had a deep-seated personal motive to murder the victim. *See* Pet. ¶¶ 265-93 (Ground No. 8). In addition, following the State's proof, trial counsel requested a thirty minute recess to interview eight defense witnesses, because counsel had never spoken with any them. *See* Pet. ¶ 270. The post-conviction court did not find this to be ineffective. *See* P-C Order at 63-64.

All of the above claims were subject to the well-established legal standard—including the requirement of proof by a preponderance of the evidence—under *Strickland*.

## ARGUMENT

**I.    The Court Should Review Robinson's *Napue* Claim *De Novo*.**

       **A.    The Tennessee Court of Criminal Appeals Denied Robinson's Claim Based on the Wrong Materiality Standard.**

In rejecting Robinson's *Napue* claim, the Tennessee CCA erroneously applied a higher materiality standard than that established by Supreme Court precedent. It held:

> [W]e cannot conclude that a *reasonable probability* exists that *the outcome of the trial would have been different* but for the State's conduct and the use of the challenged testimony.

*Robinson III*, at *63 (emphases added).

The test used by the court—a "reasonable probability" that the outcome "would have been different"—is the test for materiality of a *Brady* violation or for a claim of ineffective assistance of counsel. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Strickland v. Washington*, 466 U.S. 668, 694-95 (1984).

But the test under *Napue* is different—and more favorable to the petitioner. Under *Napue*, a violation is material if there is "*any* reasonable likelihood" "that the false testimony *could . . . have affected* the judgment of the jury." *Napue v. Illinois*, 360 U.S. 264, 271 (1959) (emphases added); *see Giglio v. United States*, 405 U.S. 150, 154 (1972) ("A new trial is

required if 'the false testimony *could . . . in any reasonable likelihood* have affected the judgment of the jury.'" (quoting *Napue*, 360 U.S. at 271) (emphasis added)).

The difference in the tests is not mere semantics; the Supreme Court and the Sixth Circuit have made clear that the *Napue* materiality test is substantively more favorable, *i.e.*, less difficult for defendants to meet. *See United States v. Agurs*, 427 U.S. 97, 104 (1976); *Rosencrantz v. Lafler*, 568 F.3d 577, 584 (6th Cir. 2009) ("materiality assessment is less stringent"); *see also United States v. Alzate*, 47 F.3d 1103, 1109-10 (11th Cir. 1995) ("[a] different and more defense-friendly standard of materiality applies"); *Dow v. Virga*, 729 F.3d 1041, 1048 (9th Cir. 2013) ("courts apply a less demanding materiality standard to *Napue* errors").

Indeed, the *Napue* materiality test is so favorable for the defense that it is "a veritable hair trigger for setting aside the conviction." *United States v. Gale*, 314 F.3d 1, 4 (D.C. Cir. 2003); *see also Shih Wei Su v. Filion*, 335 F.3d 119, 126-27 (2d Cir. 2003) (describing relief under *Napue* as "virtually automatic"). As Robinson intends to demonstrate in a future summary judgment motion, applying the correct standard here leaves no doubt that the *Napue* violation that occurred at his trial was material.

> **B.** **Because the Tennessee Court of Criminal Appeals Applied the Wrong Materiality Standard, This Court Should Review Robinson's *Napue* Claim *De Novo*.**

AEDPA establishes a deferential standard of review for habeas claims that were previously adjudicated on the merits by a state court. *See* 28 U.S.C. § 2254(d). But that deferential standard does not apply here, because the Tennessee courts' application of the wrong legal standard rendered the decision (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," *id*. § 2254(d)(1); and (2) not an adjudication "on the merits," *id*. § 2254(d). Accordingly, *de novo* review applies.

1.      **The CCA's Application of the Wrong Materiality Standard for *Napue* Claims Was "Contrary to . . . Clearly Established Federal law" Under AEDPA.**

Supreme Court and Sixth Circuit precedents are clear that a state court's application of the wrong legal standard results in a *de novo* review of a *habeas* claim under AEDPA, because the state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that the application of the wrong burden of proof on *Strickland*'s prejudice prong ("preponderance of the evidence" rather than "reasonable probability") is "contrary to" federal law and justifies *de novo* review. *Id*. at 405-06. In this scenario, "a federal court will be unconstrained" by AEDPA's deferential standard of review. *Id*. at 406; *see also Johnson v. Williams*, -- U.S. ----, 133 S. Ct. 1088, 1097 (2013) ("AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent.").

The Sixth Circuit reached the same conclusion in *Vasquez v. Bradshaw*, 345 Fed. App'x 104 (6th Cir. 2009), after a state court had applied the wrong standard of proof to the prejudice prong of the *Strickland* test. The state court had required the petitioner to show that the outcome "would have been different" rather than that there was a "reasonable probability" that the outcome would have been different. *Id*. at 110-11. Because the state court's formulation had improperly placed "a greater burden on the petitioner," the *Vasquez* court refused to defer to the state court decision, explaining that "[d]ifferent standards make for different outcomes." *Id*. at 111-12. The court concluded that *de novo* review should therefore apply.

Several other circuit court decisions have similarly held that application of the wrong standard justifies *de novo* review under the "contrary to" provision of AEDPA. *See Young v.*

*Sirmons*, 486 F.3d 655, 680 (10th Cir. 2007) (applying *de novo* review because the state court incorrectly "required [the petitioner] to show prejudice by 'clear and convincing' evidence"); *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009) (*en banc*) (holding in the alternative that *de novo* review was justified by the "contrary to" language of AEDPA where a state court had incorrectly applied a "clear and convincing evidence" burden of proof)[2]; *Cargle v. Mullin*, 317 F.3d 1196, 1204-06 (10th Cir. 2003) (ordering *de novo* review of a claim for ineffective assistance of appellate counsel, because the state court had required proof of an additional element beyond what *Strickland* requires).[3]

Because the Tennessee CCA applied a materiality standard that was contrary to federal law, Robinson's *Napue* claim should be reviewed *de novo*.

> **2.    The Tennessee Court of Criminal Appeals' Use of the Wrong Materiality Standard Means That There Was No "Adjudicat[ion] on the Merits" Under AEDPA.**

AEDPA requires deference to a state court decision only when the *habeas* petitioner's claims have been "adjudicated on the merits" by the state court. 28 U.S.C. § 2254(d). The Tennessee CCA did not adjudicate Robinson's *Napue* claim on the merits because it required Robinson to meet a higher, incorrect materiality standard. In the absence of an adjudication on

---

[2] The Tenth Circuit has deemed *Wilson* to be overruled, *see Glossip v. Trammell*, 530 F. App'x 708, 736 (10th Cir. 2013), but not on the legal points addressed in this brief. It was overruled because the Oklahoma Court of Criminal Appeals subsequently announced after *Wilson* that its clear and convincing evidence standard should be interpreted as less demanding than the federal *Strickland* standard. *See Lott v. Trammell*, 705 F.3d 1167, 1212 (10th Cir. 2013). This holding does not contradict the general principle that federal courts do not owe deference when state courts use a burden higher than the federal standard.

[3] The *Cargle* court did not explicitly identify the "contrary to" clause as the basis for its decision. Because the court had concluded that the state court was "on the merits," however, it is a reasonable supposition that the "contrary to" clause formed the basis of the decision.

the merits, the Court should review Robinson's claims *de novo*. *See Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014).

In *Johnson*, the Supreme Court established a presumption that a state court has adjudicated a federal claim on the merits, even if the state court did not expressly address it. But the presumption may be rebutted where the state court applies a state-law rule that is less protective than the federal standard:

> In such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted . . . by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*).

*Johnson,* 133 S. Ct. at 1096. While the facts here are slightly different insofar as the Tennessee CCA purported to decide the federal claim expressly—rather than remain silent on it—the same logic applies. In particular, the CCA's decision here was based on a standard that was "less protective" than the federal standard. Regardless of whether the state court decision was silent (as in *Johnson*) or express (as here), the state court decision was not "on the merits" because the substance of the federal claim was not adjudicated.

Numerous circuit court decisions are in accord, in that they determine whether the state court adjudication was "on the merits" under AEDPA by examining whether the state court used a standard more restrictive than the federal standard. *See, e.g.*, *McCambridge v. Hall*, 303 F.3d 24, 35 (1st Cir. 2002); *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005); *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004); *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005); *Wilson*, 577 F.3d at 1293-94.

The rationale underlying these cases is clear: if the petitioner's claims have been rejected under a *lower* standard, then *a fortiori* they fail to meet the higher federal standard. In such a scenario, the federal *habeas* court can conclude that the federal claim has been adjudicated on the

merits. By contrast, when the state court applies a standard that is higher (i.e., more stringent for defendants) than the federal standard, it would *not* necessarily mean that the petitioner would fail to meet the lower federal standard. Deference in this circumstance is inappropriate because no court has adjudicated the petitioner's claim on the merits under the correct governing standard. *See Wilson*, 577 F.3d at 1293 ("AEDPA entitles a defendant to receive de novo review of his federal claim from *some* court, so long as he is diligent and timely in presenting his claim.").

Here, the determination by the Tennessee CCA that the State's *Napue* violation was not material is not entitled to any deference, because it analyzed the issue under a standard that is less favorable to Robinson than required by federal law. Accordingly, Robinson respectfully requests a ruling by this Court that it will review this claim *de novo*.

## II.     The Court Should Review Robinson's *Brady* Claim *De Novo*.

### A.     Robinson's *Brady* Claim is Governed By a "Preponderance of the Evidence" Standard.

Under the federal standard of proof applicable to his *Brady* claim, Robinson was required to establish his claim only by a preponderance of the evidence. *See Holland v. Jackson*, 542 U.S. 649, 654 (2004) (endorsing the preponderance standard as "the general burden of proof in post-conviction proceedings with regard to factual contentions"); *Weeks v. Jones*, 26 F.3d 1030, 1047 (11th Cir. 1994) (applying preponderance standard to *Brady* claim); *Walker v. Kelly*, 589 F.3d 127, 142 (4th Cir. 2009) (same); *Tipton v. Carlton*, No. 3:03-CV-434, 2006 WL 587595, at *10 (E.D. Tenn. Mar. 10, 2006) (same), *aff'd*, 306 F. App'x 213 (6th Cir. 2008); *United States v. Gould*, 563 F. Supp. 2d 1224, 1245 (D.N.M. 2008) (same); *see also Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (applying preponderance standard to 28 U.S.C. § 2255 petition); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (*habeas* claims governed by preponderance standard); *Gaines v. Kelly*, 202 F.3d 598, 601 (2d Cir. 2000) (same); *Alcala v. Woodford*, 334

F.3d 862, 869 (9th Cir. 2003) ("[Petitioner] must prove all facts underlying his claims of

ineffective assistance by a preponderance of the evidence.").

> **B.**      **The Tennessee Post-Conviction Courts Applied a "Clear and Convincing Evidence" Standard to Robinson's *Brady* Claim.**

The Tennessee Post-Conviction Procedure Act (Tenn. Code Ann. §§ 40-30-101 et seq.)

governs the procedures in Tennessee post-conviction proceedings. Section 110(f) places a "clear

and convincing" burden of proof upon the petitioner for "allegations of fact."

The Tennessee CCA applied this burden of proof to Robinson's *Brady* claim:

> Petitioner must establish the factual allegations contained in his
> petition by clear and convincing evidence. Tenn.Code Ann § 40-
> 30-110(f). Evidence is clear and convincing when there is no
> serious or substantial doubt about the accuracy of the conclusions
> drawn from the evidence.

*Robinson III*, at \*56.[4]

Although the Court need only look at the Tennessee CCA decision,[5] it is clear that the

post-conviction trial court also applied the clear and convincing standard. Although the late

Judge Higgs did not expressly invoke the "clear and convincing" standard in Robinson's case, he

routinely applied that standard in his post-conviction cases. We have found 66 decisions by the

Tennessee CCA on appeals from orders by Judge Higgs in post-conviction cases. In 12 of those

---

[4] Consistent with Tennessee law, the CCA stated that the "post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them." *Id*. at \*56. This verbiage does not result in a review of the facts that is equivalent to the federal preponderance standard. The Court made clear that "[t]his court may not reweigh or reevaluate the evidence or substitute our inferences for those drawn by the post-conviction court. . . . Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court." *Id*.

[5] To determine whether a state court decision was on the merits and thus whether "AEDPA's heightened deference applies," the Court must "look to the 'last reasoned [state-court] opinion'" to address Robinson's claims. *Smith v. Jenkins*, No. 13–4269, 2015 WL 1865719, at \*3 (6th Cir. 2015) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Here, the Tennessee Court of Criminal Appeals provided the last reasoned opinion.

cases, the court stated that Judge Higgs had applied the "clear and convincing" standard; in 34 of those cases, the CCA court itself endorsed the "clear and convincing" standard court while not specifying what standard Judge Higgs applied; and in 20 of those cases, the court did not address the standard of proof.[6]  We did not find a single case indicating that Judge Higgs had ever applied the preponderance standard to allegations of fact.  Thus, there can be little doubt that, in Robinson's case, Judge Higgs applied the same "clear and convincing" standard that is universally followed in Tennessee courts.

### C. The Tennessee "Clear and Convincing" Standard is Inconsistent With the Federal "Preponderance" Standard.

There is no question that Tennessee's "clear and convincing" standard of proof is more demanding than the federal "preponderance of the evidence" standard.  Under a "clear and convincing" standard, the factfinder must have a "firm belief or conviction" with "no serious or substantial doubt."  *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998); *Robinson III*, at *56.  Even if "[t]he truth of the facts asserted is highly probable," it is not "convincing" "as long as the court remains in doubt."  *Brandon*, 838 S.W.2d at 536 (quoting 32A C.J.S. Evidence § 1023, n.65.50).  Preponderance of the evidence, on the other hand, requires a much lower showing.  "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."  *Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S.

---

[6] *See infra* Schedule A.

602, 622 (1993) (internal quotations omitted).  Rather than having a firm conviction that a fact is true, the factfinder need only find the fact more probable than not.

Notwithstanding this difference, the State may argue that the Tennessee statute is consistent with federal law in light of *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009).  But the *Dellinger* case does not apply here.  In *Dellinger*, the Tennessee Supreme Court addressed whether the Tennessee statutory "clear and convincing" standard for "allegations of fact" conflicts with the federal standard for claims of ineffective assistance of counsel under *Strickland*.  It held that the Tennessee "clear and convincing" requirement applies only to "allegations of fact" and thus "does not implicate the *Strickland* inquiry."  *Id*. at 293.  The court viewed the *Strickland* elements as distinct from the issues of historical fact (e.g., "the *fact* of counsel's alleged error") governed by the "clear and convincing" standard.  *Id*. at 294.  It therefore found no conflict with federal law.

Even if *Dellinger* were correctly decided as to a *Strickland* claim,[7] its reasoning cannot extend to a *Brady* claim.  A *Brady* claim requires a petitioner to show (1) that the evidence was favorable to the accused; (2) that the evidence was suppressed by the State; and (3) prejudice must have ensued.  *See Strickler*, 527 U.S. at 281-82.  The second element is indisputably a question of fact which must be shown by a preponderance of the evidence under federal law.  *See, e.g.*, *Weeks*, 26 F.3d at 1047; *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014);

---

[7] Although the Court need not decide the issue here, Robinson contends that *Dellinger* was wrongly decided.  *Dellinger* wrongly assumes that facts are not implicated in the *Strickland* test. That test requires a petitioner to prove that (1) counsel's error fell below an objective standard of reasonableness; and (2) there is a reasonable probability that the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 694-95.  These issues are mixed questions of law and fact.  *See, e.g.*, *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012); *see also Wilson*, 577 F.3d at 1291 ("A claim is more than a mere theory on which a court could grant relief; a claim must have a factual basis."); *id*. at 1297 ("Evidentiary burdens are not independent from substantive standards; the two interact.").  As set forth above, federal law is clear that the facts underlying the *Strickland* test are subject to a preponderance standard.

*Mathis v. Berghuis*, 202 F. Supp. 2d 715, 718 (E.D. Mich. 2002); *cf. Garner v. United States*, Nos. 1:09 CV 2314, 1:05 CR 44, 2011 WL 1630128, at *9 (N.D. Ohio Apr. 29, 2011). But under the Tennessee statute, a "clear and convincing" standard applies to such an issue of fact. Thus, the Tennessee statute conflicts with federal law for *Brady* claims.

> **D.** **Because the Tennessee Courts Applied the Wrong Standard of Proof, This Court Should Adjudicate Robinson's *Brady* Claim *De Novo*.**
>
> > **1.** **The Tennessee Courts' Failure to Use the Correct Standard of Proof Was "Contrary to . . . Clearly Established Federal Law" Under AEDPA.**

As explained in Section I.B.1 above, a state court's use of the wrong legal standard is "contrary to" federal law and therefore triggers *de novo* review under AEDPA. This principle applies where the state court error is the use of the wrong standard of proof. *See Williams v. Taylor*, 529 U.S. at 405-06 (application of the wrong standard of proof on *Strickland*'s prejudice prong is "contrary to" federal law and justifies *de novo* review); *Vasquez*, 345 Fed. App'x at 111-12 (applying *de novo* review where state court decision applied the wrong standard of proof to the prejudice prong of the *Strickland* test and thus improperly placed "a greater burden on the petitioner"); *Young*, 486 F.3d at 680 (affirming *de novo* review where the state court improperly applied "clear and convincing evidence" standard to *Strickland* prejudice prong); *Cargle*, 317 F.3d at 1204-06 (applying *de novo* review of a claim for ineffective assistance of appellate counsel, because the state court had required proof of an additional element beyond what *Strickland* requires); *Wilson*, 577 F.3d at 1294 (state court's application of "clear and convincing evidence" standard to Strickland claim was "contrary to clearly established federal law," justifying *de novo* review).

Accordingly, the Tennessee courts' use of the "clear and convincing" standard was "contrary to" federal law and should result in *de novo* review of Robinson's *Brady* claim.

### 2. The Tennessee Courts' Failure to Use the Correct Standard of Proof Means That There Was No "Adjudicat[ion] on the Merits" Under AEDPA.

For the same reasons set forth in Part I.B.2 above, the use of the incorrect "clear and convincing" standard on Robinson's *Brady* claim means that the Tennessee courts' adjudication was not "on the merits."

The federal appellate court's decision in *Wilson* is on point. The *Wilson* court considered whether an Oklahoma state court's denial of an evidentiary hearing on an ineffective assistance counsel claim—pursuant to a statute requiring proof by "clear and convincing evidence"—constituted an adjudication "on the merits" under AEDPA. The *Wilson* court concluded that the Oklahoma rule imposes "a higher evidentiary standard [because] the evidence must be 'clear and convincing' rather than simply a 'preponderance'." 577 F.3 at 1297 (citation omitted). Accordingly, the Oklahoma court decision was not "on the merits." *Id.* In reaching this conclusion, the *Wilson* court explained that the burden of proof was critical to the substance of the claim:

> Evidentiary burdens are hardly meaningless and could easily be decisive in determining whether a defendant receives an evidentiary hearing. . . . Evidentiary burdens are not independent from substantive standards; the two interact.

*Id.* Application of the wrong burden of proof thus results in a decision that fails to address the substance of the federal claim on the merits.[8]

---

[8] Courts in other contexts have no difficulty in concluding that the burden of proof is a substantive aspect of a claim. For example, federal courts with diversity jurisdiction over state-law claims apply the standard of proof mandated by state law (not federal law) because the standard of proof is considered substantive under the doctrine of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See Dick v. N.Y. Life Ins. Co.*, 359 U.S. 437, 446 (1959); *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 191 F.3d 675, 681 (6th Cir. 1999); *Disner v. Westinghouse Elec. Corp.*, 726 F.2d 1106, 1111 (6th Cir. 1984). As another example, the Supreme Court has held that the standard of proof is an integral, substantive aspect of the protections of the Due Process (continued…)

This conclusion finds further support in the fact that *res judicata* principles are incorporated into AEDPA's "on the merits" language. At least three circuits—as well as several district court decisions within the Sixth Circuit—have expressly construed the "on the merits" requirement of AEDPA to mean that the state court decision resolved the claim based on the substance "with *res judicata* effect." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014); Cooper v. Bergeron, 778 F.3d 294, 300-01 (1st Cir. 2015); *Scruggs v. Warden, Lake Erie Corr. Inst.*, No. 1:07cv659, 2008 WL 5450607, at *4 (S.D. Ohio Dec. 31, 2008); *Everitt v. Warden, Chillicothe Corr. Inst.*, No. 1:06cv372, 2007 WL 3306580, at *5 (S.D. Ohio Nov. 6, 2007).

It is well-established that a decision does not have "*res judicata* effect" if a higher standard of proof was used. *See, e.g.*, *Traficant v. C.I.R.*, 884 F.2d 258, 262 (6th Cir. 1989); *United States v. Fifty Thousand Dollars ($50,000) U.S. Currency*, 757 F.2d 103, 104-05 (6th Cir. 1985). Thus, AEDPA's incorporation of *res judicata* concepts supports Robinson's motion for *de novo* review here.

Because the Tennessee post-conviction courts found that Robinson failed to prove his *Brady* allegations by clear and convincing evidence, they did not necessarily decide that Robinson failed to prove his allegations by a preponderance of the evidence. Accordingly, Tennessee did not adjudicate Robinson's *Brady* claim on the merits.

---

Clause. *See, e.g.*, *Cooper v. Oklahoma*, 517 U.S. 348, 362-69 (1996) (holding that state's "clear and convincing evidence" standard for finding a criminal defendant incompetent violates due process); *Addington v. Texas*, 441 U.S. 418, 425 (1979) (holding that due process requires proof by "clear and convincing evidence" to justify involuntary civil commitment and explaining that "adopting a standard of proof is more than an empty semantic exercise.") (citation and internal quotation marks omitted).

### E. Tennessee's Standard is an Outlier Nationally and May Still Apply to Tennessee State-Law Claims.

Tennessee is one of only four states to require petitioners to establish factual allegations by clear and convincing evidence. *See infra* Schedule B. Thirty-five states require a preponderance of the evidence or less, while the remaining 11 do not have a general level of burden for establishing factual allegations. *See id.* Because the large majority of states already apply the preponderance standard, applying *de novo* review here would not upset the level of deference generally shown to state *habeas* decisions.

Nor would a decision in Robinson's favor nullify the Tennessee statute. The "clear and convincing" standard may still apply to state-law claims. Granting this motion merely applies *de novo* review to a federal claim if the Tennessee courts fail to adjudicate that claim using the federal constitutional standard.

### III. The Court Should Review the Factual Issues Underlying Robinson's Ineffective Assistance Claims and Other Claims *De Novo*.

As explained in Part II.B above, the Tennessee CCA and the post-conviction court applied a "clear and convincing" burden of proof to Robinson's allegations of fact, including the factual issues underlying Robinson's ineffective assistance and other claims. The federal standard for factual allegations, however, is a preponderance of the evidence. *See* Part II.A, *supra*. All of the factual findings underlying the Tennessee courts' adjudication of Robinson's claims should therefore be reviewed *de novo* under AEDPA, for the same reasons set forth in Part II.D above.

The state-court findings that should be reviewed *de novo* include, but are not limited to:

- The post-conviction court found that defense counsel did not know that the tattoo expert was going to state that Robinson's tattoos might be gang-related. P-C Order at 68-69. In fact, the trial transcript clearly indicates that counsel knew this in advance. *See* Pet. ¶ 195.

- The post-conviction court found that the defense's mitigation investigators were qualified. *See* P-C Order at 72-74. In fact, Mr. Robinson's case was the only capital case that Mr. Robinson's mitigation specialists had ever handled. *See Robinson v. State*, No. 97-13179-80, Amended Petition for Post-Conviction Relief, ECF 24-1 at 48-49.

- The post-conviction court found that the testimony of the medical examiner testimony corroborated Shipp's testimony. P-C Order at 106. In fact, the medical examiner's testimony concerning the cause of death and sequencing of wounds had no logical connection to Shipp's testimony concerning Robinson's alleged role in the crime. *See id.* at 102. That purported corroboration was important to the Tennessee Supreme Court's holding that the trial court committed harmless error in failing to instruct the jury that Shipp was an accomplice to the murder. P-C Order at 80-81.

*De novo* review of the factual findings underlying Robinson's claims is consistent with *Dellinger*. As explained in Part II.C above, *Dellinger* construed the Tennessee statute requiring clear and convincing evidence as applying to allegations of fact – but not to the *Strickland* test. It therefore found the Tennessee statute to be consistent with *Strickland*. But the Tennessee statute is *not* consistent with federal law setting the burden of proof for the allegations of fact underlying a constitutional claim as a preponderance of the evidence. Thus the factual issues underlying Robinson's claims must be reviewed *de novo* under AEDPA.

## CONCLUSION

For the reasons explained above, Robinson respectfully requests an order directing that the Court shall apply a *de novo* standard of review to (1) Robinson's claim under *Napue v. Illinois*, 360 U.S. 264 (1959) that the State violated his due process rights by eliciting false testimony at trial; (2) Robinson's claim under *Brady v. Maryland*, 373 U.S. 83 (1963), that the State failed to turn over exculpatory/impeachment material; and (3) the factual issues underlying Robinson's remaining claims for writ of *habeas corpus*.

Respectfully submitted,


/s/ Robert L. Hutton
Robert L. Hutton
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
Ph: 901-525-1322
Fax: 901-525-2389
rhutton@glankler.com

P. Benjamin Duke
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
Ph: 212-841-1072
Fax: 646-441-9072
bduke@cov.com

Attorneys for Petitioner
GREGORY ROBINSON

## SCHEDULE A: BURDEN OF PROOF APPLIED IN JUDGE HIGGS' CASES

<u>12 Decisions in which the Tennessee CCA stated that Judge Higgs applied the "clear and convincing standard"</u>

*Woodall v. State*, No. W2012-02005-CCA-R3PC, 2014 WL 1831021, at *3 (Tenn. Crim. App. May 5, 2014); *Amaya v. State*, No. W2012-02008-CCA-R3PC, 2013 WL 5883793, at *3 (Tenn. Crim. App. Oct. 31, 2013); *Young v. State*, No. W2012-01193-CCA-R3PC, 2013 WL 3865237, at *5 (Tenn. Crim. App. July 22, 2013); *Stephens v. State*, No. W2011-02564-CCA-R3PC, 2012 WL 5507318, at *3 (Tenn. Crim. App. Nov. 13, 2012); *Hathaway v. State*, No. W2009-02428-CCA-R3PC, 2011 WL 2418118, at *9 (Tenn. Crim. App. June 13, 2011); *Jones v. State*, No. W2007-00680-CCA-R3PC, 2008 WL 1850915, at *2 (Tenn. Crim. App. Apr. 25, 2008); *Perry v. State*, No. W2006-01852-CCA-R3PC, 2008 WL 312923, at *10 (Tenn. Crim. App. Feb. 5, 2008); *Terry v. State*, No. W2007-00536-CCA-R3PC, 2008 WL 276020, at *6 (Tenn. Crim. App. Jan. 31, 2008); *Davis v. State*, No. W2005-02212-CCA-R3PC, 2006 WL 1765901, at *2 (Tenn. Crim. App. June 28, 2006); *Epps v. State*, No. W2004-00152-CCA-R3PC, 2004 WL 1567123, at *4 (Tenn. Crim. App. July 12, 2004); *Veasley v. State*, No. W2002-02806-CCA-MR3-PC, at 5 (Tenn. Crim. App. Feb. 17, 2004), *available at* http://www.tncourts.gov/sites/default/files/OPINIONS/tcca/PDF/041/VeasleyA.pdf; *Thomas v. State*, No. W2002-01964-CCA-R3-PC, at 6 (Tenn. Crim. App. Apr. 7, 2003), *available at h*ttp://www.tncourts.gov/sites/default/files/OPINIONS/tcca/PDF/032/Thomasd.pdf.

<u>34 Decisions in which the Tennessee CCA did not state what burden Judge Higgs applied but itself stated that the standard was "clear and convincing"</u>

*Garner v. State*, No. W2012-01997-CCA-R3PC, at 5 (Tenn. Crim. App. Oct. 30, 2014), *available at* http://www.tncourts.gov/sites/default/files/garnerjasonopn.pdf; *Moore v. State*, No. W2013-00674-CCA-R3PC, at 7 (Tenn. Crim. App. 22, 2014), *available at* http://www.tncourts.gov/sites/default/files/moorerasheopn.pdf; *Price v. State*, No. W2012-02192-CCA-R3PC, 2014 WL 1512861, at *3 (Tenn. Crim. App. Apr. 16, 2014); *Jones v. State*, No. W2013-00483-CCA-R3PC, 2014 WL 1494135, at *5 (Tenn. Crim. App. Apr. 15, 2014); *Yates v. State*, No. W2012-02455-CCA-R3PC, 2014 WL 295834, at *12 (Tenn. Crim. App. Jan. 27, 2014); *Nur v. State*, No. W2013-00434-CCA-R3PC, 2014 WL 260774, at *6 (Tenn. Crim. App. Jan. 22, 2014); *Small v. State*, No. W2012-02101-CCA-R3PC, 2014 WL 60966, at *2 (Tenn. Crim. App. Jan. 7, 2014); *Phillips v. State*, No. W2013-00440-CCA-R3PC, 2013 WL 6157033, at *4 (Tenn. Crim. App. Nov. 20, 2013); *Finley v. State*, No. W2012-02002-CCA-R3PC, 2013 WL 5371621, at *4 (Tenn. Crim. App. Sept. 26, 2013); *Aldridge v. State*, No. W2012-02409-CCA-R3-PC, at 9 (Tenn. Crim. App. Sept. 19, 2013), *available at* http://www.tncourts.gov/sites/default/files/aldridgejunioropn.pdf; *Chatman v. State*, No. W2012-01469-CCA-R3PC, 2013 WL 2424063, at *2 (Tenn. Crim. App. June 5, 2013); *Robinson v. State*, No. W2011-00967-CCA-R3PD, 2013 WL 1149761, ECF No. 25-4 at *56, PageID 8300 (Tenn. Crim. App. Mar. 20, 2013); *Shields v. State*, No. W2011-02442-CCA-R3PC, 2013 WL 501782, at *4 (Tenn. Crim. App. Feb. 8, 2013); *Brown v. State*, No. W2011-01084-CCA-R3PC, 2012 WL 3637286, at *6 (Tenn. Crim. App. Aug. 24, 2012); *Taylor v. State*, No. W2011-00979-CCA-R3PC, at 7 (Tenn. Crim. App. June 29, 2012), *available at* http://www.tncourts.gov/sites/default/files/taylordopn.pdf; *Bell v. State*, No. W2010-01512-

CCA-R3PC, at 9 (Tenn. Crim. App. July 29, 2011), *available at* http://www.tncourts.gov/sites/default/files/lashawn_bell_v_state_of_tennessee.pdf; *Adair v. State*, No. W2010-01608-CCA-R3PC, 2011 WL 2570756, at *3 (Tenn. Crim. App. June 30, 2011); *Wilson v. State*, No. W2010-01846-CCA-R3PC, 2011 WL 2120104, at *3 (Tenn. Crim. App. May 20, 2011); *Owens v. State*, No. W2009-02298-CCA-R3PC, 2011 WL 345837, at *6 (Tenn. Crim. App. Feb. 1, 2011); *Jones v. State*, No. W2009-02051-CCA-R3PC, 2010 WL 4812773, at *3 (Tenn. Crim. App. Nov. 19, 2010); *Butler v. State*, No. W2009-00860-CCA-R3PC, 2010 WL 890890, at *7 (Tenn. Crim. App. Mar. 12, 2010); *Jeffries v. State*, No. W2007-02407-CCA-R3PC, 2009 WL 37612, at *2 (Tenn. Crim. App. Jan. 6, 2009); *Maclin v. State*, No. W2007-01099-CCA-R3PC, 2008 WL 1788056, at *2 (Tenn. Crim. App. Apr. 18, 2008); *Anthony v. State*, No. W2007-00532-CCA-R3PC, 2008 WL 763783, at *3 (Tenn. Crim. App. Mar. 24, 2008); *Nelson v. State*, No. W2006-01946-CCA-R3PC, 2007 WL 3254443, at *4 (Tenn. Crim. App. Nov. 2, 2007); *Reyes v. State*, No. W2006-02232-CCA-R3PC, 2007 WL 2404304, at *3 (Tenn. Crim. App. Aug. 22, 2007); *Williams v. State*, No. W2005-01810-CCA-R3PC, 2006 WL 3371404, at *5 (Tenn. Crim. App. Nov. 20, 2006); *Shaw v. State*, No. W2005-01332-CCA-R3PC, 2006 WL 561338, at *3 (Tenn. Crim. App. Mar. 7, 2006); *Harris v. State*, No. W2005-01102-CCA-R3PC, 2006 WL 473726, at *2 (Tenn. Crim. App. Feb. 27, 2006); *Rimmer v. State*, No. W2004-02427-CCA-R3PC, 2005 WL 2077643, at *3 (Tenn. Crim. App. Aug. 26, 2005); *Phillips v. State*, No. W2004-01626-CCA-R3-PC, at 5 (Tenn. Crim. App. May 12, 2005), *available at* http://www.tncourts.gov/sites/default/files/OPINIONS/tcca/PDF/052/PhillipsPOPN.pdf; *Henderson v. State*, No. W2002-02541-CCA-R3PC, 2004 WL 541159, at *5 (Tenn. Crim. App. Mar. 15, 2004); *Wallace v. State*, No. W2000-02854-CCA-R3CD, 2002 WL 1483204, at *2 (Tenn. Crim. App. Feb. 19, 2002); *Hawkins v. State*, No. W2001-00738-CCA-R3PC, 2002 WL 1549572, at *6 (Tenn. Crim. App. Jan. 18, 2002).

20 Decisions which do not address the burden of proof

*Faulkner v. State*, No. W2012-00612-CCA-R3PD, 2014 WL 4267460 (Tenn. Crim. App. Aug. 29, 2014); *Hunt v. State*, No. W2012-01682-CCA-R3PC, 2013 WL 3991819 (Tenn. Crim. App. Aug. 2, 2013); *Chandler v. State*, No. W2011-02034-CCA-R3PC, 2012 WL 3134345 (Tenn. Crim. App. Aug. 1, 2012); *White v. State*, No. W2011-02295-CCA-R3PC, 2012 WL 3156600, at *2 (Tenn. Crim. App. Aug. 1, 2012); *Green v. State*, No. W2011-01637-CCA-R3PC, 2012 WL 2336253 (Tenn. Crim. App. June 19, 2012); *Houston v. State*, No. W2011-01073-CCA-R3PC, 2012 WL 1478760 (Tenn. Crim. App. Apr. 25, 2012); *Howell v. State*, No. W2009-02426-CCA-R3PD, 2011 WL 2420378 (Tenn. Crim. App. June 14, 2011); *McFerren v. State*, No. W2010-02101-CCA-R3HC, 2011 WL 1901634 (Tenn. Crim. App. May 12, 2011); *Burl v. Fortner*, No. W2009-02282-CCA-R3HC, 2010 WL 4812777 (Tenn. Crim. App. Nov. 18, 2010); *Butler v. State*, No. W2010-00118-CCA-R3PC, 2010 WL 4513574 (Tenn. Crim. App. Nov. 2, 2010); *Finley v. State*, No. W2010-00902-CCA-RMPC, 2010 WL 4324342 (Tenn. Crim. App. Nov. 1, 2010); *Ward v. State*, No. W2009-00088-CCA-R3PC, 2010 WL 481211 (Tenn. Crim. App. Feb. 11, 2010); *Yates v. State*, No. W2008-02067-CCA-R3PC, 2009 WL 4505436, at *3 (Tenn. Crim. App. Dec. 3, 2009); *Wallace v. State*, No. W2008-00867-CCA-R3PC, 2009 WL 321294 (Tenn. Crim. App. Feb. 6, 2009); *Johnson v. State*, No. W2006-02208-CCA-R3PD, 2007 WL 852147, at *1 (Tenn. Crim. App. Mar. 22, 2007); *Walker v. Bell*, No. W2006-00644-CCA-R3HC, 2007 WL 121730, at *4 (Tenn. Crim. App. Jan. 18, 2007); *Alley v. State*, No. W2006-01179-CCA-

R3PD, 2006 WL 1703820 (Tenn. Crim. App. June 22, 2006) abrogated by Powers v. State, 343 S.W.3d 36 (Tenn. 2011); *Porterfield v. State*, No. W2005-00549-CCA-R3HC, 2005 WL 3447677 (Tenn. Crim. App. Dec. 13, 2005); *Alley v. State*, No. W2004-01204-CCA-R3PD, 2004 WL 1196095 (Tenn. Crim. App. May 26, 2004); *Robinson v. State*, No. W2000-02248-CCA-R3CO (Tenn. Crim. App. May 9, 2001), *available at* http://www.tncourts.gov/sites/default/files/OPINIONS/tcca/PDF/012/robinsonaj.pdf


## SCHEDULE B: BURDEN OF PROOF BY STATE

4 States that require clear and convincing evidence

**Tennessee** (Tenn. Code Ann. § 40-30-110); **Alaska** (AS § 12.72.040); **Kentucky** (*Bratcher v. Com.*, 406 S.W.3d 865, 869 (Ky. Ct. App. 2012) ("convincingly establish")); **Wisconsin** (*State v. Brunton*, 203 Wis. 2d 195, 203 (Ct. App. 1996)

35 States that require a preponderance of the evidence or less

**Alabama** (ARCrP Rule 32.3); **Arizona** (17 A.R.S. Rules Crim. Proc., Rule 32.8(c)); **California** (*In re Miranda*, 43 Cal. 4th 541, 575 (2008)); **Colorado** (*People v. Simpson*, 69 P.3d 79, 80 (Colo. 2003)); **Georgia** (*St. Lawrence v. Bartley*, 269 Ga. 94, 97 (1998)); **Hawaii** (*State v. Fukusaku*, 85 Haw. 462, 479 (1997) (requiring petitioner to show a "tendency to create a reasonable doubt," a lower burden than affirmatively proving by a preponderance of the evidence)); **Idaho** (*State v. Hairston*, 133 Idaho 496, 510 (1999)); **Illinois** (*People v. Lego*, 168 Ill. 2d 561, 577 (1995)); **Indiana** (IN ST POSTCONV Rule PC 1 § 5); **Iowa** (*Cleesen v. State*, 258 N.W.2d 330, 332 (Iowa 1977)); **Kansas** (*Schoonover v. State*, 218 Kan. 377, 378 (1975) (Note that the statute cited no longer explicitly states "preponderance of the evidence." However no subsequent case was identified disputing the use of that standard.)); **Maine** (*Bennett v. State*, 161 Me. 489, 502 (1965); *Dorothy v. State*, CRIM. A. CR-95-420, 2000 WL 33675779 (Me. Super. May 9, 2000)); **Minnesota** (Minn. Stat. Ann. § 590.04(Subd. 3)); **Mississippi** (Miss. Code. Ann. § 99-39-23(7)); **Missouri** (Mo. Sup. Ct. R. 29.15); **Montana** (*State v. Peck*, 263 Mont. 1, 3 (1993)); **Nebraska** (*State v. McCroy*, 259 Neb. 709, 718 (2000)); **Nevada** (*Means v. State*, 120 Nev. 1001, 1012 (2004); *cf. Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (clear and convincing standard for insanity and actual innocence, neither of which Robinson has claimed)); **New Jersey** (*State v. Preciose*, 129 N.J. 451, 459 (1992)); **New Mexico** (*State v. Simien*, 1968-NMSC-025, 78 N.M. 709, 711) (Habeas rule is now NM R DIST CT RCRP Rule 5-802, but does not appear to overrule *Simien*)); **New York** (N.Y. Crim. Proc. Law § 440.30 (6)); **North Carolina** (N.C. Gen. Stat. Ann. § 15A-1420 (c)(5)); **North Dakota** (*State v. Skjonsby*, 417 N.W.2d 818, 820 (N.D. 1987); *State v. Kunkel*, 366 N.W.2d 799, 803 (N.D. 1985)); **Ohio** (*State v. Lott*, 2002-Ohio-6625, 97 Ohio St. 3d 303, 306); **Oregon** (Or. Rev. Stat. Ann. § 138.620); **Pennsylvania** (42 Pa. Cons. Stat. Ann. § 9543(a)); **Rhode Island** (*Palmigiano v. Mullen*, 119 R.I. 363, 374 (1977)); **South Carolina** (S.C. R. Civ. P. 71.1(e)); **South Dakota** (*Erickson v. Weber*, 748 N.W.2d 739, 744); **Texas** (*Ex Parte Roldan*, 418 S.W.3d 143, 145 (Tex. App. 2013)); **Utah** (Utah Code Ann. § 78B-9-105); **Vermont** (*In re Liberty*, 154 Vt. 643, 644 (1990)); **Virginia** (*Curo v. Becker*, 254 Va. 486, 489 (1997)); **Washington** (*Matter of St. Pierre*,

118 Wash. 2d 321, 328 (1992)); **West Virginia** (*Joseph v. Ballard*, 12-0611, 2013 WL 2462180 (W. Va. June 7, 2013)).

11 States for which we found no general burden of proof

**Arkansas; Connecticut** (*Miller v. Comm'r of Correction*, 242 Conn. 745, 794 (1997); *Staples v. Robinson*, 193 Conn. 439, 441(1984) (no general burden other than clear and convincing evidence for actual innocence and preponderance of the evidence for disproving deliberate bypass)); **Delaware** (*State v. Starling*, CR. ID 0104015882, 2014 WL 4386127 (Del. Super. Aug. 28, 2014)); **Florida; Louisiana** (La. Code Crim. Proc. Ann. art. 930.2–930.3; *State v. Dorsey*, 447 So. 2d 636, 637–38 (La. Ct. App. 1984) (no general burden other than clear and convincing evidence for actual innocence through DNA evidence and preponderance of the evidence for mental capacity to plead guilty)); **Maryland** (MD. Code Ann., Crim. Proc., § 7-102); **Massachusetts; Michigan** (MI R RCRP MCR 6.508(D)); **New Hampshire** (*Roy v. Perrin*, 122 N.H. 88, 94 (1982) (preponderance of the evidence for competency to plead guilty)); **Oklahoma** (Okla. Stat. Ann. tit. 22, § 1089 (D)(8)(b)(2) (clear and convincing evidence only for successive petitions, which implies that the burden is lower for initial petitions)); **Wyoming**; **District of Columbia** requires that allegations be "borne out by proof." *See Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. 1993).

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 26, 2015, a true and correct copy of the foregoing document was served through the Court's ECF System on Jennifer L. Smith and Michael Matthew Stahl, Office of the Attorney General, State of Tennessee, 425 Fifth Avenue North, Nashville, TN, 37202.

/s/ Robert L. Hutton
Robert L. Hutton
