IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY ROBINSON, | ) | Electronically filed, |
| Petitioner, | ) | No. 2:14-cv-02630-SHL-tmp |
| v. | ) | CAPITAL CASE |
| WAYNE CARPENTER, Warden, Riverbend Maximum Security Institution, | ) | |
| Respondent. | ) | |

**MEMORANDUM OF FACT AND LAW IN SUPPORT OF
PETITIONER GREGORY ROBINSON'S MOTION FOR DISCOVERY**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 4

      A.      Robinson's Due Process Claim Based on the State's Use of Inherently Contradictory Factual Theories in Robinson's Trial and a Co-Defendant's Trial. ........................................................................................................... 4

           1.      At Robinson's Trial, the State Argued That Robinson Was the Highest Ranking Gang Member at the Meeting and Ordered the Murder. ........................................................................................................... 4

           2.      At Prentiss Phillips's Trial, the State Argued That Phillips Was the Highest Ranking Gang Member at the Meeting and Ordered the Murder. ........................................................................................................... 5

           3.      The State's Inconsistent Theories Violated the Due Process Clause Under Clearly Established Federal Law. ................................................... 7

      B.      Robinson's Claims Based on the False Testimony of the Key Witness, Jarvis Shipp, That the State Did Not Promise Shipp Anything in Exchange For His Testimony ........................................................................................................... 8

ARGUMENT ........................................................................................................... 8

I.      Robinson Has Good Cause to Pursue Discovery Related to his Claim Based on the State's Use of Inconsistent Factual Theories. ........................................................................................................... 9

II.      Robinson Has Good Cause to Pursue Discovery Related to his Claims Based on Shipp's False Testimony. ........................................................................................................... 10

CONCLUSION ........................................................................................................... 11

**INTRODUCTION**

Petitioner Gregory Robinson seeks leave to take discovery on two sets of *habeas* claims: (1) his claim that the State's use of inherently contradictory factual theories at his trial and a co-defendant's trial violated his right to due process; and (2) his claims that his constitutional rights were violated by the State's conduct concerning the State's key witness against him, who (as the state court has acknowledged) gave uncorrected false testimony elicited by the prosecutors that the State had not promised him any benefit in exchange for his testimony against Robinson. There is good cause for this discovery: it is directly relevant to Robinson's claims, narrowly tailored, and could not have been obtained in state post-conviction proceedings.

Robinson is facing the death penalty in Tennessee after being convicted of first degree murder for allegedly ordering the murder of Vernon Green in Memphis. The State's theory at trial was that Robinson was the highest-ranking member of the Gangster Disciples present at a meeting during which he ordered six other gang members to murder Green. The prosecution stated that Robinson was "the ranking Gangster Disciple in [the] meeting"; that he was "higher up[ ]" in rank compared to co-defendant Prentiss Phillips; and that Robinson was the one who "gave orders to other people to go out and do his killing." Petition for Writ of Habeas Corpus ("Pet.") ¶¶ 399-400. The State thus contended at trial that Robinson alone (a) possessed the ultimate authority to order the killing, and (b) exercised that authority.

At the subsequent trial of Prentiss Phillips, however, the State—led by the very same prosecutors who tried Robinson—presented a directly conflicting factual theory and repeatedly contradicted their own prior assertions against Robinson. Now the prosecution contended that *Phillips*—not Robinson—"was the ranking Gangster Disciple" at the meeting and that *Phillips* alone ordered Green's murder for his own "personal reasons." These inherently contradictory theories cannot be explained away by an argument that Robinson and Phillips conspired or

1

jointly ordered the killing. The State chose not to pursue a conspiracy theory (presumably to maximize the culpability of each of them individually) and, having obtained a conviction and death sentence against Robinson, turned around and openly ridiculed Phillips's defense that Robinson was responsible. The State's pursuit of inherently contradictory factual theories violated Robinson's due process rights.

On direct appeal, the Tennessee Criminal Court of Appeals ("CCA") agreed that "the state's proof and theories on this point [were] inconsistent, contradictory, and factually irreconcilable." *State v. Robinson*, No. W2001-01299-CCA-R3-DD, 2003 WL 21946735, at *48 (Tenn. Crim. App. Aug. 13, 2004). The Tennessee Supreme Court reversed, however, characterizing the "discrepancies" as "isolated" and "commonly unavoidable." *State v. Robinson*, 146 S.W.3d 469, 496-97 (Tenn. 2004). The Tennessee Supreme Court's decision fails to grapple with the directly contradictory facts presented by the State at the Robinson and Phillips trials and with their centrality to the two cases. The questions of who had the rank/authority to order the murder and who actually gave the order were not tangential issues; they were critical factual elements in both cases.

Because Robinson raised this claim on direct appeal, he could not pursue the claim in Tennessee post-conviction proceedings. Moreover, a critical piece of evidence emerged during post-conviction proceedings only after the Tennessee courts had decided the issue on direct appeal. Robinson's post-conviction counsel discovered a November 5, 1998 pre-trial statement of Jarvis Shipp (the "November 5 Statement"), who had participated in Green's murder. In that statement, Shipp expressed uncertainty to the prosecutors as to whether Robinson was "above" Phillips in authority within the gang, and stated that Phillips ranked higher in connection with the events at issue. Pet. ¶ 148. At that time, the State promised Shipp that it would take into

2

consideration "whatever [he] do[es] to help [them] get Gregory and Prentiss." *Id*. ¶ 52. At the subsequent trial, Shipp's uncertainty vanished, and he confidently parroted the State's theory that Robinson was the highest-ranking member at the meeting. The November 5 Statement demonstrates that the State had evidence contradicting their theory of authority and raises serious questions about whether the State knowingly presented false testimony in order to "get" both Robinson and Phillips, in violation of the due process clause under *Napue v. Illinois*, 360 U.S. 264 (1959).

Discovery could be significantly helpful in establishing this claim on *habeas*. Specifically, the prosecution's contemporaneous knowledge and state of mind is an element of the claim. Robinson is entitled to know what the State believed regarding whether Robinson or Phillips was higher ranking and who actually ordered the murder; whether the State's beliefs on these issues changed over time; and what evidence, if any, supported the State's assertions. Such discovery is potentially relevant and material not only to Robinson's due process claim based on the State's inherently contradictory theories at his and Phillips's trials, but also to a potential *additional* claim that Robinson may assert under *Napue v. Illinois*, 360 U.S. 264 (1959), and its progeny, based on the State's use of testimony concerning Robinson's supposed rank and authority. Accordingly, Robinson seeks leave to take depositions of the two prosecutors from the Robinson and Phillips trials; to serve interrogatories on this issue; and to obtain a copy of the prosecution's files from the Phillips case.

Robinson also seeks limited discovery concerning his claims concerning the testimony of Jarvis Shipp. As set forth more fully in his Petition ¶¶ 40-176 and Motion to Apply De Novo Review, Robinson has asserted claims that (1) the State violated his due process rights pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), by knowingly eliciting false testimony from Shipp

3

concerning whether the State had made any promises to him in exchange for his testimony; (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to turn over Shipp's November 5, 1998 pre-trial statement (the "November 5 Statement"), which contained exculpatory/impeachment material showing that the State had promised Shipp that his testimony against Robinson will save his life; and (3) if the Court concludes that the State did turn over the November 5 Statement, then Robinson's counsel were ineffective for failing to use it at trial.

While these claims were developed in the post-conviction proceedings, Robinson requests a limited document request to support his claims. Robinson requests a copy of any policies, procedures, or training manuals from the DA's office concerning the disclosure of witness statements. Robinson's *Brady* claim centers on whether the November 5 Statement was disclosed, and any policies and procedures may shed light on this issue.

## BACKGROUND

### A. Robinson's Due Process Claim Based on the State's Use of Inherently Contradictory Factual Theories in Robinson's Trial and a Co-Defendant's Trial.

As set forth in his *habeas* petition (¶¶ 390-435), the State convicted Robinson on a factual theory that directly contradicted the factual theory presented at the subsequent trial of Prentiss Phillips for the same crime.

#### 1. At Robinson's Trial, the State Argued That Robinson Was the Highest Ranking Gang Member at the Meeting and Ordered the Murder.

In trying Robinson for the murder of Vernon Green, the State repeatedly argued that Robinson had been the highest ranking member of the Gangster Disciples at the meeting in Hurt Village, and that he alone gave the order to kill Vernon Green. This theory was crucial to the State's case against Robinson, and the state emphasized it at various points throughout the trial:

4

- In its opening statement, the prosecution stated that the victim was killed "at the direction of Gregory Robinson." Pet. ¶ 394. The State also asserted that Robinson ordered that the victim be "taken care of." *Id*.

- The prosecution called Chris James as a witness, who testified that Robinson told the others "[y]'all know what to do" when the other Gangster Disciples left the house with the victim. *Id.* ¶ 394.

- The prosecution elicited testimony from Jarvis Shipp that Robinson "outrank[ed]" the other people in the house -- including Phillips. *Id.* ¶ 396. During the penalty phase, Shipp testified that Robinson was the "most highly ranked" Gangster Disciple at the house where the victim was detained. *Id.* ¶ 398.

- In its closing argument, the prosecution argued that Robinson was "the man who was in charge, ultimately" and that Robinson was "the ranking Gangster Disciple in [the] meeting." *Id.* ¶ 397.

- The prosecution described Robinson as "the man who was calling the orders, who was directing people" and that Mr. Robinson was the man "responsible for the actions" that ultimately led to the victim's death. *Id*.

- In its closing argument during the sentencing phase, the prosecution said that Mr. Robinson "gave orders to other people to go out and do his killing." *Id.* ¶ 399.

- In a hearing on Mr. Robinson's motion for new trial, the prosecution said that Mr. Robinson was a "higher up[ ]" compared to Phillips and that Phillips "had to answer to Gregory Robinson." *Id.* ¶ 400.

### 2. At Prentiss Phillips's Trial, the State Argued That Phillips Was the Highest Ranking Gang Member at the Meeting and Ordered the Murder.

After securing a conviction of Robinson, the State pulled an about-face at Phillips's trial. The same prosecutors who had tried Robinson now asserted that *Phillips* was the highest ranking gang member at the meeting and that Phillips ordered the murder *without Robinson's involvement*:

- In the State's opening statement, the prosecutor stated that Phillips "was the ranking Gangster Disciple . . . " and that Phillips "said Vernon Green needs to be killed." *Id.* ¶ 402.

5

- The prosecution elicited testimony from Chris James that Phillips was the highest ranking person at the meeting and that he was "higher [in rank] than Greg" and that he was giving Robinson instructions at the meeting. *Id.* ¶ 403.

- In closing argument, the prosecution argued that Phillips was "the one" who ordered the murder and that his "actions" "killed Vernon Green." *Id.* ¶ 406.

- The prosecution's argument during closing was that the murder was committed "exclusively for personal reasons" (*i.e.*, reasons personal to Phillips) and to "pump [Phillips's] authority up." *Id.* ¶ 407. The prosecutor specified that the reasons were personal to Phillips. *Id.* She argued that "[Phillips's] hand was on the hand that pulled the trigger and killed Vernon Green, because [he] gave the order [that] [the victim] needed killing." *Id.* The prosecutor said that Phillips "wanted Vernon Green dead" and "[he] is responsible." *Id.*

- On *nine* separate occasions during her closing argument, the prosecutor repeated the words allegedly spoken by the victim, "Prentiss, why are you doing this to me[.]" *Id.* ¶ 406. The prosecution argued that these words meant the victim "knew who his killer was" – Prentiss Phillips. *Id.*

- Mocking Phillips's defense that Robinson had ordered the murder, the prosecution said "Prentiss Phillips would like you to think and just suppose that he didn't do any of this. Greg did all this . . . ." *Id.* The prosecution emphasized that the victim asked "Prentiss, why are you doing this to me? Not . . . Greg, why are you doing this to me?" *Id.*

- The prosecution also argued that Phillips: was "the *one* who called that meeting and he's the *one* who told them what to do;" "was . . . in control of this meeting;" "was in charge;" "was calling the shots;" "gave the order;" and was personally affronted and sacrificed the victim "on the altar of [Phillips's] ego . . . to retain control." *Id.* ¶ 408 (emphases added).

- In closing argument during the sentencing-phase of Phillips's trial, the prosecutor said that the victim's death was "[h]einous, atrocious, and cruel, for no particular purpose except to satisfy [Phillips's] ego." *Id.* ¶ 411.

- Emphasizing that as "the ranking man in that house" Phillips had the decision-making power to order the victim's death, the prosecution repeatedly argued that "[Phillips's] choices led to the death of Vernon Green." *Id.* The prosecution repeated that "[Phillips] [was] the *one* who made those choices" and that "through his words and his actions, [Phillips's] hand was on the hand that shot Vernon Green." *Id.* (emphasis added).

6

### 3. The State's Inconsistent Theories Violated the Due Process Clause Under Clearly Established Federal Law.

The factual theories of guilt for first-degree murder that the State pursued at the Robinson and Phillips trials were inherently and irreconcilably in conflict. Robinson and Phillips cannot both have been the highest ranking gang member at the meeting. Nor can Robinson have ordered the murder if Phillips alone ordered it for *personal, i.e.*, Phillips's own, reasons. The State's assertion of contradictory factual theories constitutes a violation of due process under clearly established federal law, as determined by the Supreme Court. *See* Pet. ¶¶ 419-21, 428-434 (citing cases).

On direct appeal, the Tennessee Criminal Court of Appeals ("CCA") agreed that "the state's proof and theories on this point [were] inconsistent, contradictory, and factually irreconcilable." *State v. Robinson*, No. W2001-01299-CCA-R3-DD, 2003 WL 21946735, at *48 (Tenn. Crim. App. Aug. 13, 2004). But it found that, on the issue of guilt, the contradictory theories were "not central to the state's case" and thus there was "no showing of a reasonable likelihood of a different result" with respect to his conviction. *Id.* at *20. The CCA did vacate the sentence of death on this ground, however, relying on the "heightened due process requirements" applicable to capital cases. *Id.* at *48.

The Tennessee Supreme Court reversed, concluding that the State did not pursue contradictory theories. *State v. Robinson*, 146 S.W.3d 469, 496-97 (Tenn. 2004). Instead, in that court's view, while there were "discrepancies" between the various theories, the inconsistencies were "isolated" and "commonly unavoidable." *Id.* But the court's opinion utterly fails to address the evidence and arguments cited above, instead merely waving away the clear discrepancies in the State's assertions as to who was higher ranking and who ordered the killing. In reality, the State deliberately pursued factually conflicting theories in order to induce

7

two separate juries that two different men were each 100 percent culpable for the same crime. The prosecution's pursuit of such factually irreconcilable theories calls their assertions at Robinson's trial into grave doubt and violated Robinson's rights under the Due Process Clause.

### B. Robinson's Claims Based on the False Testimony of the Key Witness, Jarvis Shipp, That the State Did Not Promise Shipp Anything in Exchange For His Testimony

As set forth more fully in Robinson's Petition and Motion to Apply De Novo Review, Robinson has asserted several constitutional claims relating to the testimony of Jarvis Shipp, the star witness against him. As the Tennessee courts have held, the State elicited false testimony from Shipp when he denied on direct examination that the State had promised him anything in exchange for his testimony. In fact, the State had promised Shipp—who was facing the death penalty for his role in the same murder—that his testimony "will" help save his life.

Robinson has three claims based on these facts: (1) a due process claim under *Napue v. Illinois*, 360 U.S. 264 (1959), because the State knowingly elicited Shipp's false testimony; (2) a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), because the State failed to turn over the transcript of the interview in which the State made its promise to Shipp; and (3) if the State did turn over the Shipp transcript (as the State contends and Robinson disputes), a claim for ineffective assistance of counsel for failure to make any use of the transcript in cross-examining Shipp.

### ARGUMENT

Under Rule 6(a) of the Rules Governing Section 2254 Proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." "Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to

8

demonstrate that he is entitled to relief." *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "Petitioner need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence regarding his petition." *Payne,* 89 F. Supp. 2d at 970. A petitioner will fail to establish good cause if he "had the opportunity during the state court proceedings to develop the evidence that []he now seeks in discovery." *Owens v. Guida*, No. 00–2765, 2002 WL 1398544, at *3 (W.D. Tenn. Jan. 9, 2002).

**I.    Robinson Has Good Cause to Pursue Discovery Related to his Claim Based on the State's Use of Inconsistent Factual Theories.**

Because Robinson's claim based on inconsistent factual theories was pursued and rejected on direct appeal, he did not have the opportunity to develop evidence in support of the claim in Tennessee post-conviction proceedings. In addition, a key piece of evidence regarding this claim—the November 5 Statement of Jarvis Shipp, in which he stated that Phillips outranked Robinson—was not uncovered until after the Tennessee courts decided this issue. There are significant facts that would help demonstrate that Robinson is entitled to relief. Robinson therefore has good cause to obtain discovery in support of this claim.

The discovery sought by Robinson relates to the process by which the State developed its theories against Robinson and Phillips, including what the State believed, and when and why the State changed its theory as to who was the highest ranking gang member at the meeting and who ordered the murder. The question of when the State's theory changed is potentially important to the type of constitutional violation that occurred. If the State knew *during* Robinson's trial that Phillips ranked higher and ordered the murder, then Robinson would have a straightforward *Napue* claim because the State elicited false testimony. If the State knew only *after* Robinson's trial that Phillips and not Robinson had been responsible for Vernon Green's murder, then

9

Robinson would have a claim based on the State's failures in administering justice, including the risk that its sharply inconsistent theories could result in a wrongful conviction. *See Berger v. United States*, 295 U.S. 78, 88 (1935).

*Why* the State changed its theory is also relevant to Mr. Robinson's claims. Did it disbelieve Shipp's testimony that Robinson was higher ranking? Did new evidence emerge? The prosecution's state of mind is an element of a *Napue* claim, so these facts are highly relevant to Mr. Robinson's habeas arguments.

In response to Mr. Robinson's arguments about the State's inconsistent theories, the State may contend, as it did on direct appeal, that the theories were not actually inconsistent. If so, Robinson is entitled to understand the basis for this position and to discover the facts purportedly supporting it.

Discovery on these issues would consist of (1) interrogatories directed to the State on this issue; (2) depositions of Wulff and Branham, who comprised the two-member prosecution team for both the Robinson and Phillips trials and who pursued the conflicting theories and repeatedly contradicted at Phillips's trial their own prior factual assertions at Robinson's trial; (3) production of the complete prosecution files for the Phillips case; and (4) any further discovery that may be appropriate in light of what is uncovered during the discovery process.

**II.     Robinson Has Good Cause to Pursue Discovery Related to his Claims Based on Shipp's False Testimony.**

The factual basis for Robinson's *Napue*, *Brady*, and *Strickland* claims relating to Shipp's false testimony was developed in Tennessee post-conviction proceedings. But Robinson requests one discrete item of discovery that is relevant to the claims and that Robinson was not able to obtain in those proceedings:

- *Policies, procedures, and training materials in the DA's office relating to Jencks materials*. At Robinson's trial, after Shipp completed his direct testimony, ADA

10

> Wulff made a record of the *Jencks* material (*i.e.*, prior statement(s) of Shipp) that she was disclosing to Robinson's counsel. She specified a single May 1997 statement, which defense counsel already had. She said nothing about the November 5 Statement, which strongly suggests that she had not turned it over. During her testimony at the post-conviction hearing, however, Wulff asserted that she omitted the November 5 statement because defense counsel already had it. But the same was true of the May 1997 statement. Moreover, the entire purpose of making a record of *Jencks* disclosures is to remove any doubt as to what exactly has been disclosed. The policies, procedures, and training materials in the DA's office relating to *Jencks* may support Robinson's contentions on this issue, because they will indicate how Wulff was trained or directed to handle *Jencks* disclosures. Wulff's knowledge of those policies and her adherence to them (or lack thereof) may shed light on what happened. These materials could not reasonably have been obtained in the Tennessee proceedings, because Wulff provided her explanation of the *Jencks* disclosure for the first time at the hearing.

The non-disclosure of the November 5 Statement is of central importance to Mr. Robinson's *Brady* claim. But because Ms. Wulff's explanation of her failure to identify it as *Jencks* material at trial was not provided until Mr. Robinson's post-conviction hearing, Mr. Robinson never had the opportunity to obtain the relevant policies and procedures. Accordingly, there is good cause for Robinson to obtain this discovery.

In conjunction with this motion for discovery, Robinson is filing a motion to apply *de novo* review to certain aspects of his claims. It is unknown at this time how the Court will rule on the motion, and whether the court will order an evidentiary hearing on any issues. If the Court does order an evidentiary hearing on some issues, then Robinson may seek depositions or other discovery at that time in light of the scope of the hearing.

## CONCLUSION

For the foregoing reasons, Petitioner Robinson's motion for discovery should be granted.

Respectfully submitted,

/s/ Robert L. Hutton
Robert L. Hutton
Glankler Brown, PLLC
6000 Poplar Avenue
Suite 400
Memphis, TN 38119
Ph: 901-525-1322
Fax: 901-525-2389
rhutton@glankler.com

P. Benjamin Duke
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
Ph: 212-841-1072
Fax: 646-441-9072
bduke@cov.com

Attorneys for Petitioner
GREGORY ROBINSON

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on May 26, 2015, a true and correct copy of the foregoing document was served through the Court's ECF System on Jennifer L. Smith and Michael Matthew Stahl, Office of the Attorney General, State of Tennessee, 425 Fifth Avenue North, Nashville, TN, 37202.

/s/ Robert L. Hutton
Robert L. Hutton