IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| GREGORY ROBINSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | No. 2:14-cv-02630 |
| v. | ) | Judge Lipman |
| | ) | DEATH PENALTY |
| WAYNE CARPENTER, Warden, | ) | |
| Respondent. | ) | |

**RESPONDENT'S ANSWER IN OPPOSITION TO DISCOVERY**

**INTRODUCTION**

Comes now Respondent, Wayne Carpenter, in opposition to the Petitioner's motion for discovery. (D.E. 31). As grounds therefore, the Respondent states that the requested discovery fails to state sufficient facts to make a showing of good cause and fails to show that the requested materials would provide beneficial information even if obtained. Thus, the requests should be denied.

**APPLICABLE LAW**

A habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997); *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F3d 442, 460 (6th Cir. 2001)). Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "A judge may, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." (emphasis added). Good cause exists only when "specific allegations

before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).

In determining a request for discovery, a court should first look to the elements of the claim presented by the petitioner. *Bracy*, 520 U.S. at 909. The Court must then determine whether the facts alleged, if proven, may be the basis for relief. *Id*. A petitioner must establish a sufficient factual foundation to establish good cause for the requests. "Generalized statements about the possible or speculative existence of evidence do not constitute "good cause." *Munoz v. Keane*, 777 F.Supp. 282, 287 (S.D.N.Y. 1991); *see also Linares v. Senkowski*, 964 F2d 1295 (2d Cir. 1992); *Aponte v. McKee*, 2007 WL 734986 (E.D. Mich. March 8, 2007.) Instead, "a petitioner must produce specific evidence that supports his claim that the requested material will yield the asserted information." *Id*., at *3, citing *Linares*, 964 F.2d at 1295. "Good cause" is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford*, 266 F.3d at 460. Rule 6(a) does not permit a "fishing expedition masquerading as discovery," *Stanford*, 266 F.3d at 460..

A federal habeas corpus proceeding, "while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Id*.; *see also Bell v. Cone*, 535 U.S. 685, 693 (2002) ("The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."). The burden is on the petitioner to demonstrate the materiality of the information he is requesting. *Stanford*, 266 F.3d at 460.

**DISCOVERY REQUESTS**

Petitioner requests leave to conduct discovery related to the following four claims in his

§2254 Petition:

    Claim No. 1: The State violated Robinsons' Constitutional Rights by eliciting and failing to correct Jarvis Shipp's False Testimony Denying that he had received any promises from the State.

    Claim No. 2: The State violated Robinson's Constitutional Rights under *Brady v. Maryland* by withholding Shipp's November 5 Statement.

    Claim No. 3: Trial counsel rendered ineffective assistance by failing to use Jarvis Shipp's November 5 statement to cross-examine him.

    Claim No. 18: The State violated Robinson's Due process Rights by using inherently contradictory and irreconcilable factual theories in Robinson and Co-Defendant's trials for the Same Crime.

(D.E. 1 at 39-86; 151.)

    Petitioner seeks:

1. To take depositions of the two prosecutors from the Robinson and Phillip trials; to serve interrogatories on this issue; and to obtain a copy of the prosecutions files from the Phillips case. (D.E. 31-1 at 5.)

2. A copy of any policies, procedures, or training manuals from the DA's office concerning the disclosure of witness statements. (D.E. 31-1 at 6.)

## DISCUSSION

Petitioner requests depositions of the two prosecutors from the Robinson and Phillip trials; to serve interrogatories on this issue; and to obtain a copy of the prosecutions files from the Phillips case. (D.E. 31-1 at 5). Petitioner also requests a copy of DA office policies, procedures, and training manuals concerning the disclosure of witness statements. (D.E. 31-1 at 6). Petitioner's requested discovery, however, fails to state sufficient facts to make a showing of good cause, are overbroad and not duly specific, and fail to demonstrate that the requested materials would provide beneficial information even if obtained.

3

First, petitioner requests discovery in support of his claim that the State used contradictory and irreconcilable theories at his trial and at the trial of his co-defendant, Prentiss Phillips. (D.E. 1 at 151-63.) Petitioner raised this claim on direct appeal, and the Tennessee Supreme Court addressed the merits in its opinion affirming that the prosecution presented a consistent theory at both trials as the prosecution sought to establish that each defendant held a leadership position in the gang and that each, acting in a leadership role, ordered or otherwise directed the kidnapping and murder of the victim. *State v. Robinson*, 146 S.W.3d 469, at *494-498 (Tenn. 2004). Second, the petitioner requests discovery in support his claim that the State elicited and failed to correct Jarvis Shipp's testimony denying that he had received any promises from the State (D.E. 1 at 39-63), and in support of his claim that trial counsel failed to, *inter alia*, use the transcript of Mr. Shipp's November 5th statement and object to his false testimony at trial. (D.E. 1 at 83-151.) The Tennessee Court of Criminal Appeals rejected these claims and concluded that the challenged testimony was not material and did not deprive the petitioner of a fair trial. *Robinson v. State*, No. W2011-00967-CCA-R3-PD, at *62-63.

To the extent the petitioner seeks discovery to bolster these claims, which were all litigated in state court, discovery is precluded by *Cullen v. Pinholster*, 131 S.Ct. 1388, 1401 (2011), which limits the scope of the reviewable record in a habeas proceeding concerning a properly exhausted claim to the record that existed in state court when the claim was decided therein. Thus, no material uncovered by this requested discovery could help the petitioner present a meritorious claim, because such information would not be included in the reviewable record. Any discovery request premised upon supporting the claims asserted must be denied, because the claims were exhausted in state court and the record on review of those issues cannot be expanded.

Moreover, petitioner's discovery requests fail to establish 'good cause' under Rule 6, Rules

Governing Section 2254 Petitions because conclusory allegations and the speculative existence of evidence is insufficient to warrant discovery during federal habeas proceedings. Although more liberal discovery is appropriate in capital federal habeas cases, the rule authorizing a district court to permit a party to conduct discovery in habeas proceeding for good cause does not permit fishing expedition masquerading as discovery. *Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir. 2001); *see also Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir.2004); *Braden v. Bagley,* No. 2:04–CV–842, 2007 WL 1026454, at *2 (S.D.Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests.").

Here, petitioner admits that his claims are speculative where he states that the requested discovery is "*potentially relevant and material*," and that he is requesting discovery in order to possibly assert a different claim, not currently alleged. (D.E. 31-1 at 5.) The petitioner seeks the authority to question state prosecutors about their understanding of the petitioner's rank in the Gangster Disciples gang hierarchy even though such information would not be likely to resolve any factual disputes that would entitle petitioner to relief. All the evidence regarding the petitioner's rank within the Gangster Disciples, and the State's understanding of his rank, was presented at trial, and, as such, the trial transcript and evidence speaks for itself. Where the petitioner seeks discovery on unsupported assumptions that the State's "beliefs" regarding the rank and authority of the petitioner changed at some point, or were inappropriately presented to the jury at trial, that discovery should be denied because depositions and interrogatories to that effect would not uncover new information that had not been previously disclosed and there is nothing to indicate that the prosecutors could offer anything that would be inconsistent with what has already been presented. The petitioner, quite simply, does not present the court with any facts establishing that

the petitioner was not a high ranking Gangster Disciple capable of ordering the victim's killing, or that the State's position in this case was incorrect.

Petitioner points to the transcript of prosecutor's November 5th meeting with Jarvis Shipp as demonstrating that "the State had evidence contradicting their theory of authority" and asserts that this transcript "raises serious questions about whether the State knowingly presented false testimony . . . ." (D.E. 31-1 at 5). However, Mr. Shipp's statements on November 5th do not show any uncertainty about the petitioner's rank at the time of the murder and clearly state that the petitioner was "Actually over [the victim]," that he was "the step up chief of security over the whole city," that he was "the person who was in charge,", and that he was "directing orders, actually telling everyone what to do" (D.E. 24, Att. 8 at 138-140.) Nothing the petitioner seeks in his discovery requests would further develop this transcript, or change the evidence presented at trial with regard to the State's theory of the case. The petitioner has done no more than speculate about the existence of nexus between what State prosecutor's "believed" and what was presented at trial. The petitioner's requests are therefore a mere attempt to obtain depositions or records in the hopes they will provide something helpful, which is the epitome of a prohibited "fishing expedition masked as discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Additionally, the petitioner has not demonstrated a specific basis for how the requested discovery would support the elements of his *Brady/Giglio* claims. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."

Here, the requested discovery would not serve to show suppression or materiality where the factual findings already demonstrate that former Shelby County District Attorney Paula Wulff

6

testified she gave the petitioner's co-counsel a copy of the November 5th transcript, and where the state court has already found that the transcript was not material on this issue. *See Robinson v. State*, No. W2011-00967-CCA-R3-PD, 2013 WL 1149761, at *61 (Tenn. Crim. App. Mar. 20, 2013). There is simply nothing to suggest that the State "changed its theory" or that the State "disbelieved" Shipp's testimony as the petitioner suggests. (D.E. 31-1 at 11-12.)

Additionally, the petitioner's requested interrogatories are overbroad and lack clarity as to what information is being sought. The first interrogatory asks to identify all facts and evidence supporting the contention that the petitioner held the rank of "chief of security" within the Gangster Disciples. (D.E. 28-2 at 1.) The petitioner's second interrogatory asks for a presentation of all the facts and evidence collected "on or after November 21, 1998," as well as any change to those facts, regarding the Gangster Disciple ranks of Gregory Robinson and Prentiss Phillips. (D.E. 28-1 at 1.) These interrogatory requests essentially ask for a recitation of all the facts and evidence presented at petitioner's trial, and the trial of Prentiss Phillips, as well as petitioner's post-conviction evidentiary hearing. The state's theory of the case was that the petitioner was a high ranking member of the Gangster Disciples who ordered the victim's murder. The petitioner does not assert that he was not in the Gangster Disciples gang or present any facts indicating that the State's evidence "changed" after November 21, 1998. These interrogatories are overbroad requests devoid of any factual basis in an attempt to gather information in the hopes of finding something that might be useful. These requests constitute an abuse of the discovery process in that they purport to ask the respondent to plead the entire case, and to marshal all evidence presented, in response to one written interrogatory. They request that the respondent create and provide the equivalent of a lengthy narrative or otherwise detailed account of the entire case, whereas an interrogatory should consist of brief, simple, direct, and unambiguous question, dealing with one point only and

7

not require a recitation of all the facts and testimony from the petitioner's criminal trial and post-conviction proceedings.

The State has already stated that the factual theories offered at the petitioner's trial and the trial of Prentiss Phillips were consistent as the Gangster Disciples operated under a hierarchy with multi-layered ranking roughly akin to a military hierarchy and, therefore, each actor was capable of giving orders. (See D.E. 23, Att. 2 at 23-24.) The petitioner's request seeking the complete prosecution files of Prentiss Phillips, similarly, have no bearing on the petitioner's claims that evidence was withheld, or that false testimony was left uncorrected, and the petitioner cannot point to any specific materials in the Phillips files that would yield such information.

Finally, the Petitioner requests the policies, procedures, and training materials in the DA's office relating to *Jencks* disclosures in support of his claim that the state withheld Jarvis Shipp's November 5 statement in violation of *Brady v. Maryland*. (D.E. 1 at 63-83.) Petitioner admits that "The factual basis for Robinson's *Napue*, *Brady*, and *Strickland* claims relating to Shipp's false testimony was developed in Tennessee post-conviction proceedings." (D.E. 31-1 at 12.) Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. Under Tennessee law, Petitioner could have sought discovery relating to office procedures, through a request for documents, affidavits, depositions, or subpoenas in the post-conviction proceeding. *See* Tenn. Code Ann. § 40-30-109. Where the petitioner failed to diligently develop the factual basis for his habeas claim in the state court he is not entitled to further discovery on federal habeas review. In *Williams v. Taylor,* 120 S.Ct. 1479 (2000), the Supreme Court explained that if there is an issue of diligence the focus is on whether the petitioner or his counsel knew of the matters at issue and failed to pursue the matter. Here, the petitioner was provided the November 5th transcript during post-conviction discovery

and prior to the testimony of Ms. Wulff at his post-conviction evidentiary hearing. The petitioner was simply not diligent where he failed to ask Ms. Wulff about office policies and procedures concerning *Jencks* material during her post-conviction testimony, and where he failed to request D.A. office materials during the post-conviction discovery process. Further, this request is overly burdensome and unduly vague where "training materials" is an ambiguous term that does not specify a finite amount of material and appears to request cumbersome amounts of office notes, aids, and information that either relate substantively or tangentially to the disclosure of *Jencks* material. This type of non-specific and cumbersome discovery is directly precluded under Habeas Rule 6 and is clearly a fishing exercise by the petitioner on this issue.

## CONCLUSION

Wherefore, the respondent requests that the Court deny the Petitioner's motion for discovery.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General & Reporter

/s/ Michael M. Stahl
MICHAEL M. STAHL
Assistant Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 253-5463
Fax: (615) 532-4892
Email: Michael.Stahl@ag.tn.gov
Tenn. B.P.R. No. 32381

**CERTIFICATE OF SERVICE**

On July 23, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a copy in the United States mail, postage prepaid, to their address of record.

/s/ Michael M. Stahl
MICHAEL M. STAHL
Assistant Attorney General