IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

GREGORY ROBINSON,

           Petitioner,

vs.

BRUCE WESTBROOKS, Warden,
Riverbend Maximum Security
Institution,

           Respondent.

No. 14-cv-2630-SHL-tmp

---

ORDER GRANTING IN PART AND DENYING IN PART
PETITIONER'S MOTION TO APPLY *DE NOVO* REVIEW

---

On May 26, 2015, Petitioner Gregory Robinson, through counsel, filed a motion requesting that the Court apply *de novo* review instead of the deferential standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to his false testimony claim (Ground 1), his withheld evidence claim (Ground 2); and the factual issues underlying the remaining claims in his habeas petition.  (*See* Electronic Case Filing ("ECF") No. 29 at 1; *see* ECF No. 29-1 at 1-3.)  On June 9, 2015, the Warden filed a response.  (ECF No. 34.)  On June 29, 2015, Petitioner filed a reply.   (ECF No. 39.)   For the reasons stated below, Petitioner's motion for *de novo* review is GRANTED as to Petitioner's false testimony claim and DENIED for his *Brady* claim and the factual issues underlying the remaining claims in his petition.

## I.    BACKGROUND

Petitioner was convicted in the Criminal Court of Shelby County, Tennessee of the premeditated first degree murder and especially aggravated kidnapping of Vernon Green.  *State v. Robinson*, 146 S.W.3d 469, 474 (Tenn. 2004).  Petitioner was the Chief of Security for the

Gangster Disciples in Memphis. *Id.* at 478. He and other ranking Gangster Disciples reportedly directed six gang members to take Green to Bellevue Park and kill him. *Id.* at 479-480, 498. The State argued that Petitioner was criminally responsible for the actions of these gang members. *Id.* at 486, 507.

Petitioner raised false testimony, *Brady*[1], and ineffective assistance of counsel claims in a petition for post-conviction relief and appealed the denial of that petition. (ECF No. 29-1 at 4.) *See Robinson v. State*, No. W2011-00967-CCA-R3PD, 2013 WL 1149761, at *1 (Tenn. Crim. App. Mar. 20, 2013). (*See* ECF No. 25-4 at PageID 8263-8329[2]). The Tennessee Court of Criminal Appeals affirmed. *Robinson*, 2013 WL 1149761 at *98. The Tennessee Supreme Court denied Petitioner's application for permission to appeal. (*See* ECF No. 25-5 at PageID 8330-89; *see also* ECF No. 25-7 at PageID 8399.)

## II.    THE AEDPA

The statutory authority for federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the AEDPA. The AEDPA has differing standards of review for claims adjudicated on the merits in state court and factual issues resolved in the state court.

### A.    Claims Adjudicated on the Merits

The deferential AEDPA standard of review only applies to claims that were "adjudicated on the merits in State court proceedings." *Daniel v. Curtin*, 499 F. App'x 400, 404 (6th Cir. 2012); *see Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) ("the stringent requirements of §

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] "PageID" references identify documents in the state court record and exhibits filed in CM-ECF.

2

2254(d) apply only to claims that were 'adjudicated on the merits in State court proceedings.'");

*see also Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 459-60 (6th Cir. 2015) (same).

The Supreme Court elaborated on the meaning of an adjudication on the merits:

> A judgment is normally said to have been rendered "on the merits" only if it was "delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments."   And as used in this context, the word "merits" is defined as "[t]he intrinsic rights and wrongs of a case as determined by matters of substance, in distinction from matters of form."

*Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013) (citations omitted).   "[T]here is a strong presumption that state-court decisions are based on the merits, . . . and especially when a state court explicitly does say so."   *Moritz v. Lafler*, 525 F. App'x 277, 282 (6th Cir.), *cert. denied sub nom. Moritz v. Smith*, 134 S. Ct. 424 (2013).

When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.   *Harrington v. Richter,* 562 U.S. 86, 99 (2011).   The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely."   *Id.* at 99-100.

The AEDPA narrowed the grounds for habeas relief on claims "adjudicated on the merits" and established the standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).

The Supreme Court reminded us that the standard is demanding because of the deference owed to state court adjudications:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." "If this standard is difficult to meet"—and it is—"that is because it was meant to be." We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy.

*Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (citations omitted) (quoting *Richter*, 562 U.S. at 102-103.  The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (internal quotation marks and citations omitted).[3]   The limited bases for granting the writ "reflect[ ] the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently

---

[3] The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a *de novo* review of the state court's determination.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

than" the Supreme Court has "on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).[4]

An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  The state court's application of clearly established federal law must be "objectively unreasonable."  *Id.* at 409.  The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly.  *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Williams*, 529 U.S. at 411.  The "unreasonable application" prong of § 2254(d)(1) applies to mixed questions of law and fact.  *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); *see Smith v. Taylor*, No. 5:10-CV-91-KKC-HAI, 2014 WL 3513180, at *9 (E.D. Ky. July 16, 2014).

There is little case law addressing the applicable standard for a claim raised under § 2254(d)(2), arguing that a decision was based on "an unreasonable determination of facts."  In *Wood v. Allen*, 558 U.S. 290, 301 (2010), the Supreme Court stated that a state-court factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion.  In *Rice v. Collins*, 546 U.S. 333, 341-42 (2006), the Court explained that

---

[4] The "contrary to" standard does not require citation to Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *see Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (same); *Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010) (same).

"[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination."[5]

"Notwithstanding the presumption of correctness, the Supreme Court has explained that the standard applicable under § 2254(d)(2) is demanding but not insatiable. Accordingly, [e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review." *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) (internal citations and quotation marks omitted). A state court adjudication will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010); *see Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

AEDPA permits *de novo* review of a claim adjudicated on the merits when a state court decides a federal claim in a way that is "contrary to" or an unreasonable application of clearly established Supreme Court precedent. *Johnson*, 133 S. Ct. at 1097; *see Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("A federal court must then resolve the claim without the deference AEDPA otherwise requires.")

### B.    Factual Issues

Factual issues are "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators" and depend on a trial court's appraisal of

---

[5] In *Wood*, 558 U.S. at 293, 299, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was "unreasonable," or whether § 2254(e)(1) additionally requires a petitioner to rebut, with clear and convincing evidence, a presumption that the determination was correct. The Court found it unnecessary to reach that issue. *See id.* at 300, 304-05. In *Rice*, 546 U.S. at 339, the Court recognized that it is unsettled whether there are some factual disputes where § 2254(e)(1) is inapplicable.

witness credibility and demeanor. *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995) (internal quotation marks omitted). The AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner is required to rebut the presumption of correctness by "clear and convincing evidence." *Id.*; *see McMullan v. Booker*, 761 F.3d 662, 670 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1534 (2015) ("§ 2254(e)(1) dictates that 'a determination of a factual issue made by a State court shall be presumed to be correct.'"); *see also Vasquez v. Bradshaw*, 345 F. App'x 104, 113 (6th Cir. 2009) ("Only if Vasquez 'rebut [s] the presumption of correctness by clear and convincing evidence' may we disregard those determinations.").

## III.   ANALYSIS

Petitioner seeks *de novo* review of his *Brady* and false testimony claims as well as the factual issues underlying his remaining claims. (*See* ECF No. 29 at 1; *see* ECF No. 29-1 at 3, 21-22.) He seeks *de novo* review for his false testimony claim on the basis that the Tennessee Court of Criminal Appeals applied a materiality standard contrary to clearly established federal law. (*Id.* at 9-12.) Petitioner seeks *de novo* review of his *Brady* claim because the Tennessee Court of Criminal Appeals applied the post-conviction standard of clear and convincing evidence to establish factual allegations, under Tenn. Code Ann. § 40-30-110(f), and he contends that the post-conviction standard is contrary to the federal preponderance of the evidence standard. (*Id.* at 14-18.) Petitioner also argues that the *Brady* and false testimony claims were not adjudicated on the merits in the state courts. (*Id.* at 12-14, 19-21.) He seeks *de novo* review of all factual issues based on the application of the state post-conviction clear and convincing evidence standard. (*Id.*

at 21-22.)   Petitioner attempts to bypass the state court's adjudication of the merits of his claims and conflates the habeas review standard in § 2254(d) & (e).

Petitioner's false testimony and *Brady* claims involve the testimony of Jarvis Shipp, a prosecution witness and co-defendant, and a 17-page transcript of a closed-door meeting on November 5, 1998, that shows the prosecution promised to assist Shipp in exchange for his testimony against Petitioner and co-defendant Prentiss Phillips.   *See Robinson*, 2013 WL 1149761, at *13-15, 59-63.   Petitioner's appellate counsel learned about the transcript after his representation of Petitioner ended.   *Id.* at *27.

On appeal of the denial of post-conviction relief, the Tennessee Court of Criminal Appeals stated that the post-conviction trial court credited the testimony of prosecutor Paula Wulff that she gave Petitioner's co-counsel a copy of the November 5th transcript before trial.   *Id.* at *60.   The post-conviction trial court "essentially found that Ms. Wulff gave the transcript of the meeting to co-counsel but that co-counsel failed to share the transcript with lead counsel."   *Id.*   Petitioner disputed this factual finding on appeal.   *Id.*   The Tennessee Court of Criminal Appeals determined that testimony from Petitioner's lead and appellate counsel was "consistent with the post-conviction court's finding . . . . and does not preponderate against the post-conviction court's finding."   *Id.*

### A.      False Testimony Claim

In Ground 1 of the habeas petition, Petitioner alleges that the State violated his constitutional rights by "eliciting and "exploiting" Shipp's false testimony denying that he had received any promises from the State.   (ECF No. 1 at 39.)   Petitioner asserts, based on the

November 5th transcript, that the prosecution promised to "take into consideration . . . what you do to help us get Gregory [Robinson]."   (*Id*.; *see* ECF No. 1-2 at PageID 255-56.)

In the post-conviction proceedings, Petitioner alleged that the prosecution elicited and failed to correct Shipp's false testimony that he did not receive any promises from the prosecution in exchange for his testimony.   *Robinson*, 2013 WL 1149761, at *62.   On appeal of the denial of post-conviction relief, the Tennessee Court of Criminal Appeals evaluated the claim citing *Napue v. Illinois*, 360 U.S. 264 (1959).   *See Robinson*, 2013 WL 1149761, at *62.   The court set forth the elements of the claim based on a state court decision:

> To prevail on his claim that the State knowingly presented false testimony, petitioner must establish by a preponderance of the evidence "(a) that false or perjured testimony was admitted at trial, (b) that the state either knowingly used such testimony or knowingly allowed it to go uncorrected, and (c) that the testimony was material and deprived him of a fair trial." *Roger Morris Bell v. State*, No. 03C01–9210–CR–00364, 1995 WL 113420, at *8 (Tenn. Crim. App., Mar. 15, 1995), *perm. app. denied* (Tenn. Aug. 28, 1995).

*Id*.

The Tennessee Court of Criminal Appeals determined that the prosecutor assured Shipp that his testimony against Petitioner would help save Shipp's life (take the death penalty off the table).   *Id*. at *63.   The court denied relief because it determined the testimony was not material:

> Nevertheless, we cannot conclude that the challenged testimony was material and deprived petitioner of a fair trial. Lead counsel's cross-examination of Mr. Shipp regarding his expectations of an agreement with the State based on his trial testimony was extensive. Mr. Shipp admitted that he hoped the prosecutors would withdraw the death penalty based upon his testimony against petitioner. Based upon Mr. Shipp's admissions, we cannot conclude that *a reasonable probability exists that the outcome of the trial would have been different* but for the State's conduct and the use of the challenged testimony. Petitioner is not entitled to relief regarding this issue.

*Id*. (emphasis added).

9

Petitioner contends that the Tennessee Court of Criminal Appeals applied the higher materiality standard from *Brady*, which requires a reasonable probability that the outcome would have been different, when the court should have applied the materiality standard established by Supreme Court precedent in *Napue,* which only requires any reasonable likelihood that the false testimony could have affected the judgment of the jury.  (ECF No. 29-1 at 9-10.)  Petitioner argues that the difference in these standards is "not mere semantics" and that the *Napue* materiality test is substantively more favorable to Petitioner.  (*Id.* at 10.)  Petitioner asserts that AEDPA's deferential standard does not apply because the Tennessee courts' application of the wrong legal standard rendered the decision "contrary to" clearly established federal law *and* "not an adjudication 'on the merits'."  (*Id*.)

### 1.    An Adjudication on the Merits

Petitioner asserts that the Tennessee Court of Criminal Appeals' decision is not an adjudication on the merits because it required a higher, incorrect materiality standard.  (ECF No. 29-1 at 12.)  Petitioner contends that, in the absence of an adjudication on the merits, the Court should review the claim *de novo*.  (*Id.* at 12-13.)  He relies on *Johnson*, 133 S. Ct. at 1096, to assert that the presumption that a state court has adjudicated a federal claim on the merits is rebutted "when the state court applies a state-law rule that is less protective than the federal standard."  (*Id.* at 13.)  Petitioner cites several circuit court decisions, but none from the Sixth Circuit, examining whether a state court adjudication was on the merits when the state court applied a more restrictive standard than the federal standard.  (*Id.*)[6]  He contends that the same logic applies in this instance where the Tennessee Court of Criminal Appeals purported to decide

---

[6] These decisions were prior to the Supreme Court's ruling in *Johnson*.

the federal claim expressly rather than remain silent as it did in *Johnson*.   (*Id.*)   Petitioner argues

that AEDPA deference is not appropriate where the state court applies a higher standard because

Petitioner may be able to meet the lower federal standard.   (*Id.* at 14.)

The Warden argues that an "adjudication on the merits is most obvious where the state

court's reasoning is plainly discernable from the written opinion."   (ECF No. 34 at 3.)   He asserts

that Petitioner's reliance on *Johnson* to support his argument that Ground 1 was not adjudicated on

the merits because the decision is contrary to clearly established federal law is misplaced.   (*Id.* at

4-5.)

Petitioner acknowledges that *Johnson* differs from the instant case.   In Petitioner's case,

the Tennessee Court of Criminal Appeal's decision was not silent, like in *Johnson*, but express.

(*Id.* at 5.)   The *Johnson* holding concerned protecting the habeas petitioner where the state court

may have overlooked a claim, a situation that is not present here.   (*Id.*)   The Warden argues here

that Petitioner seeks to use the limited holding in *Johnson* to proceed with unnecessary litigation.

(*Id.* at 5-6.)

In *Johnson*, the court addressed whether the *Richter* presumption that a claim was

adjudicated on the merits would apply where a defendant claims that both state law and the Federal

Constitution were violated and the state court made no reference to federal law in denying relief.

*Johnson*, 133 S. Ct. at 1096.   The court held that the *Richter* presumption is "a strong but rebuttal

presumption."   *Id.*   The court opined:

> To be sure, if the state-law rule subsumes the federal standard—that is, if it is at
> least as protective as the federal standard—then the federal claim may be regarded
> as having been adjudicated on the merits.   But what if, for example, in at least
> some circumstances the state standard is less protective? Or what if the state
> standard is quite different from the federal standard, and the defendant's papers
> made no effort to develop the basis for the federal claim? What if a provision of the

Federal Constitution or a federal precedent was simply mentioned in passing in a footnote or was buried in a string cite? In such circumstances, the presumption that the federal claim was adjudicated on the merits may be rebutted—either by the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*) or by the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted). Thus, while the *Richter* presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable.

*Id.* (citations omitted).

The instant case does not present the situation in *Johnson*.   Here, the claims presented in the state court and federal court are the same.   The state post-conviction court heard and evaluated evidence and considered the merits of that claim.   *Johnson* does not provide a basis for *de novo* review of Petitioner's false testimony claim.   The state court clearly adjudicated the false testimony claim on the merits.[7]

## 2.    Contrary to Clearly Established Federal Law

Petitioner asserts that his false testimony claim is entitled to *de novo* review because the Tennessee court's decision is contrary to clearly established federal law.   (ECF No. 29-1 at 10-12.)   *See* 28 U.S.C. § 2254(d)(1).   He cites *Williams*, 529 U.S. 362 (2002), and *Johnson*, 133 S. Ct. at 1097, for the proposition that "AEDPA permits *de novo* review in those rare cases when a state court decides a federal claim in a way that is "contrary to" clearly established Supreme Court precedent."   (*Id.* at 11.)   Petitioner argues, based on *Vasquez*, that the Sixth Circuit has determined that *de novo* review should apply where a state has improperly applied a "greater burden on the petitioner" than federal law.   (*Id.*)   He contends that several other circuits have held that the application of the wrong standard justifies *de novo* review.   (*Id.* at 11-12.)

---

[7] Petitioner's argument that the state court decision was contrary to clearly established Supreme Court precedent presumes that there was an adjudication on the merits.  *See* 28 U.S.C. § 2254(d)(1); *see Johnson*, 133 S. Ct. at 1097 ("The language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was "adjudicated on the merits in State court.")

The Warden combines his argument for the *Brady* and false testimony claims.   (ECF No. 34 at 6.)   He argues that these claims were presented in the state court and adjudicated on the merits on post-conviction appeal.   (*Id.*)   He contends that the state appellate court applied the correct federal standard and reasonably found the challenged testimony was "not material and did not deprive Petitioner of a fair trial."   (ECF No. 34 at 6.)   The Warden argues that the federal court must assess the reasonableness of the state court's ruling in considering whether Petitioner is entitled to relief.   (*Id*. at 10.)   The Warden addresses the "contrary to" standard under § 2254(d)(1) and concludes that the state court's adjudication of Petitioner's false testimony and *Brady* claims is not contrary to or an unreasonable application of clearly established law and was based on a reasonable determination of facts in light of the evidence before the state court.   (*Id.* at 12-13.)

Petitioner replies that the Warden fails to: (1) cite any case holding that AEDPA deference applies where the state court applied the wrong legal standard; (2) address the numerous cases Petitioner cited holding that *de novo* review applies; and (3) support the assertion that the Tennessee Court of Criminal Appeals applied the correct materiality standard.   (ECF No. 39 at 2.)   Petitioner argues that the only basis proffered in support of the Tennessee Court of Criminal Appeals' decision is a quote from the decision that expressly states the wrong standard.   (*Id.* at 3-4.)   Petitioner asserts that a reasoned state court decision employing the wrong legal standard is not a "true adjudication on the merits" and, in such a situation, *de novo* review should apply.   (*Id.*)

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts."   *Williams*, 529 U.S. at 412-13 (emphasis added); *see Coley v. Bagley*, 706 F.3d 741, 748-49 (6th Cir. 2013) (same). To be "contrary" to federal law, the state court decision must be "diametrically different,"

"opposite in character or nature," "mutually opposed," or substantially different from the relevant Supreme Court precedent. *Williams*, 529 U.S. at 405. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law." *Id.*; *see Williams v. Mitchell*, 792 F.3d 606, 612 (6th Cir. 2015); *see also LaMar v. Houk*, 798 F.3d 405, 415 (6th Cir. 2015) ("A state court decision on the merits is contrary to clearly established Supreme Court precedent only if the reasoning or the result of the decision contradicts that precedent.") If the state court's decision is contrary to clearly established Supreme Court precedent, the claim is reviewed *de novo*. *See Williams*, 529 U.S. at 396-98; *see also Morris v. Carpenter*, 802 F.3d 825, 841 (6th Cir. 2015) (same).

A false statement is material under *Napue*, and a new trial is required if there is "any reasonable likelihood" the false testimony could have affected the judgment of the jury. *Napue*, 360 U.S. at 271-272; *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010) (same); *see Woods v. Booker*, 450 F. App'x 480, 486 (6th Cir. 2011) (same). The Sixth Circuit in *Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009), stated that the false testimony standard is lower, more favorable to the defendant, and more hostile to the prosecution than the *Brady* standard. The court described the false testimony standard as "friendly-to-the-accused" and leading to a finding of constitutional error in most cases. *Id.* at 587; *see Ponticelli v. Sec'y, Florida Dep't of Corr.*, 690 F.3d 1271, 1292 (11th Cir. 2012) (internal quotation marks omitted) ("The *Giglio*[8] materiality standard is different and more defense-friendly than the *Brady* materiality standard."); *see Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) ("'[I]f it is established that the government knowingly permitted the introduction of false testimony[,] reversal is virtually automatic.'"). In

---

[8] In *Giglio v. United States*, the United States Supreme Court determined that the due process requirement in *Napue* requires a new trial where the government promises a prosecution witness that he would not be indicted if he testified against the defendant, and the witness lies about the existence of the promise at trial. *Giglio*, 405 U.S. 150, 153-54 (1972).

14

*Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), the Sixth Circuit determined that the difference in the *Napue* and *Brady* standards mattered "because while a traditional *Brady* materiality analysis obviates a later harmless-error review under *Brecht v. Abrahamson*, [507 U.S. 619 (1993),] courts may excuse *Brady/Giglio* violations involving known and materially false statements as harmless error." *Id.* (quoting *Rosencrantz*, 568 F.3d at 584); *see Soto v. Ryan*, 760 F.3d 947, 958 (9th Cir. 2014) ("False testimony is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Under this materiality standard, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.") (internal quotation marks and citation omitted).

Petitioner cites *Vasquez* to assert that *de novo* review should apply where a state has improperly applied a "greater burden on the petitioner." (ECF No. 29-1 at 11.) In *Vasquez*, the Sixth Circuit held that the Ohio court applied law contrary to the clearly established Supreme Court precedent in *Strickland v. Washington*, 466 U.S. 668 (1984), for the ineffective assistance of counsel claims. *Vasquez*, 345 F. App'x at 110-12. The court stated, "[d]ifferent standards make for different outcomes" and held that a state court's decision is contrary to federal law where the court applies an incorrect burden of proof. *Id.* at 112. The Sixth Circuit has found *de novo* review appropriate when a state court recites the proper standard, but applies a more demanding burden of proof to the *Strickland* prejudice inquiry. *Tucker v. Cason*, 393 F. App'x 334, 338 (6th Cir. 2010).

Petitioner cites *Dow v. Virga*, 729 F.3d 1041, 1043 (9th Cir. 2013), a Ninth Circuit case where the court determined that the lower court's application of a harmless error standard to a false testimony claim was contrary to clearly established Supreme Court precedent in *Napue*. *Id.* at

15

1048.  The Ninth Circuit determined that *Napue* required "a far less showing of harm."  *Id.*. (ECF No. 29-1 at 12.)  "*Napue* requires us to determine only whether the error *could* have affected the judgment of the jury, whereas ordinary harmless error review requires us to determine the error *would* have done so."  *Id.*  Based on this difference, the Ninth Circuit held that the state court's application of a stricter standard than permissible under *Napue* was contrary to clearly established Supreme Court precedent and entitled to *de novo* review.  *Dow*, 729 F.3d at 1047-49.

Petitioner does not cite Sixth Circuit or Supreme Court precedent that directly addresses whether applying the *Brady* materiality standard to a *Napue/Giglio* claim is "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1).  (*See id.* at 11-12.)  However, in *Bowling v. Haeberlin*, No. 03-28-ART, 2012 WL 4498647, at *55-56 (E.D. Ky. Sept. 28, 2012), the district court determined that the decision to apply the *Brady* materiality standard to a *Brady/Giglio* claim was contrary to clearly established federal law.  The court reviewed the claim *de novo*.  *Id.* at *56.

Here, the Tennessee Court of Criminal Appeals cited the correct materiality standard from *Napue*, however it applied the *Brady* materiality standard in denying Petitioner's claim.  *See Robinson*, 2013 WL 1149761, at *63.  The application of the *Brady* materiality standard to this claim contradicts governing law because it imposes a greater burden on the defendant than required under *Napue*.  The Tennessee Court of Criminal Appeals' decision on Petitioner's false testimony claim is contrary to controlling Supreme Court precedent because of its application of an incorrect materiality standard.  Petitioner's motion for *de novo* review is GRANTED as it relates to the *Napue* claim.

### B.   *Brady* Claim

In Ground 2 of the habeas petition, Petitioner alleges that the State violated his constitutional rights by withholding the November 5th transcript.  (ECF No. 1 at 40.)  Petitioner

argues that his trial counsel could have used this favorable evidence to impeach Shipp for falsely testifying that the State did not make any promises in exchange for his testimony and on the basis of "other material revelations" contained in the November 5th transcript.   (*Id.*)

The Tennessee Court of Criminal Appeals denied Petitioner relief "[b]ecause the State did not suppress the transcript and the transcript was not material."   *Robinson*, 2013 WL 1149761, at *61.   The court addressed the materiality of the November 5th transcript for *Brady* purposes based on the testimony presented at trial:

> [b]ased upon lead counsel's extensive cross[-]examination of Mr. Shipp at trial regarding his prior statement to the police and Mr. Shipp's concession that he hoped to save his life by testifying, we cannot conclude that there was a reasonable probability that the outcome of the trial would have been different had lead counsel utilized the transcript at trial.

*Id.*

In the motion for *de novo* review, Petitioner argues that his *Brady* claim was rejected based, in part, on the "hotly disputed factual question – whether the State had suppressed evidence of its promise to Shipp."   (ECF No. 29-1 at 3, 7-8.)   Petitioner asserts that the Tennessee post-conviction court's application of a clear and convincing evidentiary standard was incorrect. (*Id.* at 19.)   He contends that the factual findings of the state post-conviction court are not entitled to AEDPA deference because the evidentiary burden on Petitioner is higher in that setting than the preponderance of the evidence required by federal law.   (*Id*. at 3, 14-15.)   He asserts that the state court's application of the wrong standard is contrary to clearly established federal law and/or not an adjudication on the merits under 28 U.S.C. § 2254(d).   (*Id.* at 2.)   He argues, using res judicata principles, that the use of a different evidentiary burden in the state proceedings supports a conclusion that there was no adjudication on the merits.   (*Id.* at 20.)

17

### 1.      An Adjudication on the Merits

Petitioner argues that the Tennessee courts' failure to use the correct standard of proof means there was no adjudication on the merits.   (ECF No. 29-1 at 19.)   He relies on the Tenth Circuit case of *Wilson v. Workman*, 577 F.3d 1284, 1297-99 (10th Cir. 2009), *overruled by Glossip v. Trammell*, 530 F. App'x 708, 736 (10th Cir. 2013), to argue that a state court rule imposing a higher evidentiary standard was not an adjudication on the merits.   (*Id.*)[9]

In *Wilson*, 577 F.3d at 1287, the Tenth Circuit held that the state appellate court's denial of a prisoner's ineffective assistance claim was not entitled to deferential review under the AEDPA because the state court did not consider evidence outside the trial record in accordance with Oklahoma Appellate Rule 3.11(B)(3)(b).   The factual record in *Wilson* was incomplete "solely as a result of the state procedural rule."   *Id.* at 1290-1291.   The court determined that Rule 3.11's requirement that an evidentiary hearing be granted only if the defendant shows "by clear and convincing evidence that there is a strong possibility trial counsel was ineffective" created a higher evidentiary burden than the federal standard under *Strickland*.   *Id.* at 1297.   The Tenth Circuit concluded that the state court's failure to grant an evidentiary hearing under Rule 3.11 does not "necessarily constitute[] a determination that the defendant could not satisfy the federal standard." *Id.* at 1299.   Petitioner here argues, based on *Wilson*, that the state court's determination does not have *res judicata* effect because of the higher evidentiary standard.   (ECF No. 29-1 at 20.)

---

[9] In *Glossip*, the Court noted that *Wilson* was no longer good law because the Oklahoma Court of Criminal Appeals determined that the denial of an evidentiary hearing of an ineffective assistance claim under Appellate Rule 3.11 is an adjudication on the merits subject to AEDPA deference.   *Glossip*, 530 F. App'x at 736.

However, the state court determination at issue in Petitioner's case is a factual issue, and the facts that Petitioner disputes were clearly before the state court.   Unlike *Wilson*, Petitioner was not prevented from developing a factual record to support his claim.   The Tennessee Court of Criminal Appeals adjudicated Petitioner's *Brady* claim on the merits and made specific factual findings in the post-conviction proceedings.   *Robinson*, 2013 WL 1149761, at *59-62.   State court factual findings are presumed to be correct under § 2254(e), regardless of whether there has been an adjudication on the merits.   *Wilson* is not applicable to the instant case.   Petitioner's *Brady* claim was adjudicated on the merits because the Tennessee Court of Criminal Appeals fully considered the facts and law relevant to his claim.

## 2.     Contrary to Clearly Established Federal Law

A *Brady* claim is a mixed question of law and fact.   *Brooks*, 626 F.3d at 891.   Petitioner's argument on this point focuses on the factual aspect of the claim - the determination that the transcript was not suppressed, and argues that the state post-conviction standard of proof for factual issues is inconsistent with the federal preponderance of evidence standard.   (ECF No. 29-1 at 14-21.)

The Tennessee post-conviction court applied a "clear and convincing evidence" standard to evaluate the factual allegations supporting Petitioner's *Brady* claim.   (ECF No. 29-1 at 15.) *Robinson*, 2013 WL 1149761, at *57 (citing Tenn. Code Ann. § 40-30-110(f) for standard of review).   Petitioner asserts that the Tennessee courts' decision was "indelibly tainted" by the imposition of the higher standard.   (*Id.* at 3.)   He contends that the state court record is "fundamentally ambiguous" as to whether Petitioner would have prevailed under the federal preponderance of evidence standard.   (*Id.*)   He argues that the burden of proof is a substantive

19

component of federal constitutional claims, and the state courts' application of the wrong standard deprived him of an "adjudication on the merits" on the *Brady* issue and other claims including his ineffective assistance of counsel claims.   (*Id.* at 3.)

Finally, he asserts that because Tennessee law requires proof by clear and convincing evidence, the Tennessee statute actually conflicts with federal law for *Brady* claims.   (*Id.* at 18.) He argues that the Tennessee courts' application of the wrong standard of proof requires that his *Brady* claim be reviewed *de novo* and is contrary to clearly established federal law.   (*Id.*)[10]

The Warden argues that AEDPA requires federal habeas courts to presume the correctness of state court's factual findings subject to rebuttal by clear and convincing evidence.   (ECF No. 34 at 2, 11.)   *See* 28 U.S.C. § 2254(e)(1).   He contends that, unless Petitioner can plead and prove facts meeting this burden, the federal court must presume the state courts' determination of the facts to be true and review the reasonableness of the state courts' application of federal law.   (*Id.* at 11.)   The Warden contends that Petitioner fails to provide any clear and convincing evidence to rebut the presumption and only argues the merits of his *Brady* claim.   (*Id.* at 12.)   According to the Warden, the state afforded Petitioner a full and fair hearing, and the state court's factual determinations were reasonable in light of the evidence presented.   (*Id.*)   The Warden argues that

---

[10] Petitioner argues that Tennessee's standard for review of factual allegations in post-conviction proceedings is "an outlier nationally" because Tennessee is one of four states that applies the clear and convincing evidence standard.   (ECF No. 29-1 at 21.)   He argues that, because the majority of states apply the preponderance of the evidence standard, *de novo* review in this case "would not upset the level of deference" generally shown in habeas decisions.   (*Id.*) Petitioner's argument promotes *de novo* review of all factual findings made in Tennessee state courts because of the clear and convincing evidence standard and ignores AEDPA's goals of promoting comity, finality, and federalism.   *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009); *see Burt*, 134 S. Ct. at 15 ("AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights").

Petitioner failed to demonstrate or prove any facts that would establish by clear and convincing evidence that the state court findings of fact are not entitled to a presumption of correctness.   (*Id.*)

Petitioner replies that the State does not dispute that the correct standard is a preponderance of the evidence.   (ECF No. 39 at 39.)   He asserts that the state courts plainly applied the clear and convincing evidence standard to Petitioner's claims.   (*Id.*)

Tennessee's "clear and convincing evidence" standard applies to proof of factual allegations contained in a post-conviction petition, not legal determinations.   *See* Tenn. Code Ann. § 40-30-110(f); *see Howell v. Hodge*, No. 2:06-CV-108, 2010 WL 1252201, at *13 (E.D. Tenn. Mar. 24, 2010).   The relevant statutory provision for habeas review of state court factual determinations is 28 U.S.C. § 2254(e)(1).[11]   Section 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

This provision does not require an adjudication on the merits.

The Sixth Circuit has stated that the § 2254(e)(1) presumption of correctness for state factual findings "can be overcome *only* by a showing of clear and convincing evidence."   *Bell v. Howes,* 703 F.3d 848, 852 (6th Cir. 2012) (emphasis added), *cert. denied sub nom. Bell v. Hoffner*, 133 S. Ct. 2775(2013).   The court has applied the presumption of correctness in § 2254(e)(1) when evaluating *Brady* claims that were initially presented in Tennessee post-conviction proceedings.   *See id.* at 854 (state court factual finding that evidence was not suppressed is

---

[11] Even under pre-AEDPA standards, Petitioner would be required to show clear error for questions of fact.   *See Nichols v. Heidle*, 725 F.3d 516, 557 (6th Cir. 2013).

entitled to deference); *see Matthews v. Ishee*, 486 F.3d 883, 891-92 (6th Cir. 2007) (factual finding for a *Brady* claim that was fairly presented in state court but not reviewed on the merits is subject to the presumption of correctness under § 2254(e)(1)); *see also Hutchison v. Bell,* 303 F.3d 720, 741-742 (6th Cir. 2002) (giving deference to the state court factual finding that the purported *Brady* material was not suppressed).   Petitioner is not entitled to *de novo* review of his *Brady* claim merely because he disputes the appropriateness of the state court's evidentiary burden for establishing facts.

To the extent Petitioner contends that the state court's *Brady* determination was "tainted" based on an unreasonable determination of fact, § 2254(d)(2) applies because the Tennessee post-conviction courts adjudicated the merits of the claim.   *See Robinson*, 2013 WL 1149761, at *59-62.[12]   To determine that a fact is unreasonable under §2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record."   *McMullan*, 761 F.3d at 672 (internal quotation marks omitted).

In *Burt*, the United States Supreme Court addressed AEDPA reference as it relates to the factual basis for a claim:

> AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The prisoner bears the burden of rebutting the

---

[12] Despite Petitioner's assertions that the factual determinations tainted the Tennessee Court of Criminal Appeals' decision, Petitioner does not incorporate into his argument for *de novo* review of factual findings that the state court's determination was based on an unreasonable determination of facts in light of the evidence presented.   *See* 28 U.S.C. § 2254(d)(2).   (*See* ECF No. 29-1 at 2 n.1.)

> state court's factual findings "by clear and convincing evidence." § 2254(e)(1). We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here. *See Wood v. Allen,* 558 U.S. 290, 293, 130 S. Ct. 841, 175 L.Ed.2d 738 (2010). For present purposes, it is enough to reiterate "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.,* at 301, 130 S. Ct. 841.

*Burt*, 134 S. Ct. at 15.

The Sixth Circuit addressed the application of § 2254(d)(2) in contrast to § 2254(e)(1) in

*McMullan*:

> Under what circumstances, then, can a habeas petitioner obtain relief under § 2254(d)(2)? Federal courts have struggled with this question, especially in the context of the application of deference to mixed questions of law and fact. Section 2254(d)(2), on the one hand, envisions federal review of a state court's "unreasonable determination of the facts." On the other hand, § 2254(e)(1) dictates that "a determination of a factual issue made by a State court shall be presumed to be correct." The Supreme Court has declined to clarify the relationship between these two provisions, and it has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)." Other circuits have also declined to resolve the issue. As with the Supreme Court, we do not—and need not—resolve this tension here.

*McMullan*, 761 F.3d at 670 (citations omitted).

To the extent Petitioner seeks to address the legal determination made by the Tennessee Court of Criminal Appeals, § 2254(d) applies.   The presumption of correction under § 2254(e)(1) also applies.

Petitioner's analysis that the adjudication on the merits was "contrary to" clearly established federal law is inapplicable to the factual issues he raises in his *Brady* claims. Petitioner has not demonstrated that he is entitled to *de novo* review of his *Brady* claim based on the "hotly disputed" factual issue of whether the transcript was suppressed.

Petitioner's motion is DENIED as it relates to his *Brady* claim.

23

### C.      Remaining Factual Issues

In Petitioner's motion, he asserts that he wants *de novo* review of the factual issues underlying his ineffective assistance claims[13] and remaining claims.   (ECF No. 29 at 1; *see* ECF No. 29-1 at 21-22.)   Petitioner asserts 44 separate grounds for relief in the habeas petition.   (*See* ECF No. 1 at i-vii.)   He seeks *de novo* review of "[a]ll of the factual findings underlying the Tennessee court's adjudication."   (*Id.* at 21.)

Petitioner notes three specific state court findings that he contends should be reviewed *de novo*:

- That defense counsel did not know that the tattoo expert was going to state that Robinson's tattoos might be gang-related;

- That defense's mitigation investigators were qualified; and

- That the medical examiner corroborated Shipp's testimony.

(ECF No. 29-1 at 21-22.)   *See Robinson*, 2013 WL 1149761, at *75, 86-87, 94.   Petitioner contends that *de novo* review should not be limited to these three state court factual findings.   (*Id.* at 21.)

Petitioner argues that the same flaws by the state court that occurred with his *Brady* claim are also present as to his other claims, including his ineffective assistance of counsel claim.   (ECF No. 29-1 at 3, 21-22.)   Petitioner lists several errors as constituting ineffective assistance of counsel and asserts that these claims should be subject to proof by a preponderance of the evidence.   (*Id.* at 8-9.)   He cited, by example, certain state court factual findings that he contends

---

[13] The Tennessee Court of Criminal Appeals addressed multiple ineffective assistance of counsel claims that alleged errors from pre-trial through appeal.   *Robinson*, 2013 WL 1149761, *63-95.   The court found the deficiencies in counsel's performance, but no prejudice.   *Id.* at *97.

should be reviewed *de novo*.  (*Id.* at 21-22.)  Petitioner asserts that the post-conviction court's application of the "clear and convincing" evidence standard is not consistent with the federal standard of a preponderance of the evidence.  (*Id.* at 22.)

As stated supra, § 2254(e)(1) presumes the correctness of the state court factual findings which can only be overcome by clear and convincing evidence.  Petitioner is not entitled to *de novo* review of the factual issues on his remaining claims.

## IV.   CONCLUSION

Petitioner's motion is **GRANTED** for his false testimony claim.   The motion is **DENIED** for his *Brady* claim and the factual issues on the remaining claims in his petition.

**IT IS SO ORDERED,** this 30th day of March, 2016.

 s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE