IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 14-cv-2630-SHL-tmp |
| | ) | |
| WAYNE CARPENTER, Warden, | ) | |
| Riverbend Maximum Security | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

ORDER DENYING PETITIONER'S MOTION FOR DISCOVERY
AND
ORDER DIRECTING CLERK TO CHANGE RESPONDENT

On May 26, 2015, Petitioner Gregory Robinson, through counsel, filed a motion for discovery and supporting memorandum.  (Electronic Case Filing ("ECF") No. 31.)  On July 23, 2015, Respondent[1] filed an answer in opposition to discovery.  (ECF No. 40.)  On August 24, 2015, Petitioner filed a reply in support of his motion.  (ECF No. 41.)  For the reasons stated, Petitioner's motion for discovery is DENIED.

## I.   BACKGROUND

Petitioner was convicted for the especially aggravated kidnapping and premeditated first degree murder of Vernon Green and sentenced to death.  *Robinson v. State*, No.

---

[1]  The proper respondent to a habeas petition is the petitioner's custodian.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).  Petitioner is in custody at Riverbend Maximum Security Institution ("RMSI") where Bruce Westbrooks is the warden.  *See* Tennessee Felony Offender Information Lookup, https://apps.tn.gov/foil/search.jsp (last visited June 28, 2016); *see* Tennessee Department of Correction, http://www.tn.gov/correction/institutions/rmsi.html (last visited June 28, 2016).  The Clerk shall record the respondent as RMSI Warden Bruce Westbrooks.  The Clerk shall terminate all references to Wayne Carpenter as the respondent.

W2011-00967-CCA-R3-PD, 2013 WL 1149761, at *1 (Tenn. Crim. App. Mar. 20, 2013).   On the afternoon of April 30, 1997, two children in the Hurt Village Apartments in Memphis, Tennessee got into a squabble that escalated into a fight and gunfire between their mothers' boyfriends, who were members of rival gangs, the Gangster Disciples and the Vice Lords.   *Id.* at *1.   The Hurt Village Gangster Disciples called an "aid and assist" meeting and congregated at Hurt Village. *Id.*   Vernon Green, who was not a member of either gang, was near the apartment where the meeting was being held.   *Id.*   Prentiss Phillips, the coordinator of the Hurt Village Gangster Disciples, accused Green of being a look-out for the Vice Lords and of being a Vice Lord.   *Id.* at *1-2, 5-6.   Petitioner, the chief of security for the Memphis Gangster Disciples, ordered gang members to "snatch" Green and bring him to the apartment.   *Id.* at *1-2, 5.   Green was beaten and interrogated for 1½ to 2½ hours.   *Id.* at *1.   Six gang members, not including Petitioner, took Green to Jesse Turner Park (formerly Bellevue Park) and shot him to death.   *Id.*   Petitioner was heard telling Phillips and other gang members "[y]'all know what to do" as they left the apartment with Green.   *Id.* at *3.

Former Gangster Disciples Christopher James and Jarvis Shipp testified for the prosecution.   *Id.* at *2.   Shipp had been the chief of security for the Hurt Village Gangster Disciples and testified about the organizational hierarchy within the Memphis Gangster Disciples. *Id.* at *5.

Petitioner uses the November 5, 1998, statement of Jarvis Shipp ("November 5 Statement") to support Petitioner's discovery requests.   (*See* ECF No. 24-8 at PageID 6253-69.) With regard to rank, Shipp stated:

MB[2]:  NOW DID [PETITIONER] HAVE ANYTHING TO DO WITH WHO WENT TO THE PARK WITH VERNON?

JS[3]:  HE TOLD PRENTIS[S] AND BIG FOLK WHICH IS KEVIN WILKINS TO PICK OUT SOME PEOPLE, PICK OUT THREE PEOPLE.

MB:  OK, NOW GREGORY WAS CHIEF OF SECURITY OF THE WHOLE CITY.

JS:  YES MA[']M.

MB:   SO WAS HE ABOVE PRENTIS[S]?

JS:  WELL, YEAH, BUT BECAUSE HE WAS ON PRENTIS[S]' TERRITORY, I THINK PRENTIS[S] WAS OVER, BUT HE WAS ACTUALLY OVER PRENTIS[S].

(*Id.* at PageID 6255.)

With regard to the State's promise to Shipp, the transcript reads:

MB:  OK, NOW, WE PROBABLY WILL WANT YOU TO TESTIFY AT THIS THING.

JS:  YES MA[']M.

MB:  ARE YOU UP FOR IT?

JS:  IF IT[']S GOING HELP ME SAVE MY LIFE?

MB:  YEAH, IT WILL. I CAN'T MAKE ANY DEALS RIGHT NOW BUT WE WILL CERTAINLY TAKE IT INTO CONSIDERATION WHATEVER YOU DO TO HELP US GET GREGORY AND PRENTISS.

JS:  THANK YOU.

(*Id.* at PageID 6267-68.)

---

[2] "MB" is an abbreviation for Assistant District Attorney Patience "Missy" Branham. (*See* ECF No. 24-8 at PageID 6253.)

[3] "JS" is an abbreviation for Jarvis Shipp.   (*See* ECF No. 24-8 at PageID 6253.)

3

## II.   RELEVANT CLAIMS

Petitioner seeks discovery for the following four claims:

Ground 1:   The State violated Petitioner's constitutional rights by eliciting and failing to correct Jarvis Shipp's false testimony denying that he received promises from the State.

Ground 2:   The State violated Petitioner's constitutional rights under *Brady v. Maryland* by withholding Shipp's November 5 statement.

Ground 3:   Trial counsel rendered ineffective assistance by failing to use Shipp's November 5 statement to cross-examine him.

Ground 18:   The State violated Robinson's due process rights by using inherently contradictory and irreconcilable factual theories in Robinson and co-defendant Prentiss Phillips' trials for the same crime.

(ECF No. 1 at 16-63, 128-40; *see* ECF No. 31-1 at 1-8.)[4]

On direct appeal, Petitioner argued that the State's use of inconsistent theories about his relative rank as a Gangster Disciple and that of Phillips violated due process.  *See State v. Robinson*, No. W2001-01299-CCA-R3-DD, 2003 WL 21946735, at *48 (Tenn. Crim. App. Aug. 13, 2003); *State v. Robinson*, 146 S.W.3d 469, 474, 494-98 (Tenn. 2004).   Petitioner exhausted his *Brady*, false testimony, and ineffective assistance of counsel claims in the state court post-conviction proceedings.   *See Robinson*, 2013 WL 1149761, at *59-95.

## III.   DISCOVERY REQUESTS

Petitioner requests that the following interrogatories be propounded on the State of Tennessee:

1.   Explain your beliefs concerning, and identify all facts and evidence supporting, or which you believed at the time supported, your contentions at the

---

[4] In Petitioner's motion for discovery, he asserts that the discovery requests are related to his false testimony claim and due process claim about contradictory and irreconcilable factual theories (Grounds 1 and 18).   (*See* ECF No. 31 at 1.)

4

trial of Petitioner Gregory Robinson that (a) Robinson held the rank, title, or position ("rank") of "chief of security" of the Gangster Disciples for the city of Memphis, and (b) Robinson held a higher rank and/or authority than Prentiss Phillips at the Hurt Village meeting preceding the murder of Vernon Green on or about April 30-May 1, 1997.

2.      Explain your beliefs concerning, and identify (a) all facts and evidence you collected or obtained on or after November 21, 1998, concerning (i) the ranks of Robinson and Phillips within the Gangster Disciples on or about April 30-May 1, 1997, and (ii) the relative rank or authority of Robinson and Phillips at the Hurt Village meeting preceding the murder of Vernon Green on or about April 30-May 1, 1997; (b) any change in your understanding as to the foregoing; and (c) when, how, and why such understanding changed, including but not limited to all facts and evidence informing such change(s).

3.      State whether you contend that the factual theories offered at the trials of Prentiss Phillips and Gregory Robinson are consistent with one another, and if so, set forth all the reasons why you so contend, including identification of all facts and evidence supporting your contention.

4.      Identify each lawyer or investigator who worked on the prosecution of Gregory Robinson.

5.      Identify each lawyer or investigator who worked on the prosecution of Prentiss Phillips.

6.      Identify each lawyer or investigator who worked on the prosecution of any other individual in connection with the murder of Vernon Green.

(ECF No. 31-2 at 1-2.)

Petitioner seeks to propound the following requests for production:

1.      Produce the complete prosecution file(s) related to the prosecution of Prentiss Phillips, including but not limited to evidence, notes, transcripts, police reports, investigation materials and reports, interviews, notes of interviews, communications with witnesses, witness statements, and agreements with or promises made to witnesses.

2.      Produce all policies, procedures, and training materials in place in the Office of the Shelby County District Attorney General or the Office of the Attorney General of Tennessee at the time of Robinson's trial related to *Jencks* materials (i.e. prior statements of witnesses), including but not limited to records of training, notes, textbooks, written policies or guidelines, and memoranda.

5

(ECF No. 31-2 at 2.)

Petitioner requests leave to take the depositions of the two prosecutors in the Robinson and Phillips trials, Paula Wulff and Patience Branham.   (ECF No. 31-1 at 3, 10.)

## IV.   DISCOVERY STANDARD

Habeas petitioners do not have an automatic right to discovery.   *See Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Discovery in habeas cases is controlled by Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), which states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."   *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("For good cause shown, the district court has the discretion to permit discovery in a habeas proceeding . . . .").   Habeas Rule 6 is meant to be "consistent" with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. 286 (1969).   *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).   In *Harris*, the Court stated:

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris*, 394 U.S. at 300.

"Good cause" is not demonstrated by "bald assertions" or "conclusory allegations." *Stanford*, 266 F.3d at 460; *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).   Rather, the requested discovery must be materially related to claims raised in the habeas petition and likely to "resolve any factual disputes that could entitle [the petitioner] to relief."   *Williams*, 380 F.3d at

975 (quoting *Stanford*, 266 F.3d at 460) (internal quotation marks omitted); *see Bracy*, 520 U.S. at 908-09 (allowing discovery relevant to "specific allegations" of fact in support of a claim of constitutional error); *Post v. Bradshaw*, 621 F.3d 406, 425 (6th Cir. 2010) (stating that discovery provides petitioner "that extra evidence he . . . needs to prove or strengthen his case"); *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007) ("Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests.").[5]   Although "more liberal discovery is appropriate in capital [habeas] cases," *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)), Rule 6(a) does not permit a "fishing expedition masquerading as discovery," *Stanford*, 266 F.3d at 460.

## V.   ANALYSIS

Petitioner argues that he has good cause for discovery because the requests are narrowly tailored, directly relevant to his claims, and the information could not have been obtained in state post-conviction proceedings.   (ECF No. 31-1 at 1.)   Petitioner argues that, at his trial, the State's theory was that he was the highest-ranking member of the Gangster Disciples present at the meeting and that he ordered six other gang members to murder Vernon Green.   (*Id.*)   Petitioner contends that the State asserted that Robinson alone possessed the ultimate authority to order the

---

[5] "The Sixth Circuit has not determined whether § 2254(e)(2) applies to motions for discovery."   *Hill v. Anderson*, 4:96CV0795, 2010 WL 5178699, at *8 (N.D. Ohio Dec. 14, 2010). A petitioner may show good cause under Habeas Rule 6 without meeting the higher standard for an evidentiary hearing in 28 U.S.C. § 2254(e)(2).   *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000); *see Braden*, 2007 WL 1026454, at *6 (distinguishing discovery from factual development under § 2254(e)(2)); *see also Simmons v. Simpson,* No. 3:07-CV-313-S, 2009 WL 4927679, at *5-6 (W.D. Ky. Feb. 12, 2009) (stating that this view is not unanimously held by all federal courts).

killing of Green and that Petitioner exercised that authority.   (*Id.*)   At Prentiss Phillips'

subsequent trial, the State, through the same prosecutors, argued that Phillips was the "ranking

Gangster Disciple" and that he alone ordered Green's murder for "personal reasons."   (*Id.*)[6]

Petitioner asserts that the State chose not to pursue a conspiracy theory, and after obtaining

Petitioner's conviction, the State "openly ridiculed" Phillips' defense that Petitioner was

responsible for the murder.   (*Id.* at 2.)

The Tennessee Court of Criminal Appeals (the "TCCA") reversed Petitioner's conviction

and found that "the state's proof and theories on this point [were] inconsistent, contradictory, and

factually irreconcilable."   (*Id.*)   *See Robinson*, 2003 WL 21946735, at *48.   The Tennessee

Supreme Court then reversed the TCCA's ruling, finding "that the prosecution did not present

inconsistent theories and evidence in the separate trials of the defendant and his co-defendant

Prentiss Phillips."   *Robinson*, 146 S.W.3d at 496-97.   Petitioner argues that the Tennessee

Supreme Court's decision fails to grapple with the directly contradictory facts presented by the

State at Petitioner's and Phillips' trials.   (*Id.* at 2.)   He contends that the November 5 statement

was "a critical piece" of evidence that emerged in the post-conviction proceedings and expressed

Shipp's uncertainty about whether Petitioner had more authority than Phillips.   (*Id.*)   Petitioner

also argues that the statement showed that the State promised Shipp it would take into account, in

Shipp's own criminal matter, the assistance Shipp gave to help prosecute Petitioner and Phillips.

(*Id.* at 2-3.)

---

[6] Phillips was sentenced to life imprisonment without parole on the first degree murder charge and to twenty-five years of incarceration on a related conviction for especially aggravated kidnapping.   *See State v. Phillips*, 76 S.W.3d 1, 2 (Tenn. Crim. App. 2001).

Petitioner argues that the prosecution's contemporaneous knowledge and state of mind is an element of a potential additional false testimony claim about Shipp's testimony as to Petitioner's rank and authority.   (ECF No. 31-1 at 3, 10.)   Petitioner contends that he is entitled to know:

- the State's beliefs about whether Petitioner or Phillips was higher ranking and who actually ordered the murder;

- whether the State's belief on these issues changed over time; and

- the evidence that supported the State's assertions.

(*Id.*)

Respondent argues that Petitioner's requested discovery is overbroad; fails to state sufficient facts to make a showing of good cause; and fails to demonstrate that the requested material would provide beneficial information.   (ECF No. 40 at 3.)   Respondent argues that Petitioner admits his claims are speculative when he states that the requested discovery is "potentially relevant and material" and would allow him possibly to assert a new false testimony claim that has not been alleged.   (ECF No. 40 at 5; *see* ECF No. 31-1 at 3.)   As more fully explained below, Petitioner has not demonstrated good cause for the discovery sought because: (1) there is no clearly established Supreme Court precedent establishing a due process violation where a petitioner asserts the prosecution used contradictory and irreconcilable factual theories in two different trials (Ground 18); and (2) discovery of the District Attorney's policies, procedures, and training materials on Jencks will not establish if and when the prosecutor disclosed the November 5 statement or overcome the presumption of correctness applicable to the factual dispute regarding the disclosure.

## A.      Contradictory and Irreconcilable Factual Theories (Ground 18)

Petitioner alleges that the prosecution offered different testimony from the same witnesses, James and Shipp, at the two trials at issue here, strategically eliciting an incomplete set of facts each time.  (ECF No. 1 at 138.)  Petitioner argues that, at Phillips' trial, the prosecution specifically denied Robinson's involvement and presented evidence that Phillips acted alone. (*Id.*)  Petitioner asserts that the State's use of inconsistent prosecutorial theories violates due process.  (*Id.*)  However, the state court thoroughly considered this issue, and there is no clearly established federal law it violated in its consideration that establishes the constitutional violation Petitioner alleges.  *See* infra pp. 15-17.  Therefore, Petitioner cannot establish good cause to support discovery related to this claim.

Petitioner asserts that he has good cause for discovery on this due process claim.  (ECF No. 31-1 at 9.)  He argues that he did not have the opportunity to develop evidence in the state post-conviction proceedings because the court rejected the claim on direct appeal before Shipp's November 5 statement was discovered.  (*Id.*)

Petitioner contends that the discovery sought seeks the process by which the State developed its theories against Robinson and Phillips, including what the State believed, and when and why the State changed its theory about who was the highest ranking gang member at the meeting and who ordered Green's murder.  (*Id.*)  If the State knew during Petitioner's trial that Phillips ranked higher than Petitioner and ordered the murder, then Petitioner would have a straightforward *Napue*[7] claim.  (*Id.*)  If the State learned that Phillips ranked higher after Petitioner's trial, Petitioner asserts that he has a claim based on the State's failures in administering

---

[7] *Napue v. Illinois*, 360 U.S. 264 (1959).

10

justice.   (*Id.* at 9-10.)

Petitioner asserts that the reason behind the State's change in theory is relevant to the *Napue* claim, especially as to whether the State believed Shipp's testimony.   (*Id.* at 10.) Petitioner seeks the following discovery on this issue:

1.  interrogatories;

2.  the depositions of the prosecutors;

3.  the complete prosecution files for Phillips' case; and

4.  any further discovery that may be appropriate in light of what is uncovered in the discovery process.[8]

(*Id.* at 10.)

The Tennessee Supreme Court addressed the merits of the due process claim.   *See Robinson*, 146 S.W.3d at 494-498.   (ECF No. 40 at 4.)   Respondent contends that the record on review of this claim cannot be expanded and that discovery related to this claim is precluded by *Cullen v. Pinholster*, 563 U.S. 170 (2011).   (*Id.*)   Petitioner argues in response that Respondent's reliance on *Pinholster* is misplaced and that the Supreme Court in *Pinholster* acknowledged that state prisoners may sometimes submit new evidence in federal habeas proceedings.   (ECF No. 41 at 1.)

*Pinholster* "did not, strictly speaking, alter or even speak to the standards governing [Rule 6] discovery," and *Pinholster*'s restrictions should not be invoked at the discovery phase. *Conway v. Houk*, No. 2:07-cv-947, 2011 WL 2119373, at *3 (S.D. Ohio May 26, 2011); *see also Jones v. Bagley*, 696 F.3d 475, 486 n.4 (6th Cir. 2012) (stating that if Petitioner could establish a

---

[8]  Habeas Rule 6(b) requires that a petitioner include proposed interrogatories and requests for admission and specify requested documents.   The request for "any further [unspecified] discovery" is DENIED.

*Brady* violation with the introduction of new evidence discovered in the federal habeas proceedings, introduction of that evidence would not violate *Pinholster*); *Hannah v. Ishee*, 694 F.3d 596, 609-610 (6th Cir. 2012) ("new evidence might transform a previously unexhausted claim into a 'new claim' nevertheless appropriate for federal habeas review"); *Pike v. Johnson*, No. 1:12–cv–35, 2013 WL 2457718, at *3-4 (E.D. Tenn. June 6, 2013) ("While *Cullen v. Pinholster* limits the scope of review under § 2254(d)(1), it says nothing about the court's discretion to allow discovery); *Williams v. Houk*, No. 4:06-cv-451, 2012 WL 6607008, at *4 (N.D. Ohio Dec. 18, 2012) ("There is no clear guidance from either the Supreme Court or the Sixth Circuit regarding how *Pinholster* applies to the availability of discovery in federal habeas proceedings.").   *Pinholster* would not bar new evidence from being considered in a federal habeas proceeding where: (1) a state court did not address a claim "on the merits" and the federal court must conduct a *de novo* review; (2) a federal court must consider new evidence on an unexhausted claim to decide whether there is cause and prejudice or actual innocence to excuse procedural default; and (3) after review solely on the state-court evidence, the federal court determines that the state court contravened or unreasonably applied clearly established federal law.   *See Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012).   Here, *Pinholster* does not establish an absolute bar to discovery on claims previously adjudicated in state court.

Respondent further argues that the information sought by Petitioner would not likely resolve any factual disputes that would entitle Petitioner to relief.   (ECF No. 40 at 5.)   According to Respondent, the evidence about Petitioner's rank in the gang and the State's understanding of his rank was presented at trial and available through the trial transcript.   (*Id.*)   Respondent argues that Petitioner's attempt to get discovery on the unsupported assumption that the State's "beliefs"

about Petitioner's rank and authority changed or were inappropriately presented to the jury should be denied because depositions and interrogatories would not reveal new information.   (*Id.*) Respondent contends that nothing indicates that the prosecutors would offer information in discovery that is inconsistent with what was presented during the two trials.  (*Id.*)  Moreover, Respondent points out that Petitioner has not presented any facts disputing that he was a high-ranking Gangster Disciple capable of ordering Green's murder.  (*Id.* at 5-6.)  Finally, Respondent contends that the factual theories offered at Petitioner's and Phillips' trials were consistent because they both stated the fact that the Gangster Disciples operated under a multi-layered hierarchy, akin to the military, and that each actor was capable of giving orders. (*Id.* at 8.)

As to the November 5 statement, Respondent argues that it does not show uncertainty about Petitioner's rank at the time of the murder.   (ECF No. 40 at 6.)   Shipp clearly stated that Petitioner was "the step up chief of security over the whole city," "the person who was in charge," and that Petitioner was "directing orders, actually telling everyone what to do."   (*Id.*; *see* ECF No. 24-8 at PageID 6253-55.)   Respondent argues that nothing Petitioner seeks in discovery would further develop the November 5 statement or change the evidence presented at trial.   (ECF No. 40 at 6.)   Respondent categorizes Petitioner's requests as "a mere attempt" to obtain depositions or records to provide something helpful to his case – a "prohibited 'fishing expedition masked as discovery.'"   (*Id.*)

Respondent also asserts that Petitioner's interrogatories are overbroad and lack clarity about what information is sought.   (*Id.* at 7.)   Respondent contends that the first and second interrogatories ask for a recitation of the facts and evidence presented at Petitioner's and Philips'

trials.  (*Id.*)  Respondent argues that the requests abuse the discovery process to the extent that they purport to ask him to plead the entire case and marshal all evidence presented in response to one written interrogatory.  (*Id.*)

Lastly, Respondent argues that the request for Phillips' complete prosecution file has no bearing on the claims that evidence was withheld or that false testimony was left uncorrected.  (*Id.* at 8.)  Petitioner cannot point to any specific information in this file that would support his claims. (*See id.*)

In reply, Petitioner contends that Respondent obscures the contradictions between the prosecution's theories.  (ECF No. 41 at 2.)  Petitioner argues that the State's position at his trial was that he was *solely responsible* for giving the order, and the position at Phillips' trial was that Phillips was "the ranking member" of the Gangster Disciples and solely responsible for ordering Green's murder.  (*Id.*)  Petitioner asserts that the State's theory at Phillips' trial hinged on disproving an essential fact that supported Petitioner's guilt, that Petitioner had "the ultimate authority to order the killing and acted alone on that authority."  (*Id.*)  Petitioner asserts that the State's presentation of inconsistent theories about who was solely responsible for Green's murder amounts to a due process violation.  (*Id.*)

Petitioner argues that the trial record does not establish the State's knowledge or belief about these issues, and, he contends that, at a minimum, he has shown a factual dispute.  (*Id.*)  He points to the TCCA's determination that the State's proof in the two cases was "inconsistent, contradictory, and factually irreconcilable."  (*Id.*)  *See Robinson*, 2003 WL 21946735, at *48. Petitioner argues that he is entitled to discovery on what the State believed, when it believed it, and what evidence supported those beliefs.  (*Id.* at 2-3.)  He asserts that discovery will confirm that

14

the prosecution's theories at the two trials were irreconcilable and will demonstrate that the prosecutorial inconsistency rises to the level of a *Napue* claim.   (*Id.* at 3.)

The TCCA found the State's proof and theories "inconsistent, contradictory, and factually irreconcilable, although not meriting relief on the issue of guilt."   *Id.*   The court stated,

> We cannot conscientiously conclude the jury would have necessarily imposed a sentence of death had it known of the state's inconsistent evidence. Since the state presented contradictory proof and argument to a separate jury during the trial of Prentiss Phillips, we hold that the state's inconsistent theories regarding the relative rank of the defendant and co-defendant Phillips violated the defendant's due process rights regarding the imposition of the death penalty. Accordingly, had we not reversed the murder conviction, we would have granted relief as to the sentence of death.

*Id.*   The court reversed both convictions and remanded the matter for a new trial.   *Id.* at *1, 54.

The State appealed, and the Tennessee Supreme Court determined that the State did not violate Petitioner's due process rights.   *Robinson*, 146 S.W.3d at 494-98.   The Tennessee Supreme Court stated that, after a thorough review of the extensive trial record in Petitioner's case and the supplemental records consisting of transcripts and plea colloquies from Petitioner's co-defendants' cases, and appellate briefs, "we are not persuaded the prosecution pursued inconsistent theories or offered contradictory proof at the separate trial of these co-defendants." *Id.* at 495-496.   The court opined,

> In short, the prosecution presented a consistent theory at these separate trials. The prosecution at each trial sought to establish each defendant's criminal responsibility for first degree murder and especially aggravated kidnapping by showing that each defendant held a leadership position in the gang, either citywide chief of security or Hurt Village coordinator, and that, acting in his leadership role, each defendant ordered and otherwise directed gang members to kidnap and murder Vernon Green. Accordingly, we do not agree with the Court of Criminal Appeals's conclusion that the prosecution presented factually inconsistent theories and evidence at the defendant's and Phillips's separate trials. Reversal of the defendant's death sentence on this basis, therefore, is not warranted. The defendant's sentence of death is reinstated.

*Id.* at 498.   Given the Tennessee Supreme Court's review of those documents and determination, the issue on habeas review is not what the State knew about Robinson's rank, but whether the Tennessee Supreme Court applied an appropriate analysis and made reasonable findings under 28 U.S.C. § 2254.

In *Stumpf v. Robinson*, 722 F.3d 739, 749 (6th Cir. 2013), *cert. denied,* 134 S. Ct. 905 (2014)*,* the Sixth Circuit examined whether the prosecution presented different and incomplete sets of facts in support of different theories of culpability for the same crime and whether the prosecution offered different and contradictory testimony from the same witnesses, without acknowledging the contradiction.   The court noted that due process violations have been found where "the prosecutor did something to subvert the very foundation of the trial, something that kept the factfinder from making a fully informed decision."   *Id.* at 750.   The court stated that:

> A criminal defendant has the right to a fair proceeding in front of an impartial factfinder based on reliable evidence. He does not have the right to prevent a prosecutor from arguing a justifiable inference from a complete evidentiary record, even if the prosecutor has argued for a different inference from the then-complete evidentiary record in another case. The prosecutor's allegedly inconsistent arguments do not violate the Due Process Clause.

*Id.* at 751.   The court found no constitutional violation and stated that "Stumpf asks us to invent a new due process right."   *Id.* at 751-752.

The Sixth Circuit has questioned whether there is clearly established Supreme Court or Sixth Circuit precedent finding a violation of defendant's due process rights whenever the government takes inconsistent positions in two separate trials.   *See United States v. Gravley*, 587 F. App'x 899, 913 n.8 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1578 (2015) ("[w]hether the use of inconsistent theories of prosecution amounts to a denial of Due Process has not been settled");

16

*Clarke v. Warren*, 556 F. App'x 396, 403-04 (6th Cir. 2014) ("This court and others have held that the due process guarantee is frustrated when prosecutors use contradictory theories to secure the convictions of two persons for the same crime.   But the Supreme Court has never reached that conclusion, and the state court's decision therefore was not inconsistent with Supreme Court precedent.") (citations omitted); *Blalock v. Wilson*, 320 F. App'x 396, 418 n. 26 (6th Cir. 2009) (addressing whether there is a clearly established due process violation for a prosecutor's use of inconsistent theories of culpability at the separate trials of codefendants); *see also Patrick v. Grounds*, No. 2:11-CV-1195-JKS, 2013 WL 6000978, at *19 (E.D. Cal. Nov. 12, 2013) ("There is no clearly established Supreme Court precedent to support his claim that due process prohibits a prosecutor from arguing inconsistent theories.")

To gain relief under 28 U.S.C. § 2254(a), Petitioner must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States."   "Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail."   *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014).   Petitioner has not demonstrated good cause for discovery to support his claim where there is no clearly established federal law that would establish a constitutional violation, and further factual development will not entitle Petitioner to habeas relief.

Petitioner's requests for interrogatories, the depositions of the prosecutors, and the complete prosecution files for Phillips' case, to the extent they relate to Petitioner's due process claim, are DENIED.[9]

---

[9] To the extent Petitioner seeks this discovery to develop "a potential *additional* claim" under *Napue*, Petitioner has not demonstrated good cause for discovery on claims that have not been pled in the petition.   (*See* ECF No. 31-1 at 3.)   *See* Habeas Rule 2(c) ("The petition must . . .

**B.    False Testimony, *Brady*, and Ineffective Assistance of Counsel (Grounds 1-3)**

Petitioner requests "one discrete item of discovery" – the policies, procedures, and training materials in the Shelby County District Attorney's office relating to Jencks material - that he asserts is relevant and could not be obtained in the state post-conviction proceedings.  (ECF No. 31-1 at 4, 10.)   He contends that the discovery related to the November 5 statement is relevant to his *Brady*, false testimony, and ineffective assistance of counsel claims.  (*Id.* at 10-11.)   At the heart of Petitioner's claims on these issues is his contention that the November 5 statement was never provided to his trial counsel, and he asserts that the training-related material would provide information about whether, and when, it should have been provided.   However, because the state court found that the statement was in fact produced, this motion for discovery is denied.

**1.    The State Post-Conviction Proceedings**

These claims were raised in the state court post-conviction proceedings, *see* supra p. 4. The TCCA determined that the post-conviction trial court "essentially found" that Wulff gave the November 5 statement to co-counsel and that that he failed to share this statement with Petitioner's lead trial counsel.  *Id.* at *60.   Although Petitioner argued that the post-conviction trial court's finding that the State disclosed the statement is contrary to the evidence presented, the TCCA determined that the finding was consistent with Petitioner's lead counsel and appellate counsel's testimony denying that they had ever seen the statement.  *Id.*   The TCCA determined that the evidence does not preponderate against the post-conviction trial court's finding.  *Id.*

Moreover, in response to Petitioner's argument in state court that the State failed to produce the November 5 statement to the prosecutors in violation of *Brady, Robinson*, 2013 WL

specify all grounds for relief available to the petitioner. . . .")

1149761, at *57, 59-61, the TCCA determined that the November 5 statement was not suppressed, not material, and that there was not a reasonable probability that the outcome of the trial would have been different had Petitioner's lead counsel utilized the November 5 statement at trial.   *Id.* at *60-61.   Petitioner also argued below that the prosecution elicited and failed to correct Shipp's false testimony that he did not receive any promises from the prosecution in exchange for his testimony.   *Id.* at *62.   The TCCA found that no formal agreement existed between the State and Shipp for consideration in exchange for his testimony, but the November 5 statement reflects an assurance from the State that Shipp's testimony would help him save his life.   *Id.* at *63.   The court determined that the challenged testimony was not material and did not deprive Petitioner of a fair trial.   *Id.*

Finally, Petitioner asserted ineffective assistance of counsel for his trial counsel's failure to use the November 5 statement and object to Shipp's false testimony.   *Id.* at *68-69.   The TCCA found that co-counsel was deficient for failing to provide the November 5 statement to lead counsel.   *Id.* at *69.   However, the court determined that Petitioner was not prejudiced "[d]ue to lead counsel's extensive cross-examination of Mr. Shipp and Mr. Shipp's acknowledgment that he hoped to save his life by testifying against petitioner."   *Id.*

## 2.      The Habeas Claims

This Petition presents these same claims and attacks the TCCA's decisions.   However, Petitioner has not demonstrated how the material sought in discovery would prove the elements of his claims.

In Ground 1, Petitioner alleges that the State violated his constitutional rights by eliciting and failing to correct Shipp's false testimony about promises the State made to him.   (ECF No. 1

at 16-19.)   Petitioner argues that the TCCA's decision was erroneous and that the TCCA applied the wrong materiality standard to the claim.   (*Id.* at 18-19, 28-30.)[10]

To prevail on a false testimony claim, the petitioner must show (1) that the prosecution presented false testimony; (2) that the prosecution knew the testimony was false; and (3) that the testimony was material.   *Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009*)*; *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009).   A false statement is material under *Napue*, and a new trial is required if there is "any reasonable likelihood" the false testimony could have affected the judgment of the jury.   *Napue*, 360 U.S. at 271-272; *Brooks v. Tennessee*, 626 F.3d 878, 895 (6th Cir. 2010) (same); *see Woods v. Booker*, 450 F. App'x 480, 486 (6th Cir. 2011) (same).

In Ground 2, Petitioner alleges that the State violated his constitutional rights under *Brady* by withholding the November 5 statement.   (ECF No. 1 at 40.)   In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the Due Process Clause is violated when prosecutors withhold from the defense evidence favorable to the accused where the evidence is material either to guilt or punishment.   This duty to disclose "is applicable even though there has been no request by the accused . . . , and . . . the duty encompasses impeachment evidence as well as exculpatory evidence."   *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted).   A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."   *Id.* at 281-82.

Petitioner asserts that all three elements of a *Brady* violation have been met because: (1) the November 5 statement was plainly favorable; (2) the State failed to disclose the statement; and (3)

_____

[10] The Court has granted Petitioner *de novo* review for his false testimony claim.   (*See* ECF No. 43 at 1.)

the November 5 statement was material because Shipp was a critical witness whose testimony was highly dependent on his credibility.   (ECF No. 1 at 40.)   Despite the TCCA's finding, Petitioner insists that the prosecution failed to disclose the November 5 statement to defense counsel.   (*Id.* at 42-50.)[11]

In Ground 3, Petitioner asserts that his trial counsel rendered ineffective assistance of counsel by failing to cross-examine Shipp using the November 5 statement.   (ECF No. 1 at 60.) Petitioner contends that the TCCA's holding that co-counsel's failure to provide the November 5 statement to lead counsel was deficient, but not prejudicial to Petitioner was based on "an illogical and wildly improbable set of factual premises, [and] constitutes a violation of clearly established law."   (*Id.* at 60-61.)

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   Those standards require a showing that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."   *Id.*   "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."   *Id.* at 686.   To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."   *Id.* at 688.   To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.

---

[11] Petitioner requested *de novo* review of this claim.   (ECF No. 1 at 41; ECF No. 29-1 at 3.)   However, the Court has denied Petitioner's request.   (ECF No. 43 at 1.)

### 3. The District Attorney's Jencks Policies, Procedures & Training Materials

To support Petitioner's request for the policies, procedures, and training materials in the Shelby County District Attorney's office relating to Jencks[12] material, Petitioner focuses on Wulff's statement during the trial about Jencks materials she was providing related to Shipp and asserts that the requested discovery could not have been obtained in the state post-conviction proceedings.  (ECF No. 31-1 at 4, 10-11.)  Critical to Petitioner's position is his continuing dispute with the conclusion reached by the state court that the November 5 statement was actually produced to trial counsel.

Petitioner argues that after Shipp finished his direct testimony, Wulff made a record of the Jencks material that she was disclosing to Robinson's counsel.  (*Id.* at 11.)  Although Wulff

---

[12] The Jencks Act, codified at 18 U.S.C. § 3500, provides that

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a).   A "statement" includes

> (1)     a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2)     a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3)     a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

claims to have already provided Petitioner's counsel with both the May 1997 statement and the November 5 statement, she only made a record of a Jencks disclosure for the May 1997 statement. (*Id.*).   Petitioner contends that the omission of the November 5 statement from that record strongly suggests that Wulff did not disclose it.[13]   (*Id.*)

Petitioner asserts that the purpose of making a record of Jencks disclosures is to remove any doubt about what was disclosed.   (ECF No. 31-1 at 11.)   He argues that Wulff's knowledge of the Jencks policies and her adherence to them may shed light on what happened at trial.   (*Id.*)

Petitioner argues that the nondisclosure of the November 5 statement is of central importance to his *Brady* claim.   (*Id.* at 11.)   He contends that Wulff did not explain her failure to identify the statement as Jencks material at trial until the post-conviction hearing, and Petitioner never had the opportunity to obtain relevant policies and procedures defining how the government should handle Jencks material.   (*Id.*)

It is important to note that the Jencks Act applies to witness statements for government witnesses in a federal criminal prosecution.   Petitioner's case is a state criminal prosecution tried in the Tennessee courts.   The Tennessee equivalent to the Jencks Act is Tennessee Rule of

---

[13] Failure to comply with the disclosure requirements of the Jencks Act results in the following statutory remedy:

> the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

18 U.S.C. § 3500(d).   However, the Sixth Circuit has held that these harsh remedies apply "only when the government 'elects' not to comply . . . only when the government intentionally or consciously chooses to ignore the disclosure requirements under the statute."   *United States v. Taylor*, 13 F.3d 984, 990 (6th Cir. 1994).   The court has only applied § 3500(d) where there is bad faith or motive to suppress.   *Id.* at 990.   The trial court has the discretion to formulate remedies when the violation occurred through negligence or oversight.   *Id.*

Criminal Procedure 26.2.   *See State v. Caughron*, 855 S.W.2d 526, 534-535 (Tenn. 1983) ("[t]he progenitor of Tennessee Rule of Criminal Procedure 26.2 is the 1957 decision of the United States Supreme Court in *Jencks v. United States*, 77 S. Ct. 1007, 353 U.S. 657, 1 L. Ed. 2d 1103 (1957)."

Tenn. R. Crim. P. 26.2(a) provides

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

A "statement" is defined as

> (1) A written statement that the witness makes and signs, or otherwise adopts or approves; or
>
> (2) A substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in a stenographic, mechanical, electrical, or other recording or a transcription of such a statement.

Tenn. R. Crim. P. 26.2(f).

> Tenn. R. Crim. P. 26.2(d) provides the sanction for failure to produce a statement:
>
> If the party who called the witness disobeys an order to deliver a statement, the court shall strike the witness's testimony from the record and order the trial to proceed. If the attorney for the state disobeys the order, the court shall declare a mistrial if required in the interest of justice.

Although Petitioner refers to the withholding of the November 5 statement as a Jencks violation, it is a violation of Tenn. R. Crim. P. 26.2(f).   The remedy for a violation of Tenn. R. Crim. P. 26.2 is statutory and does not independently create a constitutional remedy.[14]

Respondent argues that the TCCA rejected the challenge to Shipp's testimony and determined that the November 5 statement was not material finding that the failure to turn it over

---

[14] Jencks Act material that also meets the *Brady* requirements would provide a constitutional remedy.

did not deprive Petitioner of a fair trial.   (ECF No. 40 at 4.)   *See Robinson*, 2013 WL 1149761, at

*62-63.   Respondent again contends that the discovery related to these claims is precluded by

*Pinholster*, and the record on review of this claim cannot be expanded.   (*Id.*)   Respondent also

asserts that Petitioner has not demonstrated how the requested discovery would support his

*Brady*/*Giglio* claims.   (ECF No. 40 at 6.)   According to Respondent, the factual findings

demonstrate that Wulff gave Petitioner's co-counsel a copy of the November 5 statement, and the

state court found that the statement was not material.   (*Id.* at 6-7.)   *See Robinson*, 2013 WL

1149761, at *61.   Respondent argues that nothing suggests that the State "changed its theory," as

Petitioner asserts, or that the State "disbelieved" Shipp's testimony.   (*Id.* at 7.)

Relying on Petitioner's admission that the factual basis for these claims was developed in

the Tennessee post-conviction proceedings, Respondent further argues that federal court is not an

alternative forum for trying facts and issues which Petitioner failed to develop in state proceedings,

and Petitioner is not entitled to further discovery on habeas review.   (ECF No. 31-1 at 12; ECF

No. 40 at 8.)   Respondent contends that Petitioner was simply not diligent where he failed to ask

Wulff about office policies and procedures concerning Jencks material during her post-conviction

testimony.   (*Id.* at 8-9.)   Finally, Respondent objects to the request for "training materials" as an

ambiguous term that does not specify a finite amount of material.   (*Id.* at 9.)

Petitioner argues that the issue is "one of opportunity, not diligence."   (ECF No. 41 at 4.)

He contends that he did not know he would need the District Attorney's policies, procedures and

training materials about Jencks disclosures until Wulff testified.   (*Id.*)   Petitioner argues that

Wulff's explanation of why she did not produce the November 5 statement indicates "a willful

choice as opposed to, for example, a mistake."   (*Id.*)

Petitioner contends that he has good cause for this discovery because Wulff's testimony was "facially illogical . . . and therefore made no sense," and he had "no reason to anticipate that a court would give any credence to such testimony." (*Id.*)  He argues that discovery of these policies, procedures and training materials should be granted to demonstrate the absence of any rational basis for the State's defense of Wulff's explanation. (*Id.*)  Petitioner asserts that, if Wulff were trained to disclose the November 5 statement during her Jencks disclosure at trial, it is "likelier that she never disclosed the document at all." (*Id.* at 4-5.)

Petitioner asserts that the discovery related to the November 5 statement is relevant to his *Brady*, false testimony, and ineffective assistance of counsel claims.  However, Petitioner does not demonstrate how the District Attorney's policies, procedures and training materials prove the elements of these claims.

In support of this motion, Petitioner continues to assert that the November 5 statement was not disclosed.  However, the TCCA found that the State provided co-counsel with the transcript of Shipp's November 5 statement on November 10, 1998, but co-counsel failed to provide the statement to the lead counsel.  *See Robinson*, 2013 WL 1149761, at *13, 15, 60.  Even if Petitioner finds information that Wulff was appropriately trained and aware of the policy on Jencks, that information is not sufficient to overcome the presumption of correctness for the state court factual finding that the November 5 statement was disclosed.  *See* 28 U.S.C. § 2254(e)(1). Petitioner has not demonstrated how the requested discovery would resolve a factual dispute related to the disclosure of the November 5 statement or assist in the resolution of his *Brady* claim.

Moreover, the discovery requested does not support Petitioner's false testimony claim regarding whether the prosecutor made a promise to Shipp, nor does it support Petitioner's

ineffective assistance of counsel claim.    Petitioner has not demonstrated good cause for discovery of the policies, procedures and training materials in the District Attorney's office related to Jencks materials.    Petitioner's request for production of these documents is DENIED.

## VI.    CONCLUSION

Petitioner's motion for discovery is DENIED.    Discovery has completed.    In accordance with the Scheduling Order, the parties shall have ninety (90) days from the entry of this order to file dispositive motions and/or motions for an evidentiary hearing.

**IT IS SO ORDERED,** this 4th day of August, 2016.


s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE