# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| GREGORY ROBINSON, | ) |
| | ) |
|     Petitioner, | ) |
| | )    **No. 2:14-cv-02630-SHL-tmp** |
| v. | )    **Capital Case** |
| | ) |
| BRUCE WESTBROOKS, WARDEN, | ) |
| | ) |
|     Respondent. | ) |

## RESPONSE IN OPPOSITION TO PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON GROUNDS 1-3 OF HABEAS PETITION

### I. PRELIMINARY STATEMENT

The petitioner's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, challenges the petitioner's state-court convictions for first degree murder and especially aggravated kidnapping and his resulting capital sentence. The respondent has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there are no disputed issues of material fact; the petitioner's claims are non-cognizable, procedurally defaulted, or otherwise meritless; the petitioner has not demonstrated cause to excuse his procedurally defaulted claims; and the respondent is entitled to judgment as a matter of law. (E.C.F. 52.)[1] The petitioner has also filed a motion for partial summary judgment, requesting a ruling in his favor with regard to claims, 1, 2, and 3 of his habeas petition. (E.C.F. 53.)

---

[1] In support of his opposition to petitioner's motion for partial summary judgment, the respondent incorporates by reference all of his previous responsive pleadings in this matter, including the answer (E.C.F. 26), response to first discovery motion (E.C.F. 40), as well as his motion for summary judgment and supporting memorandum (E.C.F. 52).

1

The respondent opposes the petitioner's motion for partial summary judgment and, for the reasons provided in the respondent's motion for summary judgment, the Court should decide these claims in the respondent's favor.

## II. STATEMENT OF THE CASE AND FACTS

The respondent's summary judgment memorandum summarizes the procedural history and relevant facts. (E.C.F. 52-1, PageID# 8879-8937.) For the sake of brevity, the respondent will not repeat that summary herein.

## III. STANDARD OF REVIEW

**A.     FEDERAL HABEAS REVIEW UNDER 28 U.S.C. § 2254**

The respondent's summary judgment memorandum states the applicable standard of review under 28 U.S.C. § 2254. (E.C.F. 52-1, PageID# 8937-43.) For the sake of brevity, the respondent will not repeat that standard herein.

**B.     SUMMARY JUDGMENT REVIEW UNDER FED. R. CIV. P. 56**

It is well established that the motion for summary judgment as provided in Fed. R. Civ. P. 56 is applicable to habeas proceedings. *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Moreover, consideration of a motion for summary judgment allows the district court to assess the need for an evidentiary hearing on the merits of a habeas petition. *See Id*. (discussing the role of summary judgment motions in determining the need for plenary presentation of evidence in habeas proceedings at the federal level).

The summary judgment procedure permits this Court to dispose of actions wherein there are no genuine issues of material fact. Under Fed. R. Civ. P. 56(c), the movant has the burden of establishing the absence of genuine issues of fact that are material to the cause of action and of demonstrating entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 247 (1986). The existence of contested facts will not defeat a summary judgment motion if those facts which affect the outcome of a claim are not in controversy. *Id*. at 248. What constitutes a material fact is identified by the substantive law governing the disposition of an issue. *Id*. As stated by the United States Supreme Court, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.

To contest a motion for summary judgment, the nonmovant must do more than merely refer to and rely upon the allegations of his pleadings. Rather, he must "set forth specific facts showing that there is a genuine issue for trial." *Id*. While the non-movant's burden is merely to demonstrate that there should be a hearing as to the merits of a claim, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### IV. ARGUMENT

**Claim 1:** **Petitioner's Claim That Prosecutor's Elicited False Testimony Under *Napue/Giglio* Is Meritless.**

The petitioner first seeks summary judgment on his claim that, under *Napue* and *Giglio*, state prosecutor's improperly elicited false testimony from Jarvis Shipp. Petitioner argues that Jarvis Shipp testified falsely when he stated that he had not received any promises from the State in exchange for his testimony during petitioner's criminal trial. However, the record clearly demonstrates that there was no agreement between Mr. Shipp and state prosecutors when Mr. Shipp testified at petitioner's trial, and petitioner concedes as much when he acknowledges that there was "no agreement with Shipp before petitioner's trial." (E.C.F. 53-1, PageID# 9149.)

Petitioner argues that a *Napue/Giglio* violation can occur when a "lying witness admits at trial that he has a subjective hope or expectation that his testimony may yield some leniency or

3

other benefit," citing the Ninth Circuit in *Jackson v. Brown*, 513 F.3d 1057 (9th Cir. 2008), and the Fifth Circuit in *United States v. Mason*, 293 F.3d 828, 829 (5th Cir. 2002).

In support of his assertion that Jarvis Shipp was a "lying witness" when he testified that he did not have a deal with prosecutor's in exchange for his testimony petitioner contends that assistant district attorney Branham stated to Mr. Shipp, "…..we will certainly take into consideration whatever you do to help us get Gregory and Prentiss." (E.C.F. 53-1, PageID# 9149.) Petitioner conveniently leaves out the first part of that sentence where Ms. Branham says, "I can't make any deals right now…… ." (E.C.F. 24-8, PageID# 6268.) The respondent's answer and summary judgment memorandum discuss the respondent's position on the meritless nature of this claim. (E.C.F. 52-1, PageID# 8944-52.) For the sake of brevity, the respondent will not restate his previous arguments. In sum, the Court should deny the petitioner's motion and instead decide this claim in the respondent's favor.

Additionally, where petitioner argues that Jarvis Shipp was a witness who possessed an "expectation that his testimony may yield some leniency of other benefit" the petitioner admits that "Shipp did not testify that he had any settled 'expectation' of benefit from his testimony." (E.C.F. 53-1, PageID# 9151.)

In *Jackson v. Brown*, 513 F.3d 1057 (9th Cir. 2008), the state conceded that a deputy district attorney promised a witness he would write a letter on the witness's behalf recommending that he be allowed to serve his California prison sentence in Arizona near his family in exchange for his cooperation in the defendant's trial. The State further conceded that this promise was not disclosed to the defense. At trial the witness was asked, "And is it true that no one promised you anything in exchange for your testimony against Mr. Jackson?" The witness then answered, "Yes, that's right." *Jackson*, 513 F.3d at 1071.

4

Similarly, in *United States v. Mason*, 293 F.3d 828, 829 (5th Cir. 2002), The government's primary witness at trial entered into a plea agreement with the government and agreed to testify against the defendant's at trial. Under direct examination by the government, the witness in question stated that he had not entered into a plea agreement:

Q. And as a result of being arrested did you, have you entered into an agreement with the government?

A. No, sir.

The same assistant United States Attorney who prosecuted the defendant's signed the plea agreement with the witness. *Mason*, 293 F.3d at 828.

The facts in this case are completely inapposite to the facts in the cases cited by the petitioner. There was no plea agreement, or other agreement, between Jarvis Shipp and prosecutor's in this matter and for the reasons stated in respondent's motion for summary judgment petitioner's claim must be denied.

Additionally, petitioner argues that Mr. Shipp's testimony was an important part of the state's case because Chris James' independent testimony corroborating Shipp's testimony, including that the petitioner was at the apartment the night of the victim's murder, was unreliable and weak. (E.C.F. 53-1, PageID# 9145.)

Chris James testified that the petitioner instructed Shipp and three other Gangster Disciples to "go snag [Vernon Green – the victim] up." (E.C.F. 22-5, PageID# 801-03.) He testified that the petitioner had the authority to issue orders to other members of the Gangster Disciples. (E.C.F. 22-6, PageID# 887.) While James did not testify regarding the petitioner's rank relative to that of Prentiss Phillips, James did testify that the petitioner beat the victim without anyone stopping him. (E.C.F. 22-5, PageID# 804.)

Chris James also testified that Shipp, Prentiss Phillips, and the petitioner were talking to one another in the kitchen when James overheard the petitioner say, "Y'all know what to do." (E.C.F. 22-5, PageID# 811-12.)

Q: What did you hear him say?

A: "Y'all know what to do."

...

Q: Now, was this after they had beaten you up?

A: Yes, ma'am.

Q: What did you think-what did you feel at this time was going on?

A: I really couldn't say.

Q: What did you think was going to happen to Vernon?

A: They was going to kill him.

(E.C.F. 22-5, PageID# 812.)

While multiple Gangster Disciple members were taking the victim from the apartment, James overheard the petitioner again say, "Y'all know what to do." (E.C.F. 22-5, PageID# 814-815.) James also testified that the petitioner at one point aimed a nine millimeter gun at his face, while threatening that the "same thing" would happen to James if James ever said "something about it." (E.C.F. 22-5, PageID 805.) James believed the petitioner's comment meant "they going to kill me too." (E.C.F. 22-5, PageID# 816.)

James admitted that portions of his previous statement to police were inconsistent with his testimony in court. (E.C.F. 22-6, PageID# 856-857.) James also clarified during re-direct examination that he referred to the petitioner as "Shaun" in his statement because that is what the victim had called him. (E.C.F. 22-6, PageID# 860, 896.) James testified that it was not until the

first day of trial that he knew the petitioner by his real name, Gregory Robinson. (E.C.F. 22-6, PageID# 920.)

Sergeant William Ashton of the Memphis Police Department also testified he showed a photograph array to James and recalled that James identified the photograph of the petitioner, whom James referred to as "Shaun." (E.C.F. 22-7, PageID# 1046-47.) James maintained the accuracy and truthfulness of his May 8 statement and claimed its only error was his use of the name "Shaun" when describing the petitioner's actions, including that "Shaun came up to me and said I better not say nothing to nobody, and if you think this was something let us find out that you said something about this." (E.C.F. 22-6, PageID# 854, 856.)

Accordingly, for the reasons stated above and for the reasons presented in respondent's memorandum in support of summary judgment, the petitioner's claim is without merit and must be denied.

**Claim 2:** **Petitioner's Claim That The Prosecution Improperly Failed To Disclose Jarvis Shipp's November 5 Statement Under *Brady v. Maryland* Is Meritless.**

The petitioner next argues that the state court's unreasonably determined that ADA Wulff gave Jarvis Shipp's November 5th statement to petitioner's defense counsel, and that the state court's unreasonably applied *Brady* in finding that Shipp's November 5th statement was not material. (E.C.F. 53-1, PageID# 9158.)

In support of his argument petitioner states that the TCCA engaged in "wildly, speculative fiction" because the TCCA accredited the testimony of Ms. Wulff in finding that she gave the transcript of the meeting to petitioner's co-counsel. (E.C.F. 53-1, PageID# 9160) Petitioner argues that ADA. Wulff failed to produce a copy of the November 5th statement on the record at petitioner's trial and, therefore, the TCCA's decision was based on an unreasonable determination of the facts. (E.C.F. 53-1, PageID# 9162-63.)

Petitioner, however, acknowledges that the November 5th statement had already been disclosed to the petitioner's counsel prior to the petitioner's trial. (E.C.F. 53-1, PageID# 9163.) At petitioner's post-conviction evidentiary hearing Ms. Wulff testified that not only did she review the document with petitioner's co-counsel, Steffen Schreiner, before the trial, but that she also called the office of Mr. Ozment to let him know that the document was ready. (E.C.F. 24-6, PageID# 5720-21; E.C.F. 24-15, PageID# 6954.)  Ms. Wulff also specifically addressed the trial colloquy referenced by the petitioner in his summary judgment memorandum and stated that she was not privy to everything that petitioner's counsel may have brought to trial, but knew that counsel was already in possession of the November 5th statement by the time of trial. (E.C.F. 24-15, PageID# 6960-62.) At trial, when petitioner's counsel referenced a 10-page statement to the court just prior to the start of Jarvis Shipp's cross-examination, Ms. Wulff responded that the May 23rd statement was *Jencks* material that had been previously turned over to the defense. Petitioner cannot credibly argue that the post-conviction court did not consider that colloquy in its determination of petitioner's claim on the merits when that exchange was specifically referenced during ADA Wulff's testimony before the post-conviction court.

    The petitioner also argues that Ms. Wulff's testimony was not credible because it was given eleven years after petitioner's trial. Petitioner contends that Ms. Wulff's recollection must be untrue because it was detailed - as opposed to vague. Petitioner's argument is meritless on its face. The state appellate court properly accredited the testimony of Ms. Wulff finding that her "testimony was very persuasive and the details with which she recalled the meeting between herself and Schreiner, in which the transcript at issue was turned over, lends credibility to her testimony." *Robinson*, 2013 WL 1149761, at *56-61.

Petitioner also argues that the state court did not articulate the evidence demonstrably showing that Schnieder failed to give the disclosed November 5th statement to his co-counsel. (E.C.F. 53-1, PageID#9167-70.) However, petitioner presents no clear and convincing evidence that Schneider did give the disclosed statement to Mr. Ozment and, thus, offers this court no basis to reverse the state court's factual findings on this point. The post-conviction court's order denying relief was 124-pages long, and the record shows that the court reviewed all the evidence that was pertinent to reaching its conclusions.

Petitioner also argues that the November 5th statement had impeachment value because Jarvis Shipp "waffled" about the authority of the petitioner within the Gangster Disciples and because Shipp previously claimed that he feared the petitioner was not "playing with a full deck." (E.C.F. 53-1, PageID# 9174-75.) The substance of the November 5th meeting did not differ substantially from the testimony presented at petitioner's trial, however. Mr. Shipp was extensively cross-examined by petitioner's counsel regarding his testimony of the petitioner's rank in the Gangster Disciple including that Shipp previously indicated that Kaos was the governor of Memphis, contrary to his trial testimony, and that Phillips, not the petitioner, instructed him to arrest the victim and that Phillips, not the petitioner, instructed gang members to take the victim upstairs after he had been beaten. (E.C.F. 22-7, PageID# 1018-20.)  Shipp also admitted that he never implicated the petitioner prior to testifying at trial. (E.C.F. 22-7, PageID# 1021-24.) Mr. Shipp was exhaustively impeached during petitioner's trial and the impeachment value of the November 5th statement would have been cumulative, at best.

Given these facts, it is clear that the state court's adjudication of this claim did not involve an unreasonable application of clearly established federal law, nor was it based upon an unreasonable application of clearly established federal law, nor upon an unreasonable

9

determination of the facts in light of the evidence before it. As such, petitioner's claim is meritless and must be denied.

### Claim 3:  Petitioner's Claim That Trial Counsel Was Ineffective With Regard To The Use Of Jarvis Shipp's November 5th Statement To Police Is Meritless.

Petitioner next claims that he is entitled to a new trial on Ground 3 of his petition because he received the ineffective assistance of counsel when his trial counsel's failed to "use the November 5 Statement at trial or on post-trial motions or direct appeal." (E.C.F. 53-1, PageID# 9177.)

Claim 3 of the petitioner's federal habeas petition states that "trial counsel rendered ineffective assistance by failing to use Jarvis Shipp's November 5 statement to cross-examine him." (E.C.F. 1, PageID# 3, 83.)  Petitioner now argues, however, that his trial counsel rendered ineffective assistance for failing to ""use the November 5 Statement at trial *or on post-trial motions or direct appeal*." (E.C.F. 53-1, PageID# 9177.) (emphasis added.) Petitioner's expanded factual basis to support his third claim for relief is barred by procedural default because a habeas petitioner must "fairly present" his claims in each appropriate state court for consideration before seeking federal relief.  *See Baldwin v. Reese*, 541 U.S. 27 (2004); *Duncan v. Henry*, 513 U.S. 365 (1995). Before the state post-conviction court, the petitioner argued, *inter alia*, that his counsel was ineffective with regard to the use of Jarvis Shipp's November 5th transcript because counsel failed to use the transcript during Jarvis Shipp's cross-examination. (E.C.F. 25-1, PageID# 8006-08.) To the extent petitioner's allegations in summary judgment differ in kind or otherwise exceed the allegations of the state court's filings, and his own habeas petition, those claims must be denied. (See E.C.F. 53-1, PageID# 9180-81.)

The remaining factual basis supporting petitioner's third claim for relief must also be denied for the reasons stated in respondent's memorandum in support of summary judgment. (See E.C.F. 52-1, PageID# 8966-69, 8973-79.)

## CONCLUSION

The Court should deny petitioner's motion for partial summary judgment and instead decide all claims in the respondent's favor because there are no disputes as to any material fact; the petitioner's claims are meritless and the respondent is entitled to judgment in his favor as matter of law.

Respectfully submitted,

**HERBERT H. SLATERY III,**
Attorney General & Reporter

/s/ Michael M. Stahl
MICHAEL M. STAHL
Assistant Attorney General
Federal Habeas Corpus Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 253-5463
B.P.R. No. 032381
Michael.Stahl@ag.tn.gov

## CERTIFICATE OF SERVICE

I certify that the foregoing Response in Opposition to the Petitioner's Motion for Partial Summary Judgment was filed electronically on the 2nd day of March, 2017. A copy of the document will be served via the Court's electronic filing process on: Robert L. Hutton, Glankler Brown, PLLC, 6000 Poplar Ave, Suite 400, Memphis, TN 38119, at rhutton@glankler.com.

/s/ Michael M. Stahl
MICHAEL M. STAHL
Assistant Attorney General